# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHELSEY GOSSE, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 3:20-cv-01446-RDM |
| | ) | |
| | ) | Hon. Robert D. Mariani |
| v. | ) | |
| | ) | |
| TRANSWORLD SYSTEMS, INC.; U.S. | ) | Electronically Filed |
| BANK, NA.; RATCHFORD LAW | ) | |
| GROUP, P.C.; NATIONAL | ) | |
| COLLEGIATE STUDENT LOAN | ) | |
| TRUST 2007-3, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

## APPENDIX OF UNPUBLISHED CASES

*Bainbridge v. Ocwen Loan Servicing, LLC*, No. 3:16-CV-0411, 2017 WL 1178047 (M.D. Pa. Mar. 30, 2017)

*Bronstein v. Bayview Loan Servicing, LLC*, No. CV 18-4223, 2020 WL 703652 (E.D. Pa. Feb. 11, 2020)

*Dolan v. PHL Variable Ins. Co.*, No. 3:15-CV-01987, 2017 WL 4812308 (M.D. Pa. Oct. 25, 2017)

*Johnson v. Chase Manhattan Bank, USA N.A.*, No. 07-526, 2007 WL 2033833 (E.D. Pa. July 11, 2007)

*Levin v. Strayer Univ., LLC*, No. CV 18-0893, 2018 WL 3585124 (E.D. Pa. July 26, 2018)

*Murphy v. Fed. Deposit Ins. Corp.*, 408 F. App'x 609 (3d Cir. 2010)

*Prukala v. Chase Bank, N.A.*, No. 3:19-CV-1791, 2020 WL 5351042 (M.D. Pa. Sept. 4, 2020)

*Schwartz v. OneWest Bank, FSB*, 614 Fed. App'x. 80 (3d Cir. 2015)

# Bainbridge v. Ocwen Loan Servicing, LLC

United States District Court, M.D. Pennsylvania. |     March 30, 2017 |     Not Reported in Fed. Supp. |
2017 WL 1178047

| Document Details | | Outline |
|---|---|---|
| alwd Citation: | Bainbridge v. Ocwen Loan Servicing, LLC, 3:16-CV-0411, 2017 WL 1178047 (M.D. Pa. Mar. 30, 2017) | Attorneys and Law Firms (p.1) |
| All Citations: | Not Reported in Fed. Supp., 2017 WL 1178047 | **MEMORANDUM** (p.1) |
| **Search Details** | | All Citations (p.22) |
| Jurisdiction: | Pennsylvania | |
| **Delivery Details** | | |
| Date: | November 9, 2020 at 8:53 AM | |
| Delivered By: | Teri Townsend | |
| Client ID: | 257825.000001 | |

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

2017 WL 1178047
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Christopher BAINBRIDGE, et al., Plaintiffs

v.

OCWEN LOAN SERVICING, LLC, et al., Defendants

CIVIL ACTION NO. 3:16-CV-0411
|
Filed 03/30/2017

**Attorneys and Law Firms**

Matthew B. Weisberg, Weisberg Law, Morton, PA, for
Plaintiffs.

Brian T. Feeney, Gregory T. Sturges, Greenberg Traurig LLP,
Brett L. Messinger, Duane Morris, LLP, Philadelphia, PA,
David Neeren, Udren Law Office, P.C., Cherry Hill, NJ, for
Defendants.

**MEMORANDUM**

William J. Nealon, United States District Judge

**\*1** Plaintiffs, Christopher and Kelly Bainbridge, filed an
amended complaint against Defendants U.S. Bank, N.A. as
Trustee for the C-BASS Mortgage Loan Trust Asset-Back
Certificates, Series 2007-CB6 ("U.S. Bank"); Udren Law
Offices, P.C. ("Udren"); and Ocwen Loan Servicing, LLC
("Ocwen") (collectively "Defendants"). (Doc. 14). Plaintiffs
allege that Ocwen and Udren violated the Fair Debt Collection
Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). (Id. at
pp. 5-6). Plaintiffs also claim that Defendants made wrongful
use of civil proceedings in violation of 42 Pa. C.S.A. § 8351,
et seq. ("Dragonetti Act"), and violated the Pennsylvania
Unfair Trade Practices and Consumer Protection Law, 73 P.S.
§ 201-1, et seq. ("UTPCPL"). (Id. at pp. 6-9). On May 6,
2016, Udren filed a motion to dismiss the amended complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6) and brief
in support. (Docs. 21, 22). On May 16, 2016, U.S. Bank
and Ocwen filed a motion to dismiss the amended complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6) and
brief in support. (Docs. 23, 24). On June 6, 2016, Plaintiffs
filed their brief in opposition to the motions to dismiss. (Doc.
27). On June 20, 2016, Defendants filed a joint reply brief.
(Doc. 28). As a result, the aforementioned motions to dismiss

are ripe for disposition. For the reasons set forth below,
Defendants' respective motions to dismiss filed pursuant to
Federal Rule of Civil Procedure 12(b)(6) will be denied in
part and granted in part.

**I. STANDARD OF REVIEW**

As stated, both motions to dismiss have been brought pursuant
to Federal Rule of Civil Procedure 12(b)(6). See (Docs.
21-24). "This rule provides for the dismissal of a complaint,
in whole or in part, if the plaintiff fails to state a claim upon
which relief can be granted." Suessenbach Family v. Access
Midstream, 2015 U.S. Dist. LEXIS 40900, at \*2, 2015 WL
1505665 (M.D. Pa. Mar. 31, 2015) (Mannion, J.). The moving
party bears the burden of showing that no claim has been
stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir.
2005). All factual allegations are accepted as true and all
inferences are construed in the light most favorable to the non-
moving party. Kaymark v. Bank of Am., N.A., 2015 U.S. App.
LEXIS 5548, at \*7, 2015 WL 1529120 (3d Cir. Apr. 7, 2015)
(citing Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d
Cir. 2012)). "[D]ismissal is appropriate only if, accepting all
of the facts alleged in the complaint as true, the plaintiff has
failed to plead 'enough facts to state a claim to relief that is
plausible on its face.' " Suessenbach Family, 2015 U.S. Dist.
LEXIS 40900, at \*2, 2015 WL 1505665 (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544 (2007)). The non-moving
party's allegations must be sufficient to "raise a right to relief
above the speculative level." Twombly, 550 U.S. at 544. "This
requirement 'calls for enough fact[s] to raise a reasonable
expectation that discovery will reveal evidence of' necessary
elements of the plaintiff's cause of action." Suessenbach
Family, 2015 U.S. Dist. LEXIS 40900, at \*2-3, 2015 WL
1505665 (quoting Twombly, 550 U.S. at 544). "Furthermore,
in order to satisfy federal pleading requirements, the plaintiff
must 'provide the grounds of his entitlement to relief,' which
'requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do.' "
Id. (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231
(3d Cir. 2008)).

**\*2** "Generally, the court should grant leave to amend a
complaint before dismissing it as merely deficient." Aspinall
v. Thomas, 118 F. Supp. 3d 664, 670-71 (M.D. Pa. 2015)
(Mannion, J.) (citing Fletcher-Harlee Corp. v. Pote Concrete
Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson
v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002);
Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000)).
"Dismissal without leave to amend is justified only on the

2017 WL 1178047

grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## II. FACTUAL ALLEGATIONS

Pursuant to the above-discussed motion to dismiss standard of review, all facts are taken from Plaintiffs' amended complaint, (Doc. 14), unless otherwise noted.

On February 7, 2008, Plaintiffs became the owners of the property located at 25 5th Street, Hawley, Pennsylvania 18428. (Id. at p. 2). "On or about March 28, 2007, Plaintiffs initiated a mortgage loan with Defendants' predecessor, Imperial Lending, LLC." (Id.). On or about November 4, 2010, Plaintiffs filed Chapter 13 bankruptcy in the United States District Court for the Middle District of Pennsylvania. (Id. at p. 3). On October 12, 2011, "Ocwen filed a Transfer of Claim document reflecting transfer of servicing rights" regarding Plaintiff's loan "from Litton Loan Servicing, L.P. to Ocwen." (Id.). Ocwen "acquired the servicing rights to the mortgage debt disputed herein from Litton Loan Servicing when alleged to be in default." (Id. at p. 2).

On July 18, 2013, U.S. Bank filed a motion in Plaintiffs' bankruptcy action "for relief from the stay alleging plaintiffs had not made post-petition monthly mortgage payments beginning February 1, 2013." (Doc. 14, p. 3). On August 8, 2013, the United States Bankruptcy Court for the Middle District of Pennsylvania "entered an order granting US Bank relief from the stay due to plaintiffs' bankruptcy counsel failing to respond to the motion without the knowledge of the plaintiffs." (Id.).

On June 26, 2014, "Defendants filed a complaint in mortgage foreclosure against Plaintiffs in Wayne County, Pennsylvania Court of Common Pleas." (Id.). In that foreclosure action, "Defendants alleged ... that plaintiffs had not made post-petition monthly mortgage payments beginning" on September 1, 2013. (Id.). Defendants "alleged that the aforesaid mortgage was in default in that the payment due on or about September 1, 2013, and alleged that all subsequent payments had not been made." (Id.). Plaintiffs "never missed a single payment after relief was granted to" U.S. Bank in the Plaintiffs' bankruptcy action until "Ocwen began returning plaintiffs' payments in January 2014." (Id.). Ocwen returned these payments "despite Plaintiffs having copies of checks and bank statements evidencing payment for every month alleged unpaid." (Id.). Additionally, "Defendants cashed the checks." (Id.).

Defendants instituted the underlying mortgage foreclosure action against Plaintiffs "without investigating the claimed default." (Id. at p. 4). Subsequent to the complaint being filed in the underlying mortgage foreclosure action, Plaintiffs "continually informed Defendants of their mistake." (Doc. 14, p. 4). Defendants, however, continued to pursue the foreclosure action. (Id.). On March 13, 2015, in the Wayne County Court of Common Pleas, the Honorable Raymond L. Hamill entered a verdict in favor of Plaintiffs and against Defendants in the underlying foreclosure action. (Id.).

**\*3** On or about October 7, 2015, Plaintiffs "received a discharge of their chapter 13 bankruptcy wherein they had paid $12,600 in pre-petition arrears to Ocwen and its predecessor servicer, Litton." (Id.). On or about that same date, Ocwen filed "a Response under BR 3002.1(g)" in Plaintiffs' bankruptcy action "alleging a post-petition mortgage loan default by plaintiffs for the months [of] December 1, 2013 through October 1, 2015 in the total amount of $36,851.75." (Id.).

Based on the foregoing, "Plaintiffs' credit has been damaged causing them to be unable to purchase a new truck ... [and they] also have been forced to rent rather than purchase a new home because they cannot qualify for an affordable mortgage." (Id.). Moreover, Plaintiffs spent "approximately $7,000 to retain attorneys" for their representation in the underlying mortgage foreclosure action. (Id.).

## III. DISCUSSION

### A. FDCPA

Both motions currently before the Court argue that Plaintiffs' FDCPA claims concerning the underlying foreclosure action are barred by the FDCPA's one (1) year statute of limitations. (Doc. 22, p. 7); (Doc. 24, pp. 1, 5, 6-8). According to Udren, "Plaintiffs claim that 'Defendants' violated the FDCPA by falsely filing a foreclosure action to take Plaintiffs' home and that 'Defendants' sent in and out-of-court correspondence concerning the amounts due." (Doc. 22, p. 7). However, Udren states that Plaintiffs provide "[n]o further specification." (Id.). Furthermore, Udren argues that since the FDCPA has a one-year (1) statute of limitations, "only alleged FDCPA violations occurring after March 8, 2015 are actionable in this proceeding." (Id.). Udren notes that the relevant "Foreclosure Action was filed on June 26, 2014," and "Plaintiffs filed an Answer on September 26, 2014." (Id.). Udren claims that the "[t]rial occurred [on] March 3, 2015." (Id.). Thus, Udren concludes, "[t]he alleged

Case 3:20-cv-01446-RDM  Document 33-1  Filed 11/09/20  Page 5 of 72

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

communications by Udren 'in and out of court' would have had to occur after March 8, 2015 to fall within the statute of limitations." (Id.). But, according to Udren, "[b]ecause all the conduct complained of possibly attributable to Udren occurred more than one (1) year before all of the above dates, it is not actionable under the FDCPA." (Id.).

Udren also argues that while Plaintiffs "make unsupported assertions that the purported FDCPA violations continued through the 'present date,'" they "cannot maintain a 'continuation of violation' theory to somehow toll the date of accrual of their FDCPA claim beyond June 26, 2014, the date of commencement of the mortgage foreclosure action or service of the Complaint on August 26, 2014." (Doc. 22, p. 8). Udren claims that "[i]t is well-settled that a specific date is affixed for the accrual of a purported FDCPA violation ... and the subsequent course of litigation is not actionable under a 'continuing violation' theory in the context of the FDCPA." (Id.) (quoting Schaffhauser v. Citibank (S.D.) N.A., 340 Fed.Appx. 128, 130 (3d Cir. 2009); citing Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 341 (D.N.J. 2009)).

Similarly, U.S. Bank and Ocwen argue that Plaintiffs' FDCPA claims are barred by the FDCPA's one-year (1) statute of limitations. (Doc. 24, p. 6). In particular, U.S. Bank and Ocwen claim that since the instant action was instituted on March 8, 2016, "no action taken prior to March 8, 2015 may form the basis of their claims against Ocwen and U.S. Bank." (Id.). According to U.S. Bank and Ocwen, even assuming, without deciding, that the limitations period began to run in September 2014, when Plaintiffs were served with the foreclosure complaint, the Plaintiffs' "FDCPA claims, premised on improper or 'false' allegations included in the Foreclosure Action, are clearly time-barred." (Doc. 24, p. 7).

**\*4** U.S. Bank and Ocwen also claim that "[a]ny acts taken or statements made by Ocwen or U.S. Bank in the course of the Foreclosure Action do not constitute 'continuing violation' of FDCPA that would re-start the limitations period." (Id.) (citing Schaffhauser, 340 Fed.Appx. at 130-31; Kimmel v. Phelan Hallinan & Schmeig, PC, 847 F. Supp. 2d 753, 767 (E.D. Pa. 2012); Schaffhauser v. Burton Neil & Assocs., P.C., 2008 U.S. Dist. LEXIS 24894, 2008 WL 857523 (M.D. Pa. Mar. 27, 2008) (Rambo, J.)).

Plaintiffs respond by arguing that their FDCPA claims concerning the underlying mortgage foreclosure action should be considered ripe when the foreclosure verdict

was handed down in the underlying state court litigation. (Doc. 27-1, pp. 4-9). Plaintiffs ask the Court to craft "an exception" which would toll "the FDCPA claim from the time of filing or answer given the unique concerns of ripeness, judicial economy and important state interests involved in determining real property issues." (Id. at p. 5).

In support of their request that the Court adopt this exception to the FDCPA's statute of limitations, Plaintiffs first argue that judicial economy will be served by adopting this exception to the FDCPA's statute of limitations. (Id.). According to Plaintiff, "[t]he reasoning employed by Federal Courts considering abstention from state court determinations provides a foundation for [P]laintiff[s'] ripeness arguments." (Doc. 27-1, p. 5). Plaintiffs claim that courts within the Third Circuit that have considered "Younger abstention issues abstain where real property issues are involved." (Id. at p. 6). Moreover, Plaintiffs state that "[a]nother category of cases appropriate for abstention involves 'considerations of [wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" (Id.) (second alteration and emphasis in original) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Plaintiffs argue that "[i]nsofar as federal abstention doctrine dictates that any parallel FDCPA case arising from plaintiff's standing defense would require the case be stayed anyhow under the Colorado River abstention doctrine, judicial economy is served by" this Court's rejection the "argument that tolling of an FDCPA claim based on a foreclosure action is based on the time of that action's filing or service." (Id.).

According to Plaintiffs, the "Colorado River abstention provides that, under 'exceptional circumstances,' a federal court may abstain from its otherwise 'virtually unflagging obligation' to assert jurisdiction over a case because (1) there is a parallel case in state court, and (2) after 'careful[ly] balancing' a series of factors, maintaining the federal case would be a waste of judicial resources." (Id.) (alteration in original) (quoting Moses 4 H Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 13-16, 19 (1983)). Plaintiffs argue that "[h]ere the two proceedings would have easily been considered parallel insofar [as] they 'involve the same parties and substantially identical claims, raising nearly identical allegations and issues,' and when plaintiffs in each forum seek the same remedies, i.e. here, determination as to the validity of the underlying debt in a foreclosure action." (Doc. 27-1, pp. 6-7) (internal citations omitted). Plaintiffs also claim

2017 WL 1178047

that "five of the six factors clearly argue for abstention with the sixth, convenience of the federal forum, having a neutral effect." (Id. at p. 7).

**\*5** According to Plaintiffs, the argument put forth by Defendants "requires any foreclosure defendant opposing foreclosure for lack of a defaulted debt to file a parallel concurrent action to toll the FDCPA statute of limitations despite all <u>Colorado River</u> and <u>Younger</u> abstention factors arguing for federal court abstention." (Id. at p. 8). Moreover, Plaintiffs contend that:

> Extending the Motion's argument to the instant case's facts would have resulted in the consequent squandering of not only the state court's resources spent for years on a meritless state foreclosure claim, but would also have squandered the resources of the federal court to carry the FDCPA action on its docket as an active matter for such time.

(Id.). Plaintiffs also claim that:

> filing of an FDCPA claim in federal court against the foreclosing parties and their counsel within one (1) year of the foreclosure action's filing or service without regard for disposition of whether the debt is owed increases the danger of the borrower and his counsel having Rule 11 sanctions threatened thereby increasing the likelihood of multiplying the litigation.

(Doc. 27-1, p. 9).

Plaintiffs also make clear that they are not alleging a continuing violation theory under the FDCPA. (Id.). According to Plaintiffs:

The case law underlying the Motion's argument that an FDCPA claim is broadly tolled by the initiation or service of the foreclosure complaint should be distinguished because it does not involve foreclosure or standing defense in the respective underlying collection actions as discussed above.

(Id.).

Initially, the Court notes that Plaintiffs' FDCPA claims are based on two (2) sections of the FDCPA and concern actions allegedly taken in two (2) separate legal proceedings. (Doc. 14, pp. 5-6). First, Plaintiffs contend that Ocwen violated 15 U.S.C. § 1692e(2)(A) of the FDCPA on October 7, 2015, when it "falsely fil[ed] a Response in the bankruptcy when no post-petition payments were due." (Id. at p. 5). Second, Plaintiffs allege that Ocwen and Udren violated section 1692(2)(A) when they "falsely fil[ed] a foreclosure action to take [Plaintiffs'] home when [Plaintiffs] were not contractually in default under the Note for payments due." (Doc. 14, p. 5). Notably, Plaintiffs also allege generally that "Defendants violated § 1692f by engaging in unfair or unconscionable means to collect or attempt to collect a debt by the aforesaid conduct." (Id. at p. 6).

As to Plaintiff's FDCPA claims, Defendants' respective motions focus on Plaintiffs' allegations concerning the Defendants' filing of the underlying foreclosure action and, importantly, do not address Plaintiffs' claim regarding the "Response" allegedly filed by Ocwen on October 7, 2015, in the "bankruptcy." See (Doc. 22, pp. 2, 7-8); (Doc. 24, pp. 1-2, 6-7). Consequently, Plaintiffs' FDCPA claims under sections 1692e(2)(A) and 1692f based on the "Response" allegedly filed by Ocwen in the "bankruptcy" will be allowed to proceed.

However, Plaintiffs' claim that Ocwen and Udren violated sections 1692e(2)(A) and 1692f of the FDCPA when they filed the underlying mortgage foreclosure action will not proceed. Pursuant to section 1692k(d) of the FDCPA, "[a]n action to enforce any liability created by this title ... may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of

2017 WL 1178047

competent jurisdiction, within one [ (1) ] year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here, Plaintiffs filed their original complaint on March 8, 2016. Therefore, under section 1692k(d), Plaintiffs' FDCPA claims which occurred before March 8, 2015, will be time barred.

**\*6** To determine whether Plaintiffs' FDCPA claims concerning the underlying mortgage foreclosure action are time barred, the Court must first decide when those claims began to accrue under the FDCPA's statute of limitations. According to the plain language of the FDCPA, the statute of limitations begins to accrue "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). This plain reading is consistent with decisions reached by the United States Court of Appeals for the Third Circuit and the district courts within that jurisdiction. For example, in Schaffhauser v. Citibank, the Third Circuit noted that "[a]n action under the FDCPA must be brought 'within one year from the date on which the violation occurs.' " 340 Fed.Appx. 128, 130 (3d Cir. 2009) (quoting 15 U.S.C. § 1692k(d)). The Third Circuit went on to state that "[w]here FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, [footnote omitted] courts are split as to when the FDCPA's one-year statute of limitations begins to run...." Id. The Third Circuit continued by noting that "some have held that such claims accrue upon filing the underlying collection action, see Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997), while others use the date on which the purported debtor was served with the complaint." Id. at 131 (citing Johnson v. Riddle, 305 F.3d 1107, 1113 (10th Cir. 2002)). Ultimately, the Third Circuit determined that it was not necessary to determine which approach applied because "under either approach" the plaintiffs' FDCPA claims were "clearly untimely." Schaffhauser, 340 Fed.Appx. at 131. Additionally, the Third Circuit also addressed the plaintiffs' argument that "the actions taken by the [ ] defendants 'constitute a continuing violation,' bringing their otherwise time-barred claims within FDCPA's one-year statute of limitations." Id. "However," the Third Circuit noted, the plaintiffs "offer no support for their contention that participation in ongoing debt collection litigation qualifies as a 'continuing violation' of the FDCPA, and we are aware of none." Id. According to the Third Circuit, at the time of its decision "the only circuit court decision addressing this issue has concluded precisely the opposite." Id. (citing Naas, 130 F.3d at 893). The Court of Appeals went on to state that "[g]enerally, our decisions have limited the continuing violation doctrine to the employment discrimination context." Id. (citing O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006)). Finally,

the Third Circuit declined to extend the "continuing violation doctrine" to an FDCPA claim relating to "state court debt collection actions." Id.

A number of district courts within the Third Circuit have found the Third Circuit's non-precedential decision in Schaffhauser to be persuasive, specifically to the extent it determined that the participation in the underlying state court action did not qualify as a continuing violation. For example, in Toritto v. Portfolio Recovery Assocs., LLC, 2016 U.S. Dist. LEXIS 45821, 2016 WL 1354946 (D.N.J. Apr. 5, 2016), the United States District Court for the District of New Jersey recently addressed whether a plaintiff's claim that the defendants "violated the FDCPA by 'attempting to collect an alleged debt beyond the statute of limitations' in the state court action" was barred by the FDCPA's one-year (1) statute of limitations. Id. at *3. The District Court, in reaching its determination that the plaintiff's claim was time barred, found Schaffhauser to be "persuasive and on point." Id. at *4. In particular, the District Court stated that "[a]s in Schaffhauser, [the plaintiffs'] claims in this case are 'premised upon allegations of improper pursuit of debt collection litigation.' " Id. at *5 (Schaffhauser, 340 Fed.Appx. at 130-31).

Additionally, in Kohar v. Wells Fargo Bank, N.A., 2016 U.S. Dist. LEXIS 49599, 2016 WL 1449580 (W.D. Pa. Apr. 13, 2016), the United States District Court for the Western District of Pennsylvania noted that:

> The Court of Appeals and numerous District Courts have recognized that the one year statute of limitations associated with the FDCPA commences upon the invocation of the underlying foreclosure litigation and is not generally saved by the continuing litigation doctrine.

Id. at *11-12 (citing Schaffhauser, 340 Fed.Appx. at 131; Parker v. Nationstar Mortg. LLC, 2015 U.S. Dist. LEXIS 145439, 2015 WL 6472223 (W.D. Pa. Oct. 27, 2015); Amelio v. McCabe, Weisberg & Conway, P.C., 2015 U.S. Dist. LEXIS 98378, 2015 WL 4545299 (W.D. Pa. July 28, 2015)); see Rhodes v. US Bank Nat'l Assoc., 2017 U.S. Dist. LEXIS 27578, at *4 n.8, 2017 WL 770941 (E.D. Pa. Feb. 28, 2017) (citing Schaffhauser, 340 Fed.Appx. at 131; Living Life v.

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 8 of 72

Deutsche Bank Nat'l Trust Co., 2016 U.S. Dist. LEXIS 50742, at *13, 2016 WL 1568175 (E.D. Pa. Apr. 15, 2016) (citing Schaffhauser, 340 Fed.Appx. at 130-31).

In Brown v. Udren Law Offices PC, however, the United States District Court for the Eastern District of Pennsylvania distinguished the Third Circuit's decision in Schaffhauser. 2011 U.S. Dist. LEXIS 102004, 2011 WL 4011428 (E.D. Pa. Sept. 9, 2011). The District Court rejected the defendant's reliance on Schaffhauser in its contention that the plaintiff's "FDCPA claim is barred by the one-year statute of limitations" and that the plaintiff "cannot assert a continuing violation...." Id. at *15-16. The District Court found that the plaintiff's FDCPA claim was not barred "by the statute of limitations because she ... alleged discrete acts that occurred within the year before she filed her Complaint." Id. at *16. The District Court noted that "FDCPA claims are predicated upon improperly bringing debt collection litigation, the one-year limitations period begins to run–at latest–when the debtor is served with process." Id. (citing Schaffhauser, 340 Fed.Appx. at 130-31). However, "[c]onduct which independently violates the FDCPA, however, is actionable if it falls within the limitations period, even if undertaken in pursuit of litigation that was filed outside the limitations period." Brown, 2011 U.S. Dist. LEXIS 102004, at *16, 2011 WL 4011428 (citing Jones v. Inv. Retrievers, LLC, 2011 U.S. Dist. LEXIS 44138, 2011 WL 1565851 (M.D. Pa. Apr. 25, 2011) (Caputo, J.)).

*7 Here, Plaintiffs allege, in relevant part, that Defendants violated section 1692e(2)(A) of the FDCPA when "[b]oth defendants[, Ocwen and Udren,] falsely fil[ed] a foreclosure action to take plaintiff[s'] home when plaintiffs were not contractually in default under the Note for payments due." (Doc. 14, p. 5). Plaintiffs also allege that "Defendants violated § 1692f by engaging in unfair or unconscionable means to collect or attempt to collect a debt by the aforesaid conduct." (Id. at p. 6). As alleged, the Defendants filed the complaint in the underlying mortgage foreclosure action on "June 26, 2014." (Id. at p. 3). As a result, even using June 26, 2014,[1] as the latest available date for statute of limitations purposes, Plaintiffs' FDCPA claims based on the filing of the underlying mortgage foreclosure action is barred by the FDCPA's one-year statute of limitations.[2]

[1]    The Court notes that the allegations of the amended complaint provide June 26, 2014, as the latest possible date upon which the Plaintiff can rely

for purposes of the FDCPA's statute of limitations. See (Doc. 14, p. 4). However, in Udren's brief in support it identifies August 26, 2014, as the date upon which Plaintiffs were served with the complaint in the underlying mortgage foreclosure action. (Doc. 22, p. 8). In Ocwen and U.S. Bank's brief in support, those Defendants state that the Plaintiffs "were served with the Foreclosure Action around September 2014, given that they answered the complaint late in that month and did not assert any service of process objections." (Doc. 24, p. 7). Thus, even if the Court were to take a date "around September 2014," Plaintiffs' FDCPA claims based on the underlying mortgage foreclosure action would be time barred.

[2]    Plaintiffs also allege in their amended complaint that "Defendants violated § 1692f by engaging in unfair or unconscionable means to collect or attempt to collect a debt by the aforesaid conduct." (Doc. 14, p. 6). To the extent that Plaintiffs are claiming that Defendants alleged actions during the underlying mortgage foreclosure action can support a claim under section 1692f of the FDCPA, that claim is also time barred.

While Plaintiffs' FDCPA claims concerning the underlying state foreclosure action are barred by the one-year statute of limitations, Plaintiffs request that the Court find that Plaintiffs are entitled to equitable tolling of the FDCPA's statute of limitations. In particular, Plaintiffs argue that the statute of limitations for FDCPA claims which require the determination of the ultimate issue already before a state court, and thus are subject to federal abstention, be tolled during the pendency of that state court action. See (Doc. 27-1, pp. 4-9). In essence, Plaintiffs are asking the Court to carve out an exception to the FDCPA's statute of limitations based on an after the fact determination as to whether abstention would have applied had Plaintiffs filed a federal complaint alleging the FDCPA claims at issue during the pendency of the state court proceeding. See (Id.).

First, there is a question as to whether equitable tolling is available under the present circumstances. Specifically, "[e]quitable tolling is appropriate only when the statutory time limit is not jurisdictional." Shivone v. Washington Mut. Bank, F.A., 2008 U.S. Dist. LEXIS 59212, at *4, 2008 WL 3154702 (E.D. Pa. Aug. 5, 2008). The "statute of limitations clause in the FDCPA falls under the heading, 'Jurisdiction,' and, consequently, there is split authority

2017 WL 1178047

among the circuits regarding whether or not the limitations period is jurisdictional, meaning that it would not be subject to equitable tolling." Rotkiske v. Klemm, 2016 U.S. Dist. LEXIS 32908, at *14, 2016 WL 1021139 (E.D. Pa. Mar. 15, 2016). Notably, "[t]he Court notes that the Third Circuit has not had the occasion to address the question whether the FDCPA's statute of limitations is jurisdictional." Coles v. Zucker Goldberg & Ackerman, 2015 U.S. Dist. LEXIS 98628, at *11 n.3, 2015 WL 4578479 (D.N.J. July 29, 2015); but see Rotkiske, 2016 U.S. Dist. LEXIS 32908, at *14-15, 2016 WL 1021139 (noting that "at least two Third Circuit Court of Appeals cases have considered equitable tolling arguments related to FDCPA claims.") (citing Kliesh v. Select Portfolio Serv., Inc., 527 Fed.Appx. 102, 104 (3d Cir. 2013); Glover v. F.D.I.C., 698 F.3d 139, 151 (3d Cir. 2012)). The Court need not decide, however, whether the FDCPA's statute of limitations is jurisdictional, and thus bars application of equitable tolling to FDCPA claims, because Plaintiffs have failed to establish circumstances necessary for the application of equitable tolling to their FDCPA claims concerning the underlying mortgage foreclosure action.

*8 "The doctrine of equitable tolling is only applicable when timely filing was prevented by extraordinary or sufficiently inequitable circumstances, and in that regard, equitable tolling should be sparingly applied by courts." Coles, 2015 U.S. Dist. LEXIS 98628, at *10, 2015 WL 4578479 (citing Santos v. United States, 559 F.3d 189, 197 (3d Cir. 2009); Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 340 (D.N.J. 2009); Glover, 698 F.3d at 151; Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)). "That said, a plaintiff may be entitled to equitable tolling if the conduct of the defendant prevented the plaintiff from ascertaining the viability of his or her claim within the limitations period." Id. (citing Kliesh, 419 Fed.Appx. at 271).

However, Plaintiffs' amended complaint does not support a determination that Plaintiffs were prevented from timely filing their FDCPA claim by an extraordinary or sufficiently inequitable circumstance. Further, the amended complaint shows that Plaintiffs were not prevented from ascertaining the viability of their FDCPA claim concerning the underlying mortgage foreclosure action within the limitations period by any fraud or concealment done by Defendants. Rather, quite the opposite. The basis of Plaintiffs' claims hinge on their allegation that:

> Plaintiffs never missed a single payment after relief was granted to defendant US Bank in the bankruptcy until defendant Ocwen began returning plaintiffs' payments in January 2014 despite Plaintiffs having copies of checks and bank statements evidencing payment for every month alleged unpaid. Furthermore, Defendants cashed the checks.

(Doc. 14, pp. 3-4). Notably, Plaintiffs continue by alleging that "[e]ven after the complaint in foreclosure was filed, and Plaintiffs continually informed Defendants of their mistake, Defendants pursued their meritless claim." (Id. at p. 4). These allegations run opposite to any argument that Defendants prevented Plaintiffs from ascertaining the viability of their FDCPA claim concerning the underlying mortgage foreclosure action within that Act's limitations period. Thus, even if the Court were to find that equitable tolling is allowed in FDCPA actions, Plaintiffs' request to apply equitable tolling to their FDCPA claims concerning their underlying mortgage foreclosure action is denied.

Furthermore, Plaintiffs' equitable tolling argument relies on the speculative conclusion that the Court would have found that this case was subject to federal abstention. Moreover, had Plaintiffs filed a complaint within the applicable statute of limitations, and during the pendency of the state court proceeding, the Court may have issued a stay, as opposed to dismissing the federal case. Also, adopting the mechanism proposed by Plaintiffs most likely would not avoid an abstention determination and, thus, conserve judicial resources. Rather, as would be the case here if Plaintiffs' argument was accepted, such a principle would just prolong that determination until the defendants move for relief under Federal Rule of Civil Procedure 12(b). Since the abstention determination most likely would be made regardless of when the federal complaint is filed, the Court does not find it necessary to prolong such a determination and, simultaneously, create a new equitable tolling exception to the FDCPA's statute of limitations.

Additionally, as noted, the accrual date for causes of action concerning prosecutions of underlying state court actions

2017 WL 1178047

concerning a "debt" has been determined to be, at the latest, when the consumer is served with the complaint and summons in that action. See Schaffhauser, 340 Fed.Appx. at 130. If the Court were to adopt the equitable tolling exception proposed by Plaintiffs, the accrual date in most, if not all, cases where it is alleged that the defendant(s) violated the FDCPA by bringing and prosecuting an underlying action would become meaningless. Specifically, adopting this exception would, in effect, create a new accrual date for such actions, which would occur when the favorable verdict in the underlying case has been rendered.

**\*9** Based on these reasons, it is determined that Plaintiffs' request for this Court to apply an equitable tolling exception to the FDCPA's statute of limitations will be denied. Therefore, Plaintiffs' FDCPA claims based upon Plaintiffs' underlying mortgage foreclosure action are barred by the FDCPA's statute of limitations and, thus, will be dismissed. Additionally, since amendment of these claims would be futile, leave to amend will not be granted. As a result, Plaintiffs' FDCPA claims concerning the underlying mortgage foreclosure action will be dismissed with prejudice. Finally, as noted above, Plaintiffs' FDCPA claims based on the "Response" allegedly filed by Ocwen in the "bankruptcy," see (Doc. 14, p. 5), will be allowed to proceed.

### B. State Law Claims

#### i. Wrongful Use of Civil Proceedings

Plaintiffs also claim that Defendants wrongfully used civil proceedings against them in violation of Pennsylvania's Dragonetti Act, 42 PA. CON. STAT. ANN. §§ 8351-8354. (Doc. 14, p. 6). As noted, Plaintiffs allege that "Defendants caused the underlying mortgage foreclosure litigation to be instituted against Plaintiffs." (Id.). Further, Defendants allegedly "commenced, continued and/or prosecuted underlying litigation ... against the Plaintiffs without probable cause." (Id.). According to Plaintiffs, the "underlying litigation was commenced and continued by Defendants and against Plaintiffs with malice and/or reckless indifference to the rights and interest of Plaintiffs." (Id.). Further, the underlying litigation "was terminated in Plaintiffs' favor, by way of the entry of an Order of the Court...." (Doc. 14, p. 6).

Udren argues that Plaintiff's Dragonetti claim "cannot be maintained when Plaintiffs failed to contest a final Bankruptcy Court Order, failed to properly assert their

defenses in state court pleadings, and [fails] by their own pleaded admissions and filings." (Doc. 22, p. 8). Udren continues by arguing that "Plaintiffs cannot show, inter alia, that Udren acted in a grossly negligent manner or lacked probable cause because the mortgage default was established conclusively by the [Order on U.S. Bank's Motion for Relief from Automatic Stay], Confirmed Plan and their admissions." (Id. at p. 9). According to Udren, "[t]he [Order on U.S. Bank's Motion for Relief from Automatic Stay] and Confirmed Plan conclusively establish that the Plaintiffs failed to maintain both post-petition and pre-petition mortgage obligations." (Id.). Udren argues that "Plaintiffs are bound by these facts." (Id.).

Specifically, Udren contends that the Order on U.S. Bank's Motion for Relief from Automatic Stay "conclusively establishes the Plaintiff's post-petition mortgage default." (Id.). Udren states that 11 U.S.C. § 362(d) "authorizes the court to grant relief from the automatic stay, in the form of an order 'terminating, annulling, modifying or conditioning' the automatic stay, for 'cause.' " (Id.) (quoting 11 U.S.C. § 362(d)). Thus, according to Udren, section 362(d) requires the moving party to satisfy their initial burden to "demonstrate cause for relief." (Doc. 22, p. 10) (citing In re Ward, 837 F.2d 124, 128 (3d Cir. 1988)).

Additionally, Udren notes, "[a] bankruptcy court's order granting relief from the automatic stay constitutes a final order." (Id.) (citing In re Comer, 716, F.2d 168, 172 (3d Cir. 1983)). As a result, Udren concludes, "the Order granting relief to US Bank in the Bankruptcy Action is a final order." (Id.). Moreover, Udren notes that "Plaintiffs did not (1) oppose" U.S. Bank's motion for relief from automatic stay; "(2) respond to the CNR; (3) move to strike or reconsider the MFR Order; (4) timely appeal the MFR Order; or, (5) move to reinstate the automatic stay." (Id.) (citing Doc. 22-2). "Therefore," Udren concludes, "Plaintiffs are bound by the MFR Order and Udren may rely on the MFR Order establishing a default necessitating a foreclosure action." (Id.).

**\*10** Udren also argues that "the Confirmed Plan to cure the default proposed by Plaintiffs in their bankruptcy and subsequently confirmed by Court Order is binding and conclusive upon Plaintiffs." (Id.) (emphasis in original). Udren contends that Plaintiffs are bound by the Confirmed Plan, "which provide[s] that Plaintiffs owed US Bank pre-petition arrears[footnote omitted] of $14,607.81." (Id.). Udren points out that "Plaintiffs admit in their Amended

2017 WL 1178047

Complaint that they only paid '$12,600 in pre-petition arrears' through bankruptcy, leaving a deficiency of $2,007.81." (Doc. 22, pp. 10-11) (citing Doc. 22-1). Therefore, Udren concludes, "Plaintiffs ... admit they have not cured the pre-petition amounts through bankruptcy." (Id. at p. 11). As a result, Udren argues that since the "[p]re–and post-petition payment defaults are conclusively established through the record ... [it] cannot be held liable under Dragonetti for representing a lender that commence[d] a lawsuit against borrowers with an established default." (Id.) (citing Docs. 22-1, 22-3, 22-6).

Udren also claims that "judicial estoppel 'applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted.' " (Id.) (quoting Oneida Motor Freight Inc. v. United Jersey Bank, et al., 848 F.2d 414, 419 (3d Cir. 1988)). Here, Udren states that:

> Plaintiffs confusingly and unartfully state, "Plaintiffs never missed a single payment after relief was granted to defendant US Bank in the bankruptcy until defendant Ocwen began returning plaintiffs' payments in January 2014 despite [sic] Plaintiffs having copies of checks and bank statements evidencing payment for every month alleged unpaid."

(Id.) (citing Doc. 22-1).

Udren continues by contending that Plaintiffs' wrongful use of civil proceedings claim should be dismissed because even if the Court assumes "the absence of judicial admission of default by Plaintiffs in the bankruptcy proceeding, Plaintiffs' failure to effectively raise or plead defenses in the Foreclosure Action further buffers Udren from liability." (Doc. 22, p. 12). According to Udren, Plaintiffs did not plead any facts in the foreclosure action "which would have placed Udren on notice that Plaintiffs' claim of payment demanded investigation." (Id.). Udren argues that in Pennsylvania the defense of payment "must be pled in New Matter or waived." (Id.) (citing Pa.R.C.P. 1030(a), (b); Pa.R.C.P. 1033(a)). Udren claims that "Plaintiffs waived their claim of payment for failure to raise it as a defense in the foreclosure and cannot establish that Udren's primary purpose for which the proceedings were brought was not 'that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.' " (Id.).

Finally, Udren argues that "Plaintiffs prevailed at trial not because the Plaintiffs proved they were 'current' or the foreclosure was wrongful; rather, because US Bank failed

to meet its burden of proof because business records were determined to be embedded with hearsay." (Id.). Merely prevailing at trial, according to Udren, "does not support a Dragonetti claim...." (Id.).

U.S. Bank and Ocwen likewise move to dismiss Plaintiffs' Dragonetti Act claim. (Doc. 24, pp. 8-11). According to U.S. Bank and Ocwen, Plaintiffs' "Dragonetti Act claim fails for two reasons: (1) defendants had probable cause to commence the Foreclosure Action; and (2) the [Plaintiffs] failed to allege that defendants commenced the Foreclosure Action for an improper purpose." (Doc. 24, p. 8).

In regards to their first point, U.S. Bank and Ocwen argue that "[t]he publicly-filed bankruptcy records demonstrate that Ocwen and U.S. Bank had probable cause to initiate the Foreclosure Action." (Id.). Specifically, "[t]he MFR Order and Confirmed Plan establish that the [Plaintiffs] failed to maintain both post-petition and pre-petition mortgage obligations." (Id. at p. 9). According to U.S. Bank and Ocwen, "[t]he MFR Order, in particular, establishes [Plaintiffs] post-petition mortgage default." (Id.). U.S. Bank and Ocwen state that "[t]he Bankruptcy Code authorizes the court to grant relief from the automatic stay, in the form of an order 'terminating, annulling, modifying or conditioning' the automatic stay, for 'cause.' " (Id.) (quoting 11 U.S.C. § 362(d)). "Under § 326(d)," U.S. Bank and Ocwen assert, "the party seeking relief from the stay has an initial burden to demonstrate cause for relief." (Id.) (citing In re Ward, 837 F.2d at 128). Additionally, U.S. Bank and Ocwen state that "[a] bankruptcy court's order granting relief from the automatic stay constitutes a final order." (Id.) (citing In re Comer, 716 F.2d at 172). U.S. Bank and Ocwen claim that Plaintiffs "did not oppose the MFR or challenge the MFR Order once it was entered." (Doc. 24, p. 9). "Thus, Ocwen and U.S. Bank appropriately relied on the MFR Order to commence the Foreclosure Action." (Id.).

**\*11** In regard to the "Confirmed Plan," U.S. Bank and Ocwen argue that it "binds" Plaintiffs. (Id.). According to U.S. Bank and Ocwen, "[a] confirmed plan constitutes a new contract between the debtor and creditors." (Id.) (citing In re Pabilla, 379 B.R. 643, 663 (Bankr. S.D. Tex. 2007)). Moreover, U.S. Bank and Ocwen state that "[t]he confirmation order judicially validates the plan as the new 'contract' between the debtor and the creditors whose rights are addressed in the plan, with the plan either supplementing or superseding the prepetition legal relationship between the debtor and the creditors." (Id.) (citing In re McDonald, 336

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 12 of 72

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

B.R. 380, 383 (Bankr. N.D. Ill. 2006); In re Turek, 346 B.R. 350, 354-55 (Bankr. M.D. Pa. 2006); In re Miller, 325 B.R. 539, 543 (Bankr. W.D. Pa. 2005); In re Bryant, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005)). U.S. Bank and Ocwen continue by stating that "[s]ection 1327(a) of the Bankruptcy Code provides: 'The provisions of a confirmed plan bind the debtor and each creditor.' " (Id.). As a result, U.S. Bank and Ocwen conclude, Plaintiffs are "bound by the terms of the Confirmed Plan, which provides that they owed U.S. Bank and Ocwen pre-petition arrears of $14,607.81." (Id.). As U.S. Bank and Ocwen point out, Plaintiffs "admit in their Amended Complaint that they only paid '$12.600 in pre-petition arrears' through bankruptcy, leaving a deficiency of $2,007.81." (Doc. 24, pp. 9-10). Consequently, U.S. Bank and Ocwen conclude that "[t]he fact on which [they] based the foreclosure action were not merely 'reasonably believed' by them, those facts were established by the MFR Order and Confirmed Plan." (Id. at p. 10). Therefore, U.S. Bank and Ocwen argue that they had "probable cause to assert that the [Plaintiffs] had defaulted and to initiate foreclosure against them, and thus the Dragonetti Act claim must fail." (Id.).

Additioanlly, U.S. Bank and Ocwen seek dismissal of Plaintiff's Dragonetti claim because Plaintiffs failed to allege that the primary purpose for the foreclosure action was for a purpose other than adjudicating the foreclosure action. (Id.). Specifically, U.S. Bank and Ocwen argue that the Plaintiffs do "not allege any facts, or even legal conclusions, regarding the defendants' alleged primary purpose in bringing the Foreclosure Action." (Id.). While U.S. Bank and Ocwen acknowledge that Plaintiffs do allege that Defendants "did not properly investigate their claims before asserting them," they claim that Plaintiffs "do not state that [U.S. Bank and Ocwen] initiated the Foreclosure Action for an improper purpose." (Id.). According to U.S. Bank and Ocwen, "[t]he gist of the claim is that defendants are incorrect to assert [Plaintiffs] were in default, not that defendants initiated the Foreclosure Action for a purpose other than the relief sought on the face of their pleadings." (Doc. 24, p. 10).

Plaintiffs respond by arguing that "[n]o pleading filed or ruling entered in either Plaintiffs' Bankruptcy or the Foreclosure Action substantively bars Plaintiffs' Dragonetti claim...." (Doc. 27-1, p. 9). Initially, Plaintiff claims that since "none of [Defendants'] Exhibits A through J are attached by plaintiffs as Exhibits to their complaint" and the motions are brought under Federal Rule of Civil Procedure 12(b)(6), all of Defendants' "exhibits are procedurally defective and should be stricken." (Id. at p. 10). Additionally, according

to Plaintiffs, "[n]otwithstanding the procedurally defective nature of the Exhibits, Movant's arguments based thereon are substantively unavailing." (Id.). In particular, Plaintiffs claim that the "Exhibits are irrelevant to a determination of Plaintiffs' Dragonetti claim premised on the continued prosecution of the foreclosure action without probable cause...." (Id.).

Plaintiffs then address the argument advanced by U.S. Bank and Ocwen that the bankruptcy filings, specifically the Confirmed Plan, bar the Dragonetti claim. (Id. at pp. 10-11). According to Plaintiffs, the "Plan is irrelevant to determining any post-petition default by plaintiffs to support probable cause to prosecute the 2014 foreclosure action by defendants three (3) years later." (Id. at p. 10).

Defendants, in their joint reply addressing Plaintiffs' Dragonetti claim, first contend that the exhibits they attached to their respective filings are properly before the Court because "a court may also consider public documents and prior judicial proceedings in evaluating a motion to dismiss" and Plaintiffs "expressly reference many of the documents attached to Defendants' motions in their amended complaint." (Doc. 28, p. 5). Defendants then argue that Plaintiffs' "miss the point" on the impact of the "MFR Order." (Id. at pp. 5-6). In particular, Defendants state that "not only did the MFR Order establish the [Plaintiffs'] default, but that it gave Defendants probable cause to file the Foreclosure Action." (Id. at p. 6). "After all," Defendants continue, "the motion for relief from the automatic stay alleged that [Plaintiffs] had post-petition arrears, and [Plaintiffs], who were represented by counsel in the bankruptcy action, did not contest that point, and allowed the MFR Order to be entered." (Id.). "In short, when Defendants told the bankruptcy court that [Plaintiffs] were behind in their mortgage payments, [Plaintiffs] stayed silent, allowing the bankruptcy judge to enter a final order that expressly permitted the Foreclosure Action to be filed." (Id.). As a result, Defendants argue, Plaintiffs' Dragonetti claim should be barred because the foreclosure action was brought for a proper purpose. (Id.).

**\*12** Turning first to the exhibits attached to Defendants' respective briefs in support, it should be noted that "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Said differently, the United States Court of Appeals for the Third Circuit

2017 WL 1178047

has stated that "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, [Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ], and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.' " Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (second alteration in original) (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, Federal Practice & Procedure § 1357 (3d ed. 2004)); see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claim are based on the document."). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.' " Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Additionally, a court "may take judicial notice of the contents of another Court's docket." Orabi v. Attorney Gen. of the U.S., 738 F.3d 535, 537 n.1 (3d Cir. 2014). Moreover, "[t]aking judicial notice of the existence of other proceedings does not convert a motion to dismiss into a motion for summary judgment as long as the court does not take judicial notice of those proceedings to find facts." In re Able Labs. Sec. Litig., 2008 U.S. Dist. LEXIS 23538, at *62 n.21, 2008 WL 1967509 (D.N.J. Mar. 24, 2008) (citing S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Global Network Comm. Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)).

"The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated 'where plaintiff has actual notice ... and has relied upon these documents in framing the complaint.' " In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993); citing San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 808-09 (2d Cir. 1996)). "What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." Id. (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus. "[w]hen a plaintiff relies on a document without attaching it to the complaint, the

plaintiff nevertheless has notice that the document will be at issue." Hughes v. UPS, 639 Fed.Appx. 99, 103 (3d Cir. 2016) (non-binding precedent) (citing Schmidt, 770 F.3d at 249). "Indeed, failure to consider such documents would raise the countervailing concern that 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.' " Id. (quoting Pension Benefit, 998 F.2d at 1196).

Defendants have attempted to incorporate a number of documents into the motion to dismiss record which they contend are relevant to Plaintiffs' Dragonetti claim. See (Doc. 22); (Doc. 24). First, of those documents produced by Defendants for purposes of their respective motions to dismiss, Plaintiffs specifically cited to the following in their amended complaint: 1) U.S. Bank's motion for relief from stay filed on July 18, 2013, in the Plaintiffs' action in the United States Bankruptcy Court for the Middle District of Pennsylvania; 2) an August 8, 2013 order issued by the Bankruptcy Court; 3) Defendants' June 26, 2014 foreclosure complaint filed against Plaintiffs in the Court of Common Pleas of Wayne County, Pennsylvania; 4) the March 13, 2015 verdict rendered in the underlying mortgage foreclosure action; 5) Plaintiffs' discharge received in the bankruptcy action for their payment of $12,600 in pre-petition arrears to Ocwen; and 6) Ocwen's October 7, 2015 response filed in the bankruptcy action, which alleged that Plaintiffs' had a post-petition mortgage loan default from December 1, 2013 through October 1, 2015 in the total amount of $36,851.75. See (Doc. 14, pp. 3-4). Plaintiffs' discussion of these documents establishes that they were at the very least aware of their existence at the time they filed their amended complaint. Moreover, if this Court did not consider the aforementioned documents invoked by Plaintiffs' in their amended complaint such an action would "raise the concerns addressed in Pension Benefit[ ], 998 F2d at 1196." Hughes, 2016 U.S. App. LEXIS 1682, at *8. Finally, there is no dispute as to the authenticity of these documents Defendants are attempting to incorporate into the motion to dismiss record. See (Doc. 27-1, pp. 9-10).

**\*13** Additionally, the pertinent exhibits at issue were filed in judicial proceedings. See (Docs. 22-4, 22-6, 22-7, 24-3, 24-4, 24-5); In re Bainbridge, No. 10-9019 (Bankr. M.D. Pa. filed Nov. 4, 2010). As discussed above, "[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." S. Cross Overseas Agencies, 181 F.3d at 426 (citing City of Pittsburgh v. W. Penn Power Co., 147

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 14 of 72

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

F.3d 256, 259 (3d Cir. 1998); Pension Benefit, 998 F.2d at 1196; Iacaponi v. New Amsterdam Cas. Co., 379 F.2d 311, 311-12 (3d Cir. 1967); In re Woodbar Realty Co., 294 F.2d 785, 788 (7th Cir. 1961); DiNicola v. DiPaolo, 945 F. Supp. 848, 855 n.2 (W.D. Pa. 1996); Kithcart v. Metro. Life Ins. Co., 62 F. Supp. 93, 94 (W.D. Mo. 1944)). Notably, "if facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss." Smith v. Litton Loan Servicing, LP, 2005 U.S. Dist. LEXIS 1815, at *18, 2005 WL 289927 (E.D. Pa. Feb. 4, 2005) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1364 (2004)).

Therefore, based on the foregoing, it is determined that the aforementioned exhibits attached to Defendants respective briefs in support will be considered in reaching a determination concerning the instant motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) challenging, inter alia, Plaintiffs' Dragonetti claims. Thus, with that in mind, the Court will now turn to the merits of the respective argument advanced by Defendants concerning Plaintiffs' Dragonetti claims.

"The Dragonetti Act codifies the common law tort of wrongful use of civil proceedings in Pennsylvania." Schmidt v. Currie, 217 Fed.Appx. 153, 155 (3d Cir. 2007) (citing 42 PA. CON. STAT. ANN. §§ 8351-8354). "Dragonetti Act claims may be brought against parties and the attorneys that represent them." Id. (citing 42 PA. CON. STAT. ANN. §§ 8351-8354). The United States Court of Appeals for the Third Circuit has stated that:

> A Dragonetti Act claim for wrongful use of civil proceedings has five elements, that: (1) the current plaintiff prevailed in the underlying actions; (2) the defendants acted in a grossly negligent manner or without probable cause; (3) the defendant had an improper purpose in pursuing the underlying action; (4) the proceedings terminated in favor of the plaintiff; and (5) the plaintiff was harmed.

The Bobrick Corp. v. Santana Prods., Inc., 422 Fed.Appx. 84, 86 (3d Cir. 2011) (citing 42 PA. CONS. STAT. ANN. §§ 8351(a), 8352; McNeil v. Jordan, 586 Pa. 413 (2006)); see Schmidt, 217 Fed.Appx. 153, 155 (3d Cir. 2007) ("To prevail on a Dragonetti Act claim, a plaintiff must prove that 'a person who [took] part in the procurement, initiation or continuation of civil proceedings against another.... (1) [acted] in a grossly negligent manner or without probable cause and primarily for [an improper] purpose ...; and (2) the proceedings ... terminated in favor of the person against whom they [were] brought.' ") (quoting 42 PA. CON. STAT. ANN. §§ 8351-8354). The Dragonetti Act defines "probable cause" as follows:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonable believes in the existence of the facts upon which the claim is based, and either (1) reasonably believes that under those facts the claim may be valid under the existing or developing law; (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

**\*14** 42 PA. CONS. STAT. ANN. § 8352. "The existence of probable cause does not automatically defeat a Dragonetti Act claim" because gross negligence can also serve as a basis for liability in a Dragonetti Act claim. Peek v. Whittaker, 2014 U.S. Dist. LEXIS 70461, at *15-16, 2014 WL 2154965 (W.D. Pa. May 22, 2014) (citing Buchleitner v. Perer, 794 A.2d 366, 377-78 (Pa. Super. Ct. 2002)). "In the context of a Dragonetti action, Pennsylvania courts have defined gross negligence to mean the 'want of scant care' or 'lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another

2017 WL 1178047

party, who may typically recover exemplary damages.' " Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005) (quoting Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001)).

The United States Court of Appeals for the Third Circuit has stated that "a party seeking redress under [the] Dragonetti [Act] bears a heavy burden." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002). Specifically, the plaintiff bringing a Dragonetti Act claim bears such a burden "because the plaintiff need not only demonstrate either probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose." Currie, 217 Fed.Appx. at 155 (citing Broadwater v. Senter, 725 A.2d 779, 784 (Pa. Super. Ct. 1999)). However, "[a]n improper purpose may ... be inferred if the action is filed without probable cause." Peek, 2014 U.S. Dist. LEXIS 70461, at *22 n.8, 2014 WL 2154965 (citing Logan v. Salem Baptist Church of Jenkintown, 2010 U.S. Dist. LEXIS 86916 (E.D. Pa. Aug. 24, 2010)); see Perelman v. Perelman, 125 A.3d 1259, 1264 (Pa. Super. 2015) (quoting Gentzler v. Atlee, 660 A.2d 1378, 1385 (1995)). Said differently, the Pennsylvania Superior Court has stated that "an improper purpose 'may be inferred where the action is filed without justification.' " Regent Ins. Co. v. Strausser Enters., 902 F. Supp. 2d 628, 640 n.34 (E.D. Pa. 2012) (quoting Broadwater, 725 A.2d at 784). "Thus, a claim for wrongful use of civil proceedings will lie 'if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause.' " Perelman, 125 A.3d at 1264 (quoting Gentzler, 660 A.2d at 1385).

Turning first to Defendants respective arguments concerning the impact of the Bankruptcy Court's grant of relief from automatic stay, it is determined that these contentions are without merit. Relief from the automatic stay in a bankruptcy action is governed by 11 U.S.C. § 362(d). Pursuant to section 362(d)(1), relief from the stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." In re Stone Res., Inc., 482 Fed.Appx. 719, 722 (3d Cir. 2012) (quoting 11 U.S.C. § 362(d)(1)). " 'Cause' is not a defined term in the Bankruptcy Code...." 1 BANKRUPTCY LAW MANUAL § 7:53 (5th ed.). "[B]ecause § 362(d)(1) does not define 'cause,' bankruptcy courts have the discretion to consider what constitutes cause based on the totality of the circumstances." In re Flintkote Co., 533 B.R. 887, 894 (D. Del. 2015) (citing In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997)). Here, the Bankruptcy Court found sufficient "cause"

to grant relief from the automatic stay because of the "failure of the Debtor to file an Answer or otherwise plead as directed by the Court...." (Doc. 22-6). As a result, even if the Order issued by the Bankruptcy Court had preclusive effect on the instant Dragonetti claim, the Order does not provide enough for this Court to say as a matter of law that the Order established "probable cause" to bring the underlying mortgage foreclosure action, much less to continue that action. Therefore, the Court will deny Defendants' respective motions to dismiss to the extent that they argue Plaintiffs' Dragonetti claim should be dismissed due to the Bankruptcy Court's order dated August 6, 2013.

*15 As for Defendants' respective arguments that Plaintiffs' Dragonetti claims should be dismissed because of the Confirmed Plan dated April 15, 2011, see (Doc. 22, pp. 10-11); (Doc. 24, pp. 9-10), those contentions also are without merit. As stated, Defendants argue that Plaintiffs' admission that they only paid $12,600.00 of the "$14,607.81" pre-petition arrears establishes a deficiency of approximately $2,000.00. (Id.). This deficiency, according to Defendants, shows that Plaintiffs admit that "they have not cured the pre-petition amounts through bankruptcy." (Doc. 22, p. 11); (Doc. 24, pp. 9-10). However, what the Defendants leave out of this argument is a mention of the Plaintiffs' allegation concerning the Bankruptcy Court's October 7, 2015 discharge of Plaintiffs' "chapter 13 bankruptcy." See (Doc. 14, p. 4). Specifically, as alleged by Plaintiffs in their amended complaint, on October 7, 2015, they "received a discharge of their chapter 13 bankruptcy wherein they had paid $12,600 in pre-petition arrears to Ocwen and its predecessor servicer, Litton.[3] (Id.). Moreover, Plaintiffs allege that they "never missed a single payment after relief was granted to defendant US Bank in the bankruptcy until defendant began returning plaintiffs' payments in January 2014 despite Plaintiffs having copies of checks and bank statements evidencing payments for every month alleged unpaid." (Id. at pp. 4-5). Thus, taking these allegations as true and construing all inferences in the light most favorable to the non-moving party, Plaintiffs' allegation that they paid "$12,600" in pre-petition arrears does not establish, as a matter of law, that Plaintiffs' have failed to state a Dragonetti claim upon which relief may be granted. Therefore, Defendants' respective arguments based upon the Confirmed Plan issued on April 15, 2011, will be denied.

3       "The discharge of a debt operates as an injunction
        against efforts to collect the discharged debt, and a
        discharge voids any judgment at any time obtained,

2017 WL 1178047

to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged." 8B C.J.S. BANKRUPTCY § 1075 (March 2017).

As noted, Udren also claims that Plaintiffs have failed to state claim under Dragonetti because judicial estoppel applies. See (Doc. 22, pp. 11-12). However, this claim also fails. "Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010). "It rests on the basic notion that, " 'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.' ' " Semper v. Gomez, 747 F.3d 229, 247 (3d Cir. 2014) (quoting In re Kane, 628 F.3d at 638).

Importantly, Udren has not identified two (2) contrary positions taken by Plaintiffs which would allow for the application of this equitable doctrine. See (Doc. 22, pp. 11-12). Further, " 'judicial estoppel is generally not appropriate where the defending party did not convince the [court] to accept its earlier position.' " Semper, 747 F.3d at 249 (alterations in original) (quoting G-Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009)); see also Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 781 (3d Cir. 2001). Udren has not established that Plaintiffs' were successful in advancing their contrary position. See (Doc. 22, pp. 11-12). Rather, as stated by Udren, "Plaintiffs prevailed at trial not because the Plaintiffs proved they were 'current' or the foreclosure was wrongful; rather, because US Bank failed to meet its burden of proof because business records were determined to be embedded with hearsay." (Id. at p. 12). As a result, that factor also supports the finding that Udren's judicial estoppel claim lacks merit.

Udren's claim that Plaintiffs failed to "effectively raise or plead defenses in the Foreclosure Action further buffers [it] from liability," (Id.), also does not establish that its entitled to dismissal of Plaintiffs' Dragonetti claim. According to Udren, "[t]here are no facts pleaded of record in the foreclosure which would have placed Udren on notice that Plaintiffs' claim of payment demanded investigation." (Id.). However, "[i]n an action for mortgage foreclosure, the entry of summary judgment is proper if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount." Cunningham v. McWilliams, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998) (citing Landau v. W. Pa.

Nat'l Bank, 282 A.2d 335, 340 (1971)). Clearly, an element of the mortgage foreclosure action in Pennsylvania is the establishment that the defendant defaulted on the mortgage obligation. Cunningham, 714 A.2d at 1057. Thus, by brining the mortgage foreclosure suit, Defendants would have been on notice that an investigation into Plaintiffs' payments on the obligation in question would have been necessary to establish, in part, Defendants' entitlement to judgment on that claim. As a result, the Court rejects Udren's contention that Plaintiffs' failure to "effectively raise or plead defenses in the Foreclosure Action further buffers [it] from liability" because Plaintiffs' payment on, or lack thereof, the mortgage obligation was a central factual question in the underlying foreclosure action. See (Doc. 22, p. 12). Such a conclusion is supported by the Court of Common Pleas entering judgment in favor of Plaintiffs because their default was not established by the evidence presented at trial. (Doc. 24-7). As a result, Udren's motion to dismiss on this ground will be denied.

*16 As for Defendants U.S. Bank and Ocwen's claim that Plaintiffs have failed to allege that Ocwen or U.S. Bank filed the underlying mortgage foreclosure action for an improper purpose, that claims is also without merit. (Id. at pp. 10-11). "An improper purpose is 'a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based.' " Montgomery v. Midland Credit Mgmt., 2014 U.S. Dist. LEXIS 100327, at *22, 2014 WL 3563198 (E.D. Pa. June 19, 2014) (quoting 42 Pa. C.S.A. § 8351(a)(1)). However, "a claim for wrongful use of civil proceedings will lie 'if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause.' " Perelman, 125 A.3d at 1264 (quoting Gentzler, 660 A.2d at 1385). Here, Plaintiffs allege that "[e]ven after the complaint in foreclosure was filed, and Plaintiffs continually informed Defendants of their mistake, Defendants pursued their meritless claim." (Doc. 14, p. 4). They also claim that Defendants "initiated the foreclosure litigation against Plaintiffs without investigating the claimed default whatsoever." (Id.). Further, Plaintiffs allege that they "never missed a single payment after relief was granted to defendant US Bank in the bankruptcy until defendant began returning plaintiffs' payments in January 2014 despite Plaintiffs having copies of checks and bank statements evidencing payments for every month alleged unpaid." (Id. at pp. 4-5). Taking these allegations as true and every inference in favor of the Plaintiffs, it is at least plausible that Plaintiffs can show, after discovery, that Defendants Ocwen and U.S. Bank filed the underlying mortgage foreclosure action without justification

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 17 of 72

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

and, thus, for an improper purpose. 42 Pa. C.S. § 8354(4); see
Perelman, 125 A.3d at 1264 (quoting Gentzler, 660 A.2d at
1385); Regent Ins. Co., 902 F. Supp. 2d at 640 n.34 (quoting
Broadwater, 725 A.2d at 784); Ciolli v. Iravani, 625 F. Supp.
2d 276, 295 (E.D. Pa. 2009) (Noting that an improper purpose
can be inferred where an action is filed without justification
and "whether an alleged purpose is improper is an issue for
the jury to decide.") (quoting Broadwater, 725 A.2d at 784;
citing Bannar v. Miller, 701 A.2d 242, 249 (Pa. Super. Ct.
1997)); Gigli v. Palisades Collection, L.L.C., 2008 U.S. Dist.
LEXIS 62684, at *46-47, 2008 WL 3853295 (M.D. Pa. Aug.
14, 2008) (Vanaskie, J.) (citing Buchleitner v. Perer, 794 A.2d
366, 377 (Pa. Super. Ct. 2002)); but see Bobrick Corp. v.
Santana Prods., Inc., 698 F. Supp. 2d 479, 492 (M.D. Pa.
2010) (Vanaskie, J.) ("The court decides the existence of
probable cause ... or improper purpose as a matter of law when
the facts are not in dispute.") (citing Schmidt, 217 Fed.Appx.
at 155). Consequently, U.S. Bank and Ocwen's motion to
dismiss on this ground will be denied.

Based on the foregoing, Plaintiffs' Dragonetti claim has
survived all challenges raised by Defendants. Therefore,
those portions of Defendants' respective motions seeking
dismissal of Plaintiffs' Dragonetti claim will be denied.

## ii. UTPCPL Claim

Plaintiffs also allege that Defendants violated the UTPCPL.
(Doc. 14, pp. 6-8). According to Plaintiffs:

> US Bank, through authorized agents
> and employees but not limited to
> co-defendant Ocwen, and Ocwen,
> through authorized agents and
> employees including but not limited
> to co-defendant Udren failed to state
> material facts or otherwise misstated,
> misrepresented, or omitted the true
> facts concerning or related to the status
> of the Loan that tended to deceive and/
> or did in fact deceive plaintiffs....

(Doc. 14, p. 7). Plaintiffs claim that Defendants' unfair or
deceptive acts include, but are not limited to, the following:

(a) Represented that an accurate
accounting of plaintiffs' loan had been
made and reviewed thereafter in the
course of the foreclosure; (b) By
the filing of the underlying action
represented that plaintiffs were in
default under the terms of the Note
and Mortgage; (c) By the filing of the
underlying litigation represented that
defendants were entitled to foreclose
and sell plaintiffs' home at sheriff's
sale without first properly accounting
for plaintiffs' payments under the
loan; (d) By the filing of the
underlying litigation represented that
the underlying foreclosure was lawful.

(Id.). Plaintiffs allege that "[i]t is unreasonable to conclude
that a national bank like US Bank and a national mortgage
servicer like Ocwen does not intend for its customers to
rely upon its communications about their account–especially
when," according to Plaintiffs, "the communications involve
seeking to sell plaintiffs' home as in the underlying action
and the defendants collectively fail to acknowledge or review
their errors and instead simply ratify their continued wrongful
conduct as in this matter." (Id.). Plaintiffs claim that they
"reasonably relied upon the material acts and actions of
defendants as exemplified by their retaining counsel to
defendant the underlying litigation." (Doc. 14, p. 7). Plaintiffs
state that:

> [b]ut for defendants and their
> respective agents' and employees'
> acts and omissions and disregard for
> its won records reflecting default
> by plaintiffs when plaintiffs' regular
> payments were cashed by Ocwen for
> nearly a year after a date of default
> alleged in the underlying litigation
> resulting in conflicting and otherwise
> incorrect accounting of plaintiffs' loan,
> plaintiffs would not have sustained any
> damages and losses.

2017 WL 1178047

**\*17**  (Id. at p. 8).

Based on the foregoing, Plaintiffs claim that Defendants violated section 201-3 of the UTPCPL. (Id.). Specifically, Plaintiffs allege that Defendants violated section 201-3 when they "engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding as to a default under the terms of the Note and mortgage entitling defendants to file the foreclosure." (Id.) (citing 73 P.S. § 201-2(4)(xxi)). Also, Plaintiffs allege that Defendants violated section 201-3 of the UTPCPL when they:

> misrepresented the characteristics or benefits of the loan accounting of the loan rendered to plaintiffs as being inaccurate when the loan's servicing and accounting was defective resulting in false allegations of default and false legal claims of right to sell plaintiffs' home under the terms of the Note and Mortgage.

(Doc. 14, p. 8) (citing 73 P.S. § 201-2(4)(v)).

The UTPCPL is "a remedial statute intended to protect consumers from unfair or deceptive [business] practices or acts...." Balderston v. Medtronic Sofamor Danek, Inc., 152 F. Supp.2d 772, 776 (E.D. Pa. 2001). The UTPCPL "prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,' as defined by other provisions of the statute." Mondron v. State Farm Mut. Auto. Ins. Co., 2016 U.S. Dist. LEXIS 176404, at *10, 2016 WL 7384183 (W.D. Pa. Dec. 21, 2016) (alteration in original) (quoting 73 P.S. §§ 201-3 and 201-2(4)). Notably:

> the UTPCPL provides a private cause of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful."

Id. at *10-11 (quoting 73 P.S. § 201-9.2(a)). "To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) 'ascertainable loss of money or property, real or personal,' [73 P.S.] § 201-9.2(a), (2) 'as a result of' the defendant's prohibited conduct under the statute." Laymark v.

Bank of Am., N.A., 783 F.3d 168, 180 (3d Cir. 2015) (quoting 73 P.S. § 201-9.2(a); citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004)). Furthermore, a plaintiff bringing a claim under the UTPCPL " ' must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance....' " Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008) (first alteration in original) (quoting Yocca, 854 A.2d at 438); see Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005); see also Mohney v. Forney, 93 Fed.Appx. 391, 395 (3d Cir. 2004); Post v. Liberty Mut. Grp., Inc., 2014 U.S. Dist. LEXIS 83373, at *7-8, 2014 WL 2777396 (E.D. Pa. June 18, 2014) (quoting Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009); citing Toy v. Metro. Life Ins. Co., 863 A.2d 1, 11 (Pa. Super. Ct. 2004), aff'd, 928 A.2d 186 (Pa. 2007)); Grudkowski v. Foremost Ins. Co., 2013 U.S. Dist. LEXIS 30567, at *26-31, 2013 WL 816666 (M.D. Pa. Mar. 5, 2013)) (Caputo, J.).

**\*18**  Defendants move to dismiss Plaintiffs' UTPCPL claims.[4] See (Docs. 21, 23). In particular, Udren argues that Plaintiffs have failed to plead an ascertainable loss of money or property, real or personal, and justifiable reliance, both of which are required to successfully prosecute a UTPCPL action. (Doc. 22, p. 13). As for justifiable reliance, Udren argues that:

> Plaintiffs do no assert one iota of a fact supporting justifiable reliance or specific harm therefrom, rather, they baldly claim that they were "unable to buy a new truck," they "have been forced to rent rather than purchase a new home because they cannot qualify for an affordable mortgage" their credit was damaged and they hired an attorney to defend the foreclosure action.

(Doc. 22, p. 14). Udren claims that "[t]here is absolutely no nexus between any alleged representation of Udren and the alleged (and unascertainable) harm by Plaintiffs." (Id.). Therefore, Udren concludes, "Plaintiffs' claims for purported violations of the UTPCPL ... should be dismissed." (Id.).

[4]  Udren also argues that Plaintiffs' claim pursuant to the Fair Credit Extension Uniformity Act ("FCEUA"), 73 PA. CON. STAT. ANN. § 2270.1 et seq., should be dismissed because it is expressly excluded from liability under the FCEUA. (Doc. 22, p. 13). Notably, however, Plaintiffs have withdrawn their FCEUA claim. See (Doc. 14, pp. 6-8); (Doc. 27-1, p. 13). Consequently, to the

2017 WL 1178047

extent that Udren moves for dismissal of Plaintiffs' withdrawn FCEUA claim, it will be dismissed as moot.

Finally, Udren argues that "the economic loss doctrine precludes Plaintiffs' right to recovery under the UTPCPL, and, therefore, the FCEUA." (Id.). According to Udren, "[h]ere, the determination of whether Udren violated the UTPCPL turns on whether Plaintiffs, as they allege, were current under the terms of the Note and Mortgage." (Id. at p. 15). "Since any claims based on alleged misrepresentations are necessarily interwoven with the mortgage and note themselves," Udren concludes, "Plaintiff[s'] UTPCPL claim is barred by the economic loss doctrine." (Id.).

U.S. Bank and Ocwen argue that there are two (2) reasons why Plaintiffs' UTPCPL claim should be dismissed. (Doc. 24, pp. 11-14). Specifically, U.S. Bank and Ocwen assert that Plaintiffs' UTPCPL claim is barred by the economic loss doctrine and judicial privilege. (Doc. 24, pp. 11-14).

Turning first to U.S. Bank and Ocwen's argument concerning the economic loss doctrine, they claim that "the determination of whether Ocwen and U.S. Bank violated the UTPCPL turns on whether [Plaintiffs], as they allege, were current under the terms of the mortgage loan, i.e., the parties' written agreement." (Id. at p. 12). According to U.S. Bank and Ocwen, "all of the factual allegations contained within Count III relate to the servicing of [Plaintiffs'] mortgage loan and whether their payment were appropriately accounted for under the terms of the parties' loan agreement." (Id.). U.S. Bank and Ocwen conclude that "[b]ecause any claims based on defendants' alleged misrepresentations regarding the mortgage loan's accounting are necessarily interwoven with the mortgage loan, the UTPCPL claim is barred by the economic loss doctrine.[footnote omitted]" (Id. at p. 13). Additionally, U.S. Bank and Ocwen argue that Plaintiffs' "claim of emotional distress" fails to "salvage their UTPCPL claim because such alleged damages are not compensable under the UTPCPL." (Id. at p. 13 n.4).

 *19 U.S. Bank and Ocwen then argue that Plaintiffs' UTPCPL claim is also barred by judicial privilege. (Id. at p. 13). According to U.S. Bank and Ocwen, "[t]his case is no different" than Schwartz v. OneWest Bank, FSB, 614 Fed.Appx. 80, 81-82 (3d Cir. 2015) (non-precedential), which, these Defendants contend, resulted in the Third Circuit finding that the "UTPCPL claim, among others, was barred by Pennsylvania's judicial privilege doctrine." (Doc. 24, p. 14). U.S. Bank and Ocwen claim that "[a]ll of the factual

allegations relating to the UTPCPL describe statements made by defendants in the Foreclosure Action." (Id.). In particular, Plaintiffs:

> allege that Ocwen and U.S. Bank violated the UTPCPL by "[r]epresent[ing] that an accurate account of plaintiffs' loan had been made and reviewed thereafter in the course of the foreclosure" and "[b]y the filing of underlying action represented that plaintiffs were in default [and] that defendants were entitled to foreclose [and] that the underlying foreclosure was lawful."

(Id.) (emphasis and alteration in original). "As such," these U.S. Bank and Ocwen conclude, "the allegations that underpin the UTPCPL claim are the statements and claims made by Ocwen and/or U.S. Bank in the course of the underlying foreclosure litigation, whether in pleadings, other court submissions, or out-of-court discussions regarding this matter." (Id.). Therefore, U.S. Bank and Ocwen conclude, "[a]s the Third Circuit held in Schwartz, such statements are absolutely privileged under Pennsylvania law, and the UTPCPL claim must fail for this reason." (Id.).

Plaintiffs respond by first addressing Udren's argument based on justifiable reliance. (Doc. 27-1, p. 14). According to Plaintiffs, they "justifiably relied on [Udren's] misrepresentations of a default in the Foreclosure Action because they hired counsel to oppose it." (Id.). Plaintiffs continue by asserting that they "were forced to depend upon the Foreclosure Action complaint's misrepresentation of default by paying defense counsel to file an answer in defense to prevent a default judgment that would result in loss of their home." (Id.). Plaintiffs claim that "such reliance was forced rather than seduced by Ocwen does not make it any less reliance or any less justified." (Id.). Further, Plaintiffs argue that they "otherwise clearly allege damages from such misrepresentations being the legal fees and costs paid to defend the Foreclosure Action, emotional and credit damage from therefrom." (Id.).

Plaintiffs then address Udren's argument that they have failed to sufficiently plead ascertainable loss. (Id.). In particular, Plaintiffs claim that Grimes, a case cited by Udren, is distinguishable from the present circumstances. (Id. at pp. 14-15). In particular, Plaintiffs argue that Grimes is inapplicable because, unlike Grimes, which rejected a plaintiff's claim that legal fees incurred bringing a UTPCPL claim satisfies the ascertainable loss requirement, Plaintiffs are claiming the legal fees incurred from the underlying foreclosure action as damages. (Id.). Plaintiffs state that

2017 WL 1178047

"[u]nlike Grimes, however, no facts in the instant case support plaintiffs were spinning novel legal theories to manufacture a default of their mortgage loan to provoke a foreclosure showdown with Ocwen as a pretext to file the instant litigation." (Doc. 27-1, pp. 14-15). "Accordingly," Plaintiffs argue, "the holding of Grimes should be restricted to facts where a UTPCPL consumer has some meaningful choice as to manufacture of their litigation costs in an underlying action rather than the UTPCPL defendant in an underlying action manufacturing those costs by its actions leaving the consumer no choice but to incur legal costs to combat a wrong." (Id. at p. 15). Moreover, "[t]his formulation is otherwise consistent with the statutory language of the UTPCPL which explicitly provides that any person who suffers an ascertainable loss 'may bring a private action to recover actual damages.' " (Id.).

**\*20** In regards to the argument that their UTPCPL claims are barred by the United States Court of Appeals' decision in Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002), and the economic loss doctrine, Plaintiffs claim that Defendants' reliance "upon Werwinski is misplaced insofar as the Third Circuit Court of Appeals' projection of the Pennsylvania Supreme Court's decision on gist of the action/economic loss doctrine is no longer controlling given that" the Supreme Court of Pennsylvania has "issued a ruling on application of this doctrine which permits tort claims for fraudulent contract performance." (Doc. 27-1, p. 16) (citing Bruno v. Erie Ins. Co., 106 A.3d 48 (Pa. 2014)).

"In Bruno," Plaintiffs state, "homeowner insureds sued their insurer, Erie Insurance Company, for negligently performing under the applicable homeowners' insurance policy covering mold remediation expenses." (Doc. 27-1, p. 16). "Erie had informed the plaintiffs that the suspected mold was harmless, causing plaintiffs to continue residing in the home during renovations until the mold later proved toxic, causing plaintiffs significant respiratory illness including throat cancer." (Id.). According to Plaintiffs, "[t]he relevant issue on appeal was whether the Brunos' negligence claim, based on Erie's representation that the mold was harmless, was barred by the gist of the action doctrine." (Id.). Plaintiff continues by noting that the Supreme Court of Pennsylvania "conceded that Erie was under a contractual obligation to investigate the alleged mold...." (Id.). However, the Supreme Court of Pennsylvania:

> held that the gist of the action doctrine did not apply because Erie acted negligently in fulfilling its contractual obligations, and this negligence "concerns Erie's alleged

breach of a general social duty, not a breach of any duty created by the insurance policy itself."

(Id. at pp. 16-17). Plaintiffs contend that "[t]his represents a break with the [Pennsylvania] Superior Court's holding in eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10 (Pa. Super. 2002) which rejected eToll's argument that 'the duty to refrain from deliberate deceit is a duty implied by law, not derived from a private contract.' " (Doc. 27-1, p. 17). Plaintiffs claim that:

> Bruno recognizes that, while a contract establishes a relationship between parties, it does not provide an exhaustive basis for the source of duties owed by the parties, and that a contractual relationship does not necessarily preclude the existence of extra-contractual duties that may be imposed by common law or statute.

(Id.).

Turning to this matter, Plaintiffs contend that the economic loss doctrine should not apply here because "Ocwen, and Udren, in its capacity as the agent of Ocwen had a duty to avoid unfair and deceptive practices in the latter's performance of services under the mortgage contract with plaintiffs." (Id.). As to the impact of judicial privilege on the viability of their UTPCPL claim, Plaintiffs argue that the Court should not follow the United States Court of Appeals for the Third Circuit's decision in Schwartz. (Id. at pp. 17-18). The Court will address the issues of justifiable reliance and judicial privilege in turn.[5]

5        As discussed in more detail below, since justifiable reliance and judicial privilege are dispositive, the Court will not render a decision on the Defendants' respective arguments concerning the application of the economic loss doctrine to this case or Udren's argument that Plaintiffs failed to sufficiently plead ascertainable loss.

a. Justifiable Reliance

2017 WL 1178047

**\*21** As stated, Udren notes that "[i]n order to proceed under the UTPCPL's private right of action, a plaintiff must plead that he or she 'suffer[ed]' and 'ascertainable loss of money or property, real or personal,' " (Doc. 22, p. 13) (quoting 73 P.S. § 201-9.2(a)). Additionally, Udren also correctly notes that for Plaintiffs to defeat the instant motion to dismiss as to their UTPCPL claims they must sufficiently plead "justifiable reliance under the statute to satisfy this stringent causation requirement." (Id.) (citing Yocca, 854 A.2d at 438); see Hunt, 538 F.3d at 221; Glover v. Wells Fargo Home Mortg., 629 Fed.Appx. 331, 344 (3d Cir. 2015) (" 'To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.' ") (quoting Yocca, 854 A.2d at 438). Udren argues that Plaintiffs' UTPCPL claims should be dismissed because, inter alia, they failed to plead ascertainable loss and justifiable reliance. (Id. at pp. 13-14). According to Udren, "[j]ustifiable reliance is conspicuously absent from the Complaint." (Id.). Udren continues by stating that:

> Plaintiffs do not assert one iota of a fact supporting justifiable reliance or specific harm therefrom, rather, they baldly claim that they were "unable to buy a new truck," they "have been forced to rent rather than purchase a new home because they cannot qualify for an affordable mortgage" their credit was damaged and they hired an attorney to defend the foreclosure action.

(Doc. 22, pp. 13-14). According to Udren, "[t]here is absolutely no nexus between any alleged representation of Udren and the alleged (and unascertainable) harm by Plaintiffs." (Id.). As a result, Udren argues, Plaintiffs' UTPCPL claims should be dismissed.

A review of the amended complaint reveals that Plaintiffs have failed to sufficiently plead that they justifiably relied on a miscommunication or deceptive communication to their detriment. Rather, the basis of Plaintiffs' UTPCPL claim hinges on the fact that they did not rely on the alleged misrepresentations of Udren. Rather, according to Plaintiff, they "reasonably relied upon the material acts and actions of defendants as exemplified by their retaining counsel to defend the underlying litigation." (Doc. 14, p. 7). Plaintiffs further allege that:

> But for defendants and their respective agents' and employees' acts and omissions and disregard for its own

records reflecting default by plaintiffs when plaintiffs' regular payments were cashed by Ocwen for nearly a year after a date of default alleged in the underlying litigation resulting in conflicting and otherwise incorrect accounting of plaintiffs' loan, plaintiffs would not have sustained any damages and losses.

(Id. at p. 8). As these allegations show, Plaintiffs do not allege that they ever thought the communications relevant to their UTPCPL claims were accurate. Instead, as stated, this matter is centered on Plaintiffs' alleged unwillingness to believe the allegations advanced by the Defendants in the underlying mortgage foreclosure case. See Warren v. Wells Fargo Bank, N.A., 2016 U.S. Dist. LEXIS 21253, at *9-10, 2016 WL 693121 (W.D. Pa. Feb. 22, 2016); Williams v. EMC Mortg. Corp., 2013 U.S. Dist. LEXIS 63426, at *17, 2013 WL 1874952 (E.D. Pa. May 3, 2013) ("The plaintiff claims he kept trying to make his regular mortgage payments even after the alleged misrepresentations so it appears he did not rely on the alleged misrepresentations in a way that altered his behavior."). Importantly, " '[w]hether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false.' " Davis v. Bank of Am., N.A., 2016 U.S. Dist. LEXIS 13333, at *13-14, 2016 WL 427050 (E.D. Pa. Feb. 3, 2016) (alteration in original) (quoting Porreco v. Porreco, 571 Pa. 61, 811 A.2d 566 (Pa. 2002)). "A plaintiff 'is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious.' " Davis, 2016 U.S. Dist. LEXIS 13333, at *14, 2016 WL 427050 (quoting Toy v. Metro Life Ins. Co., 928 A.2d 186, 201 (Pa. 2007)).

**\*22** Here, Plaintiffs allege that "[e]ven after the complaint in foreclosure was filed, and Plaintiffs continually informed Defendants of their mistake, Defendants pursued their meritless claim." (Doc. 14, p. 4). This theory is continued by Plaintiffs in their brief in opposition to the motions to dismiss at bar. According to Plaintiffs, "[t]hey did not rely upon the truth of the Foreclosure Action's misrepresentations as one dictionary definition of 'rely' would permit, i.e. to 'place confidence in' and act accordingly." (Doc. 27-1, p. 14). Thus, based upon the facts alleged in their amended complaint, Plaintiffs have failed to sufficiently allege that they justifiably relied on the communications relevant to

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 22 of 72

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)
2017 WL 1178047

their UTPCPL claims. As a result, Plaintiffs' UTPCPL claims against Udren will be dismissed.

Clearly, based upon the facts alleged in the amended complaint, no set of facts can be alleged under these circumstances which would allow Plaintiffs to obtain relief against Udren under the UTPCPL. Specifically, Plaintiffs will be unable to sufficiently plead that they justifiably relied on the communications relevant to their UTPCPL claims against Udren to establish that they are entitled to relief for those claims. As a result, amendment will not be allowed as to these claims because any such amendment would be futile. Therefore, Plaintiffs' UTPCPL claims against Udren will be dismissed with prejudice.

### b. Judicial Privilege

To the extent that U.S. Bank and Ocwen argue that Plaintiffs' UTPCPL claims should be dismissed because they are barred by Pennsylvania's judicial privilege doctrine, (Doc. 24, pp. 2, 13-14), their motion will be granted. As stated, U.S. Bank and Ocwen argue that "[t]his case is no different" than Schwartz v. OneWest Bank, FSB, 614 Fed.Appx. 80, 81-82 (3d Cir. 2015) (non-precedential), which resulted in the Third Circuit finding that the "UTPCPL claim, among others, was barred by Pennsylvania's judicial privilege doctrine." (Doc. 24, p. 14). U.S. Bank and Ocwen claim that "[a]ll of the factual allegations relating to the UTPCPL describe statements made by defendants in the Foreclosure Action." (Id.). In particular, Plaintiffs "allege that Ocwen and U.S. Bank violated the UTPCPL by '[r]epresent[ing] that an accurate account of plaintiffs' loan had been made and reviewed thereafter in the course of the foreclosure' and '[b]y the filing of underlying action represented that plaintiffs were in default [and] that defendants were entitled to foreclose [and] that the underlying foreclosure was lawful.' " (Id.) (emphasis and alteration in original). "As such," U.S. Bank and Ocwen conclude, "the allegations that underpin the UTPCPL claim are the statements and claims made by Ocwen and/or U.S. Bank in the course of the underlying foreclosure litigation, whether in pleadings, other court submissions, or out-of-court discussions regarding this matter." (Id.).

In response, Plaintiffs claim that "[t]he jurisprudence of the Third Circuit in Schwartz is clearly unsound and should not be followed." (Doc. 27-1, p. 17). According to Plaintiffs, "[l]itigation privilege, a doctrine based in common law, does not overcome statutory directives of the legislature." (Doc.

27-1, p. 17). "Hence," Plaintiffs continue, "1 Pa. Code § 1504 holds that a statutory remedy is always preferred over common law...." [6] (Id.). Plaintiffs contend that "[t]he Third Circuit in Schwartz based its holding barring UTPCPL claims upon four (4) case decisions involving a litigation privilege bar to only common law claims." (Id.). Specifically, Plaintiffs state that "General Refractories Company involved claims of Abuse of Process, for which the appeals court reversed and remanded for amendment of the complaint, and barred the common law conspiracy claim." (Id. at pp. 17-18). Plaintiffs continue by stating that the Pennsylvania Superior Court "cases of Binder v. Triangle Publ'ns, Inc. and Richmond v. McHale, involved common law claims of defamation that were barred by the privilege." (Id. at p. 18). "After discussing these cases," Plaintiffs contend, the Third Circuit in Schwartz went "on to make this erroneous broad brush conclusion of law to bring non-defamation claims under the litigation privilege." (Id.).

[6]     As quoted by Plaintiffs, section 1504 states:
        In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.
        1 PA. CONS. STAT. ANN. § 1504; (Doc. 27-1, p. 17).

**\*23** Plaintiffs also take issue with the Third Circuit's reliance on Moses v. McWilliams, 549 A.2d 950 (1988). (Doc. 27-1, p. 18). On this point, Plaintiffs quote the Schwartz decision for the following:

> Although the judicial privilege most often bars defamation suits, Pennsylvania courts have applied the privilege broadly to confer "immunity from civil liability in the context of judicial proceedings."

(Id.). "However," Plaintiffs argue, "the Moses Court was holding nothing of this kind. Indeed, while the Moses holding did apply judicial immunity to constrain a statutory right[footnote omitted], it did so in the factual/legal context of a defamation claim." (Id.) (citing Moses, 549 A.2d 950).

In Schwartz, a plaintiff "brought Pennsylvania state law claims against" the defendant, which included, inter alia, a claim under the UTPCPL. Schwartz, 614 Fed.Appx. at 81. The plaintiff's UTPCPL claim in Schwartz was "based

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 23 of 72

Bainbridge v. Ocwen Loan Servicing, LLC, Not Reported in Fed. Supp. (2017)

2017 WL 1178047

on statements [the defendant] made in connection with foreclosure proceedings on [the plaintiff's] property." Id. "The District Court dismissed [the plaintiff's] claims, holding that [the defendant's] statements were protected by Pennsylvania's absolute judicial privilege and that [the plaintiff's] abuse of process claim was inadequately pled." Id. The Third Circuit noted that:

> all of [the plaintiff's] claims arise from the foreclosure action and communications that occurred in connection with that action, namely the foreclosure complaint, the related sale notices posted as a result of the state court judgment in the foreclosure action, see PA. R. CIV. P. 3129.1, and communications between [the defendant's] and [the plaintiff's] attorneys that directly pertained to the foreclosure action.

Schwartz, 614 Fed.Appx. at 83. In addressing the District Court's "dismissal of all claims but the abuse of process claim on the ground that they depended on communications protected by Pennsylvania's judicial privilege," the Third Circuit found that "[t]hese communications reflected counsel's efforts to share their clients' litigation positions regarding [the defendant's] assertion that the mortgage covered both parcels, and thus were 'pertinent and material to the redress or relief sought' in the foreclosure case." Id. at 81 (quoting Post v. Mendel, 507 A.2d 351, 355 (Pa. 1986); citing Richmond v. McHale, 35 A.3d 779, 784, 786 (Pa. Super. Ct. 2012)). "Thus," the Third Circuit determined, "we will affirm the District Court's dismissal of all claims, other than the abuse of process claim, on the ground that the allegedly improper communications that form the basis for these claims are protected by the judicial privilege.[footnote omitted]" Id.

Here, Plaintiff alleges that the UTPCPL was violated when Defendants:

> failed to state material facts or otherwise misstated, misrepresented, or omitted the true facts concerning or related to the status of the Loan that tended to deceive and/or did in

fact deceive plaintiffs as described herein including but not limited to: (a) Represented that an accurate accounting of plaintiffs' loan had been made and reviewed thereafter in the course of the foreclosure; (b) By the filing of the underlying action represented that plaintiffs were in default under the terms of the Note and Mortgage; (c) By the filing of the underlying litigation represented that defendants were entitled to foreclose and sell plaintiffs' home at sheriff's sale without first properly accounting for plaintiffs' payments under the loan; (d) By the filing of the underlying litigation represented that the underlying foreclosure was lawful.

**\*24** (Doc. 14, p. 7). Plaintiffs continue by claiming that "[i]t is not unreasonable to conclude that a national bank like US Bank and a national mortgage servicer like Ocwen does not intend for its customers to rely upon its communications about their account...." (Id.). "[E]specially," Plaintiffs continue, "when the communications involve seeking to sell plaintiffs' home as in the underlying action and the defendants collectively fail to acknowledge or review their errors and instead simply ratify their continued wrongful conduct as in this matter." (Id.). According to Plaintiffs, they "reasonably replied upon the material acts and actions of defendants as exemplified by their retaining counsel to defend the underlying litigation." (Id.). Further, Plaintiffs allege that "[b]ut for" Defendants':

> acts and omissions and disregard for its own records reflecting default by plaintiffs when plaintiffs' regular payments were cashed by Ocwen for nearly a year after a date of default alleged in the underlying litigation resulting in conflicting and otherwise incorrect accounting of plaintiffs' loan, plaintiffs would not have sustained any damages and losses.

(Doc. 14, p. 8).

2017 WL 1178047

However, following the Third Circuit's persuasive decision in Schwartz, it is determined that Plaintiffs' UTPCPL claim against U.S. Bank and Ocwen will be dismissed on the ground that it depends on communications protected by Pennsylvania's judicial privilege. As was the case in Schwartz, the communications at issue in Plaintiffs' UTPCPL claim concern the arguments advanced in favor of obtaining a mortgage foreclosure judgment. See (Id. at pp. 7-8). Therefore, such communications were pertinent and material to the redress or relief sought in that foreclosure action. As a result, following the Third Circuit's well reasoned decision in Schwartz, the Court will dismiss Plaintiffs' UTPCPL claims against U.S. Bank and Ocwen under Pennsylvania's judicial privilege doctrine.

Further, since it is determined that judicial privilege applies to and bars Plaintiffs' UTPCPL claims against U.S. Bank and Ocwen concerning communications made during the course of a judicial proceeding, and there being no indication that Plaintiffs are seeking relief under the UTPCPL for communications made beyond the course of a judicial proceeding, see (Doc. 14, p. 7), leave to amend these claims will not be allowed because such amendment would be futile. As a result, Plaintiffs' UTPCPL claims against U.S. Bank and Ocwen will be dismissed with prejudice.

## IV. CONCLUSION

Based on the foregoing, Defendants' respective motions to dismiss Plaintiffs' FDCPA claims concerning Plaintiffs' underlying mortgage foreclosure action will be granted. As a result, Plaintiffs' FDCPA claims concerning their underlying mortgage foreclosure action, see (Doc. 14, pp. 5-6), will be dismissed because they are barred by the FDCPA's statute of limitations. As for Defendants' respective motions to dismiss Plaintiffs' state law claims, those motions will be denied in part and granted in part. In particular, Defendants' respective motions to dismiss Plaintiffs' Dragonetti claims will be denied. However, Defendants' respective motions to dismiss Plaintiffs' UTPCPL claims will be granted and, thus, those claims will be dismissed. Lastly, Plaintiffs' FDCPA and UTPCPL claims will be dismissed with prejudice because granting leave to amend those claims would be futile.

An appropriate Order follows.

## All Citations

Not Reported in Fed. Supp., 2017 WL 1178047

---

# Bronstein v. Bayview Loan Servicing, LLC

United States District Court, E.D. Pennsylvania. |     February 11, 2020 |     Slip Copy |     2020 WL 703652

**Document Details**

| | |
|---|---|
| alwd Citation: | Bronstein v. Bayview Loan Servicing, LLC, CV 18-4223, 2020 WL 703652 (E.D. Pa. Feb. 11, 2020) |
| All Citations: | Slip Copy, 2020 WL 703652 |

**Search Details**

| | |
|---|---|
| Jurisdiction: | Pennsylvania |

**Delivery Details**

| | |
|---|---|
| Date: | November 9, 2020 at 8:53 AM |
| Delivered By: | Teri Townsend |
| Client ID: | 257825.000001 |

**Outline**

Attorneys and Law Firms (p.1)

**OPINION** (p.1)

All Citations (p.7)

2020 WL 703652
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Jola BRONSTEIN, Plaintiff,

v.

BAYVIEW LOAN SERVICING,
LLC, et al., Defendants.

CIVIL ACTION NO. 18-4223
|
Signed 02/10/2020
|
Filed 02/11/2020

**Attorneys and Law Firms**

Michael P. Forbes, Wayne, PA, for Plaintiff.

Michael P. Trainor, Blank Rome LLP, Philadelphia, PA, for Defendants Bayview Loan Servicing, LLC, Bank of New York Mellon.

Robert W. Williams, Mattleman Weinroth & Miller PC, Cherry Hill, NJ, Michael P. Trainor, Blank Rome LLP, Philadelphia, PA, for Defendant Mattleman, Weinroth & Miller, P.C.

**OPINION**

Slomsky, District Judge

**I. INTRODUCTION**

**\*1** On September 14, 2018, Plaintiff Jola Bronstein filed suit in the Court of Common Pleas of Montgomery County, Pennsylvania, claiming that her house was improperly foreclosed upon because the interest rate she was charged was both erroneous and fraudulently misrepresented in the state court foreclosure complaint. She sued several parties, including: (1) the Bank of New York Mellon formerly known as The Bank of New York, individually and as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-SEA2 ("BONY"), the holder of the promissory note and mortgage; (2) Bayview Loan Servicing, Inc. ("Bayview"), BONY's loan servicer; and (3) Mattleman, Weinroth & Miller, P.C. ("MWM" and together with BONY and Bayview, "Defendants"), the law firm retained by Bayview on behalf of BONY to commence foreclosure proceedings.

On October 1, 2018, BONY and Bayview removed the case to this Court. (Doc. No. 1.) After removal, BONY and Bayview filed an Answer to the Complaint (Doc. No. 3). MWM, the law firm, however, filed a Motion to Dismiss the Complaint (Doc. No. 13) under Federal Rule of Civil Procedure 12(b)(6), which is now ripe for review. [1] For the following reasons, MWM's Motion to Dismiss will be granted in part and denied in part.

[1] For purposes of this Opinion, the Court has considered the Notice of Removal and Plaintiff's Complaint contained therein (Doc. No. 1), Defendant Mattleman, Weinroth & Miller, P.C.'s Motion to Dismiss for Failure to State a Claim (Doc. No. 13), Plaintiff's Response in Opposition (Doc. No. 14), Defendant Mattleman, Weinroth & Miller, P.C.'s Reply in Support of their Motion to Dismiss (Doc. No. 18), and the parties' arguments presented during the hearing held on December 11, 2019 (Doc. No. 20).

**II. BACKGROUND**

On May 18, 2007, Plaintiff purchased a house located at 112 Haverford Road, Wynnewood, Pennsylvania 19096 (the "Property"). (Doc. No. 1 at 33.) To finance the purchase, she obtained a $220,000 loan from Castle Point Mortgage, Inc. ("Castle Point"), a mortgage lender and mortgage broker for residential properties. (Id.) In exchange, Plaintiff executed an adjustable rate note (the "Note") that evidenced the loan and obligated Plaintiff to pay Castle Point, or any subsequent holder of the Note, the original principal balance of $220,000 plus interest. (Id.) The same day, to secure the obligations under the Note, Plaintiff executed and delivered a mortgage on the Property (the "Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERSCORP"), solely as nominee for Castle Point. [2] (Id. at 42.) The mortgage was subsequently recorded in the Montgomery County Recorder of Deeds. (Id.)

[2] Castle Point was the effective holder of the mortgage; however, the nominal mortgage holder was Mortgage Electronic Registration Systems, Inc. ("MERSCORP"). (Doc. No. 13 at 8.) Mortgage loan originators, like Castle Point, often use MERSCORP to serve as the nominal mortgage holder in local government recording offices.

**\*2** The Note included an adjustable interest rate, meaning that over the life of the loan, the interest rate would change. (Id. at 14.) From July 1, 2007—Plaintiff's first payment date —until June 1, 2009, the Note's interest rate was fixed at 11.75%. (Id. at 33.) Then, on June 1, 2009, and every six months thereafter—each such date dubbed a "change date"— the interest rate would be reset. (Id. at 24.) On each change date, the rate would reset to 6.375% plus the most recent six-month U.S. dollar-denominated LIBOR (London Interbank Offered Rate) published in the Wall Street Journal, rounded to the nearest one-eighth of one percent. (Id.) The first reset rate could not be less than 11.750% nor greater than 14.750%, and no subsequent reset rate could increase or decrease more than 1% from the prior change date's interest rate. (Id.)

Alleged here is that Plaintiff stopped making her mortgage payments on December 1, 2010. (Doc. No. 13-1 at 8.) Thereafter, on May 10, 2011, BONY—which is in the business of acquiring and rehabilitating defaulted mortgage loans—purchased Plaintiff's Mortgage. It is unclear if the Mortgage was purchased from Castle Point or another entity, but, in any event, following the sale of the Mortgage, it was assigned by MERSCORP, the nominal mortgage holder, to BONY and recorded in the Montgomery County Recorder of Deeds on June 21, 2011. (Doc. No. 1 at 42.)

Plaintiff allegedly failed to make mortgage payments for the next three years and on May 28, 2014, Bayview sent Plaintiff a notice of their intent to foreclose on the Property, as required under Pennsylvania's Act 91, 35 P.S. § 1680.401 et seq., and Act 6, 41 P.S. § 401 et seq. (the "Foreclosure Notices"). (Doc. No. 1 at 57.) Among other things, the Foreclosure Notices informed Plaintiff that she could cure the default by paying the alleged deficiency in full within thirty days, along with any mortgage payments and late charges that became due during that thirty-day period. (Id. at 58.) A line-item breakdown of the alleged deficiency was provided in each of the Foreclosure Notices and is reproduced below.

| | |
|---|---|
| Total Monthly Payments Due: | $118,672.19 |
| (12/01/2010 – 06/01/2011 @ $3,178.04) | |
| (07/01/2011 – 10/01/2013 @ $2,762.50) | |
| (11/10/2013 – 5/28/2014 @ $2,725.13) | |
| Late Charges: | $1,998.72 |
| Other Charges: | |
| Uncollected NSF Fees: | $0.00 |
| Other Fees: | $0.00 |
| Corporate Advance Balance: | $1,624.50 |
| Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | $122,295.41 |

(Id. at 58, 65.) Notably, under the heading "Total Monthly Payments Due," Plaintiff's monthly mortgage payment changed three times, suggesting that Plaintiff was being charged a variable interest rate.

On July 13, 2016, after Plaintiff did not satisfy the alleged deficiency, BONY, by and through its legal counsel, MWM, initiated a judicial foreclosure proceeding by filing a Complaint in Mortgage Foreclosure in the Court of Common Pleas for Montgomery County, Pennsylvania (the "Foreclosure Complaint"). (Id. at 41.) The Foreclosure Complaint included an updated breakdown of the alleged amounts due on the Mortgage, reflected a fixed interest rate of 11.75%, and is reproduced below.

| | |
|---|---|
| Principal Balance | $215,619.44 |

| 11.75% interest from November 1, 2010 through July 1, 2016 at $69.41 per day | $143,566.36 |
|---|---|
| Late Charges | $4,330.56 |
| Escrow Advances – Taxes | $18,821.61 |
| Escrow Advances – Insurance | $10,006.00 |
| Corporate Advances – Property Inspections | $893.50 |
| Corporate Advances – Legal | $1,040.00 |
| TOTAL AMOUNT DUE | $394,277.47 |

(Id. at 43.) The foreclosure action remains pending in state court. (Id. at 11-13.)

On September 14, 2018, Plaintiff sued BONY, Bayview, and MWM, alleging that her debt was misrepresented in the Foreclosure Complaint because

> **\*3** [d]espite their knowledge of the Adjustable Rate Note and the terms therein, Defendants filed the foreclosure complaint demanding a rate of interest which is in violation of the Note and excessive as well as Bayview continuing to send Plaintiff monthly statements demanding an excessive amount based upon an interest rate which is not stated in the Note [and that] [b]y filing the foreclosure complaint and attendant documents demanding a rate of interest which is in violation of the Note and excessive, Defendants have made false, misleading and deceptive representations to Plaintiff.

(Id. at 17.) In her Complaint, Plaintiff asserted five claims against Defendants: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Count I); (2) violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. C.S. § 2270.1, et seq. (Count II); (3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq. (Count III); (4) violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601, et seq.

(Count IV); and (5) breach of contract. (Id. at 18-30.) MWM is named only in the first three Counts. (See id.)

On July 8, 2019, MWM filed the instant Motion to Dismiss seeking to dismiss all three Counts alleged against it under Federal Rule of Civil Procedure 12(b)(6). [3] With respect to Count I—the alleged violation of the FDCPA—MWM argued that this claim must be dismissed because MWM is not a "debt collector," as defined by the Act, upon whom the statute imposes certain restrictions. (Doc. No. 13-1 at 13-16.) In addition, on Counts II and III—the alleged violations of the FCEUA and the UTPCPL, respectively—MWM argued that Pennsylvania's absolute judicial privilege, which, among other things, immunizes a law firm's statements made in the regular course of judicial proceedings, bars Plaintiff from bringing these state law claims against it. (Id. at 4, 10.)

[3]    On October 10, 2018, the other two Defendants, BONY and Bayview, filed an Answer (Doc. No. 3) asserting, among other things, that the interest rate included in the Foreclosure Complaint was correct because the terms of the Note had been modified from an adjustable rate to a fixed rate of 11.75% before the first change date. (Doc. No. 1 at 5-6; see Doc. No. 3 at 20.)

On July 22, 2019, Plaintiff filed a Response in Opposition to MWM's Motion to Dismiss (Doc. No. 14). In her Response, Plaintiff argued that MWM is a "debt collector" under the FDCPA, that MWM's actions violated the FDCPA, and because a violation of the FDCPA is a per se violation of Pennsylvania's FCEUA and UTPCPL, that MWM is also liable under those state law statutes. (Id. at 4-6, 12.) Plaintiff also argued that MWM is not immune from liability under Pennsylvania's absolute judicial privilege because their actions concerned debt collection, which is not protected

by the privilege and, alternatively, because Pennsylvania's statutory scheme renders any judicial privilege ineffective. (See id. at 15.) MWM filed a Reply on August 12, 2019. (Doc. No. 18.) On December 11, 2019, the Court held a hearing on MWM's Motion to Dismiss, during which the parties recited their respective positions. (See Doc. No. 20.)

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b) (6) motion to dismiss. Id. at 678, 129 S.Ct. 1937; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937).

*4 Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679, 129 S.Ct. 1937). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and

evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

MWM moves to dismiss all of Plaintiff's claims against it, which arise under the FDCPA and Pennsylvania's FCEUA and UTPCPL. MWM argues that the FDPCA claim must be dismissed because it is not a "debt collector" under the Act, to whom the Act applies. Separately, MWM argues that Plaintiff's Pennsylvania state law claims under the FCEUA and UTPCPL are barred by Pennsylvania's absolute judicial privilege. The Court will consider MWM's arguments in turn.

### A. Count I Will Not be Dismissed Because MWM is a "Debt Collector" Under the FDCPA.

Count I of the Complaint alleges MWM violated multiple provisions of the FDCPA. (Doc. No. 1 at 18.) Plaintiff claims that MWM violated the Act by, among other things, "making false, deceptive, or misleading representation[s] or means in connection with the debt collection[.]" (Id. at 18.) Specifically, Plaintiff alleges MWM violated 15 U.S.C. §§ 1692d, 1692e, 1692c(2), and 1692e(l0), which provide a non-exclusive list of actions that violate the FDCPA. Plaintiff also alleges MWM violated 15 U.S.C. §§ 1692f and 1692f(1) which forbid "us[ing] unfair or unconscionable means to ... attempt to collect [a] debt."

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015). Only the second prong is disputed here. As

noted, MWM argues that Plaintiff's FDCPA claims must be dismissed because they are not a "debt collector," as defined by the Act. The Court disagrees.

**\*5**  The definition of a "debt collector" is provided in Section 1692a(6) of the FDCPA and has two parts: a primary definition and a limited-purpose definition. 15 U.S.C. § 1692(a)(6); see Obduskey v. McCarthy & Holthus LLP, —— U.S. ——, 139 S. Ct. 1029, 1035-36, 203 L.Ed.2d 390 (2019). The primary definition states that

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6); Obduskey, 139 S. Ct. at 1036. Parties included under the primary definition are prohibited from engaging in any of the unlawful debt collection practices defined in the FDCPA. Obduskey, 139 S. Ct. at 1036. In contrast, the limited-purpose definition states

> [f]or the purpose of [15 U.S.C. § 1692f(6)], [the] term [debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6); Obduskey, 139 S. Ct. at 1036. Parties covered by limited-purpose definition are only prohibited from engaging in the acts defined in section 1692f(6) of the Act. Obduskey, 139 S. Ct. at 1036.

In the instant case, Plaintiff and MWM agree on certain facts. They agree that Pennsylvania is a judicial foreclosure state and that MWM initiated the judicial foreclosure process when it filed a foreclosure complaint in state court.[4] (See Doc.

No. 14 at 9; Doc. No. 21 at 9.) They also agree on the historical understanding of relevant Third Circuit precedent. Specifically, they both acknowledge Kaymark v. Bank of Am., N.A., a Third Circuit case that confirmed that law firms are considered "debt collectors" under the FDCPA's primary definition when they file a foreclosure complaint on behalf of a client in Pennsylvania state court. 783 F.3d 168, 176-77 (3d Cir. 2015) (stating that a law firm "acted as a 'debt collector' when, by filing the [f]oreclosure [c]omplaint, it 'attempt[ed] to collect' a debt on behalf of [its client].") (citing 15 U.S.C. § 1692a(6)).

[4]     During the hearing held on December 11, 2019, MWM's counsel, Michael Forbes, Esquire, acknowledged that, "[MWM] fully recognize[s] that Pennsylvania is a judicial foreclosure state[.]" (Doc. No. 21 at 9.)

Plaintiff and MWM disagree, however, about whether Kaymark remains good law following the Supreme Court's ruling in Obduskey. —— U.S. ——, 139 S. Ct. 1029, 203 L.Ed.2d 390. In Obduskey, the Supreme Court held that a law firm that enforced a security interest by initiating a nonjudicial foreclosure on behalf of its client was not a "debt collector" under the FDCPA's primary definition. Id. at 1038. MWM argues that Obduskey's reasoning should be extended to apply to a Pennsylvania judicial foreclosure and, by doing so, this would exempt MWM from the FDCPA's primary definition of "debt collector." (Doc. No. 13-1 at 13-16.) It contends that given the similarities between Colorado's non-judicial foreclosure system—the state where the Obduskey case originated—and Pennsylvania's judicial foreclosure system, "Obduskey is highly persuasive that law firms that judicially enforce mortgages in Pennsylvania do not fall within the [FDCPA's "debt collector"] primary definition[.]" (Id. at 14.) Plaintiff, conversely, argues that Obduskey is inapplicable because Pennsylvania is a judicial foreclosure state and in Obduskey, "the Supreme Court limited [the] exclusion to non-judicial foreclosure actions." (Doc. No. 14 at 9-10.)

**\*6**  The Court will adopt Plaintiff's argument. Despite the well-reasoned and thoughtful arguments of MWM's counsel, the Court declines to extend Obduskey's holding to Pennsylvania's judicial foreclosure system given its express limitation to apply only to nonjudicial foreclosures. See Obduskey, 139 S. Ct. at 1038 ("[I]n this case, [ ] we consider nonjudicial foreclosures. And whether those who judicially enforce mortgages fall within the scope of the primary definition is a question we can leave for another day.... [T]he availability of a deficiency judgment is a potentially relevant

distinction between judicial and nonjudicial foreclosures."). This decision aligns with the understanding of other district courts in this Circuit, as well as the decisions of the district courts in other Circuits. See e.g., Lloyd v. Pluese, Becker, Saltzman, LLC, No. 18-9420, 2019 WL 6113859, at *2, 2019 U.S. Dist. LEXIS 199214, at *4-5 (D.N.J. Nov. 18, 2019). [5] "Indeed, the few courts to have considered Obduskey ... since it was decided have read the decision narrowly, and have specifically distinguished judicial foreclosures from nonjudicial foreclosures." Id. Accordingly, the Court finds that MWM is a "debt collector" under the FDCPA's primary definition and Plaintiff's FDCPA claims are not defeated by Obduskey.

[5]    See also, Berg v. McCalla Raymer Leibert Pierce, LLC, 2019 WL 5592720, at *5 n.2, 2019 U.S. Dist. LEXIS 187993, at *6 n.2 (N.D. Ill. Oct. 30, 2019) (explaining that Obduskey's "holding expressly did not affect cases involving judicial foreclosure proceedings."); Gold v. Shapiro, Dicaro & Barak, LLC, 2019 WL 4752093, at *6, 2019 U.S. Dist. LEXIS 169028, at *16-17 (E.D.N.Y. Sept. 30, 2019) (distinguishing judicial and nonjudicial foreclosures and declining to extend Obduskey's holding to a judicial foreclosure); Flowers v. Baltax 2017, LLC, 2019 WL 3501584, at *4, 2019 U.S. Dist. LEXIS 129347, at *11-12 (D. Md. Aug. 1, 2019) (in an FDCPA case premised on actions taken by a law firm in a judicial foreclosure, holding that "Obduskey does not mandate dismissal of Plaintiff's FDCPA claims.")

**B. Counts II and III Against MWM Will Be Dismissed Because the Claims are Barred by Pennsylvania's Absolute Judicial Privilege.**

In Counts II and III, Plaintiff alleges violations of two Pennsylvania statutes. (See Doc. No. 1 at 20, 23.) Specifically, Count II alleges a violation of the FCEUA on the grounds that any violation of the FDCPA by a debt collector also constitutes an unfair or deceptive debt collection act or practice under the FCEUA. (Id. at 20.) Count III alleges a violation of the UTPCPL on the grounds that any unfair or deceptive debt collection act or practice under the FCEUA by a debt collector constitutes a violation of the UTPCPL. (Id. at 23.) MWM argues that these Pennsylvania state law claims must be dismissed because they are barred by Pennsylvania's absolute judicial privilege. The Court agrees.

In Pennsylvania,

[t]he judicial privilege ... extends to 'communications [ (1) ] which are issued in the regular course of judicial proceedings and [ (2) ] which are pertinent and material to the redress or relief sought.' " Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 311 (3d Cir. 2003) (quoting Post v. Mendel, 510 Pa. 213, 507 A.2d 351, 355 (Pa. 1986)). This privilege sweeps broadly to protect "[a]ll communications pertinent to any stage of a judicial proceeding," Binder v. Triangle Publ'ns, Inc., 442 Pa. 319, 275 A.2d 53, 56 (Pa. 1971), including "not only ... communications made in open court, but also ... pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest," Richmond v. McHale, 35 A.3d 779, 785 (Pa. Super. Ct. 2012) (internal quotation marks and emphasis omitted). Although the judicial privilege most often bars defamation suits, Pennsylvania courts have applied the privilege broadly to confer "immunity from civil liability in the context of judicial proceedings." Moses v. McWilliams, 379 Pa.Super. 150, 549 A.2d 950, 956-57 (Pa. Super. Ct. 1988).

Schwartz v. OneWest Bank, FSB, 614 Fed. App'x. 80, 82-83 (3d Cir. 2015).

Pennsylvania's absolute judicial privilege requires that the immunized statements must be made in the course of practicing law. See Yelin v. Swartz, 790 F. Supp. 2d 331, 338 (E.D. Pa. 2011) (explaining that "the mere fact that [a] defendant happens to be an attorney" does not automatically invoke the privilege.) In debt collection cases, context is critical: attorneys engaged in the mere attempt to collect a debt, without more, are not engaged in the practice of law. See id. (attorneys were not practicing law when they sent collection letters on behalf of their client). In comparison, statements made in a state court foreclosure complaint are considered to be "made in connection with the attorney's representation of his client in a judicial proceeding." Schwartz, 614 Fed. App'x at 82-83 (quoting Richmond, 35 A.3d at 786).

**\*7** Here, Plaintiff's Pennsylvania state law claims against MWM for violations of the FCEUA and UTPCPL must be dismissed because they arise solely from statements MWM made in the state court Foreclosure Complaint and MWM is therefore immunized under Pennsylvania's absolute judicial privilege. Specifically, the FCEUA and UTPCPL claims are predicated on the alleged violation of the FDPCA, which alleges that MWM "misstated that there [was] a default based

upon the amount due and misstat[ed] the interest rate" in "the [Foreclosure] Complaint and subsequent pleadings and exhibits[.]" (Doc. No. 1 at 18.) These allegedly-improper statements were made to advance MWM's clients' arguments in favor of obtaining a mortgage foreclosure. Such statements "reflect[ ] counsel's efforts to share their clients' litigation positions ... and thus were 'pertinent and material to the redress or relief sought' in the foreclosure case," Schwartz, 614 Fed. App'x at 83 (quoting Post, 507 A.2d at 355). As a result, MWM is immunized from liability.

In her Response and during oral argument, Plaintiff did not directly address Pennsylvania's absolute judicial privilege. Instead, she attacks the privilege by arguing that Pennsylvania's statutory framework denies MWM immunity. (See Doc. No. 21 at 31.) Specifically, Plaintiff argues that "the reason [MWM is] not immunized from [liability] is because of the per se violations under 73 P.S. § 2270.4, that a violation of the FDCPA is a violation of the [FCEUA] and ... a violation of the [FCEUA] is a violation of the [UTPCPL]." (Id. at 31.) Plaintiff is incorrect. "Pennsylvania law has long held that '[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse.' " Greenberg v. McGraw, 161 A.3d 976, 981 (Pa. Super. 2017) (quoting Smith v. Griffiths, 327 Pa.Super. 418, 476 A.2d 22, 24 (Pa. Super.

1984)). Absolute privilege, as its name implies, is precisely that: absolute; it provides a complete defense to an otherwise plausible cause of action, even when the offense is a per se violation. See e.g., Matson v. Margiotti, 371 Pa. 188, 88 A.2d 892 (Pa. 1952) (holding that the Pennsylvania State Attorney General's absolute privilege provided immunity from civil suit, despite his statements being libelous per se). Put simply, Pennsylvania's absolute judicial privilege is not defeated by the State's FDCPA-correlative statutory scheme. See id. Accordingly, the Court will dismiss Plaintiff's FCEUA and UTPCPL claims against MWM because MWM is immunized from these claims under Pennsylvania's absolute judicial privilege.

## V. CONCLUSION
For the foregoing reasons, MWM's Motion to Dismiss (Doc. No. 13) will be granted in part and denied in part. Plaintiff's claims under the Pennsylvania FCEUA and UTPCPL against MWM will be dismissed with prejudice. However, the Court will deny MWM's Motion to Dismiss as it relates to Plaintiff's FDCPA claim. An appropriate Order follows.

## All Citations

Slip Copy, 2020 WL 703652

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Dolan v. PHL Variable Insurance Company

United States District Court, M.D. Pennsylvania. |        October 25, 2017 |        Not Reported in Fed. Supp. |
2017 WL 4812308

**Document Details**

| | | **Outline** |
|---|---|---|
| alwd Citation: | Dolan v. PHL Variable Ins. Co., 3:15-CV-01987, 2017 WL 4812308 (M.D. Pa. Oct. 25, 2017) | Attorneys and Law Firms (p.1) |
| All Citations: | Not Reported in Fed. Supp., 2017 WL 4812308 | **MEMORANDUM** (p.1) |

**Search Details**

All Citations (p.11)

| | |
|---|---|
| Jurisdiction: | Pennsylvania |

**Delivery Details**

| | |
|---|---|
| Date: | November 9, 2020 at 8:53 AM |
| Delivered By: | Teri Townsend |
| Client ID: | 257825.000001 |

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

2017 WL 4812308
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Timothy and Ann DOLAN, et al., Plaintiffs,

v.

PHL VARIABLE INSURANCE
COMPANY, et al., Defendants.

CIVIL ACTION NO. 3:15-CV-01987
|
Signed 10/25/2017

**Attorneys and Law Firms**

John G. Dean, Elliott Greenleaf & Dean, Scranton, PA,
Thomas L. Kennedy, Kennedy and Lucadamo, Hazleton, PA,
for Plaintiffs.

Andrew R. Kasner, Thomas F.A. Hetherington, Edison,
McDowell & Hetherington, LLP, Houston, TX, John B.
Dempsey, Myers, Brier & Kelly, LLP, Scranton, PA, David
M. Skeens, J. Michael Vaughan, Paula L. Brown, Walters
Bender Strohbehn & Vaughan PC, Kansas City, MO, James
J. Kutz, Jason G. Benion, Post & Schell, P.C., Emily H.
Edmunds, Saul Ewing LLP, Harrisburg, PA, Anthony S.
Baish, Daniel C.W. Narvey, Paul F. Heaton, Godfrey &
Kahn, S.C., Milwaukee, WI, Christopher F. Petillo, Timothy
J. O'Driscoll, Drinker Biddle & Reath LLP, Philadelphia, PA,
Ben V. Seessel, Stephen J. Jorden, Carlton Fields Jorden Burt,
P.A., Hartford, CT, for Defendants.

**MEMORANDUM**

A. Richard Caputo, United States District Judge

 *1  Presently before this Court are four (4) motions to
dismiss Plaintiffs' Amended Complaint (Doc. 56) filed
by Defendants Allianz Life Insurance Company of North
America ("Allianz") (Doc. 64), North American Company
For Life and Health Insurance ("North American") (Doc.
65), PHL Variable Insurance Company ("PHL") (Doc. 66),
and Forethought Life Insurance Company ("Forethought")
(Doc. 67) (collectively "Defendants"). Because the Amended
Complaint fails to comport with Federal Rule of Civil
Procedure 9(b) and fails to adequately plead a claim under
the UTPCPL, Count I of the Amended Complaint will
be dismissed without prejudice. Count II of the Amended

Complaint will also be dismissed without prejudice because
Plaintiffs have failed to adequately plead a fiduciary or
confidential relationship between the parties. Finally, Count
III of the Amended Complaint will be dismissed with
prejudice because Plaintiffs' negligence claims are barred by
the economic loss doctrine.

**I. Background**

**A. Factual Background**
The facts, as set forth in Plaintiffs' Amended Complaint (Doc.
56), are as follows:

Plaintiffs Timothy and Ann Dolan, the Estate of Jean Dolan,
Raymond and Elizabeth Flannery, Robert and Linda Gruner,
Virginia Hetherington, and Carmen Fierro (collectively
"Plaintiffs") are alleged victims of a scheme perpetrated by a
registered financial advisor, Joseph S. Hyduk ("Hyduk"), and
his company BNA Financial Services ("BNA").

Plaintiffs aver that Hyduk separately targeted each Plaintiff,
held himself out as an agent of Defendants, and specifically
presented each Plaintiff with investment opportunities with
Defendants. Hyduk explained to Plaintiffs that their purchase
of annuities with Defendants would be a safe investment
option without risk to principal. Further, Hyduk explained
to Plaintiffs that the minimum guaranteed return on these
annuities would be one percent. Plaintiffs allege that to
convince them to purchase annuities issued by Defendants,
Hyduk would often present Plaintiffs with *pro forma*
statements prepared by Defendants, indicating the projected
returns Plaintiffs would receive on their investment. Those
statements allegedly helped convince Plaintiffs to rollover
their existing investments to products issued by Defendants.
Notably, Plaintiffs do not aver that the *pro formas* provided
false information.

To purchase annuities issued by Defendants, Plaintiffs
were required to complete applications. After having their
applications approved, Plaintiffs, through Hyduk, would
purchase annuities issued by Defendants. These purchases
would be accompanied by rollover forms identifying the
current plan information and the account being transferred.

Following the purchase of an annuity, Hyduk would
manipulate Plaintiffs into selling their investment for his own
gain. Hyduk profited by having his clients take withdrawals
subject to substantial fees and penalties from their annuities

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 35 of 72

issued by Defendants. After receiving the refund checks, instead of purchasing alternative investment products, Hyduk would keep those funds for his own benefit. Defendants also profited from Hyduk's actions because they retained fees related to Plaintiffs early withdrawal.

**\*2** Plaintiffs claim that Hyduk's rate of early withdrawals was unusually high and should have put Defendants on notice that Hyduk was not operating according to industry standards or in the best interest of their customers. The withdrawals generally occurred within the first few years following the purchase of Defendants' annuities, thus causing Plaintiffs to incur substantial surrender fees in connection with these transactions. It is unclear what industry standard Plaintiffs rely on and whether defendants were able to deny potentially fraudulent withdrawal requests.

Plaintiffs further allege that Defendants ignored countless "red flags" that may have suggested that Hyduk was defrauding his clients. Specifically, Plaintiffs allege that Defendants ignored numerous transactions where the sale of annuities by Hyduk's clients resulted in substantial surrender charges. Defendants also purportedly disregarded that Hyduk's clients' repeated withdrawal requests were often unaccompanied by rollover forms authorizing the transfer of funds to purchase different investments offered by other financial service providers. According to Plaintiffs, the volume of transactions in which Hyduk's victims requested withdrawals in the absence of rollover forms was atypical and signaled a likelihood of criminal activity. Yet, despite the absence of rollover information, Defendants and their respective compliance departments failed to investigate Hyduk or otherwise question the provision of services by their authorized agent. Again, it is unclear what standard is used by Plaintiffs to deem Defendants' conduct atypical.

Plaintiffs also allege that Hyduk converted the withdrawn funds for his own use by asking Plaintiffs to endorse checks for the funds directly to him. Defendants, however, allegedly ignored the fact that the withdrawal forms were not signed by the annuity holder, and failed to conduct any due diligence as to the conduct of Hyduk and the circumstances of these withdrawal requests.

At bottom, Plaintiffs allege that, although numerous warning signs existed, Defendants failed to conduct even minimal due diligence with respect to Hyduk's operations.

**B. Procedural History**

On October 16, 2013, Hyduk's company was raided by the Federal Bureau of Investigation. On August 4, 2014, charges were filed against Hyduk in this Court. [1] Subsequently, Hyduk pled guilty to tax evasion and wire fraud. On July 30, 2015, he was sentenced to more than five years in prison.

[1]     *See* United States v. Hyduk, No. 3:14-cr-00189 (M.D. Pa., 2014):"It was part of the scheme that HYDUK would improperly divert funds from his clients to himself without his clients' knowledge or consent. The majority of the diverted funds was from clients who intended the money to be rolled-over into different investments. HYDUK instructed them to make their checks payable to BNA Financial instead of the actual new investment company and deposited the funds into his own account and used the money for his personal benefit.... " (Doc 1, at ¶ 3.)

In light of the foregoing events, on November 13, 2015, Plaintiffs filed a three-count Complaint (Doc. 1) against Defendants. Plaintiffs' Complaint was dismissed in its entirety without prejudice on November 22, 2016 due to its failure to comply with Federal Rules of Civil Procedure 8 and 9(b).

Plaintiffs timely filed an Amended Complaint on December 13, 2016. The Amended Complaint contains the following claims: (1) Count I alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (2) Count II alleging a breach of fiduciary duties by Defendants; and (3) Count III alleging negligence. These are the exact claims contained in Plaintiffs' original complaint.

Again, Defendants have moved to dismiss all claims with prejudice. (Docs. 64-67). These motions have been fully briefed and are ripe for disposition.

**II. Legal Standard**

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko*

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

*v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

**\*3** "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)). Detailed f actual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations " 'to raise a reasonable expectation that discovery will reveal evidence of' " each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, the Court may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.*, 424 Fed.Appx. 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A Court may also consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by this Court when ruling on a motion to dismiss when Plaintiff had proper notice of the existence of the documents. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's " 'bald assertions' " or " 'legal conclusions.' " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

**\*4** Defendants advance a number of identical arguments[2] seeking dismissal of the Amended Complaint in its entirety.

[2]    Where a single Defendant has raised an argument not raised by its co-Defendants it will be noted below.

### A. The Amended Complaint's Compliance with the Federal Rules of Civil Procedure

*1. Federal Rule of Civil Procedure 9(b)*
Defendants first argue that Counts I and II of Plaintiffs' Amended Complaint should be dismissed for non-compliance with Federal Rule of Civil Procedure 9(b). Remember, Rule 9(b) was fatal to Plaintiffs' original complaint. Defendants contend that many of the infirmities in Plaintiffs' Complaint were not cured by the Amended Complaint.

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

Case 3:20-cv-01446-RDM    Document 33-1    Filed 11/09/20    Page 37 of 72

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading requirement for claims of fraud or mistake. Specifically, the Rule requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). In other words, "[a] plaintiff alleging fraud must ... support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story —that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Additionally, Rule 9(b) requires plaintiffs "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*, 361 F.3d at 223-24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224.

This Court noted in its November 22, 2016 Memorandum that Plaintiffs' claims predicated on the UTPCPL and an alleged breach of a fiduciary duty implicate Rule 9(b). The Amended Complaint has not altered this Court's earlier analysis, and thus it is still the opinion of this Court that these claims are subject to Rule 9(b). However, there is a question as to whether the Amended Complaint now satisfies the mandates of the Rule.

Unfortunately, Plaintiffs have again failed to include averments that sufficiently establish the who, what, when, where, and how of the alleged fraud and thus fail to satisfy the requirements of Rule 9(b). This Court's November 22, 2016 Memorandum specifically noted that Plaintiffs needed to make clear exactly what misrepresentations or fraudulent conduct related to each Defendant and impacted each Plaintiff. In other words, the Amended Complaint needed to refrain from referring to the parties as collective entities, and provide additional information regarding the who, what, when, where, and how of the alleged fraud. While the Amended Complaint has made strides to discuss each Defendant individually, the averments against individual Defendants are regularly asserted by a collective set of Plaintiffs. As was explained in the earlier Memorandum, such pleading runs afoul of Rule 9(b).

**\*5** Further, the Amended Complaint fails to identify a misrepresentation made by the Defendants. Rather, Plaintiffs seem to rely on Defendants' failure to realize that Hyduk was committing a fraud. For example, a principal contention made by Plaintiffs is that Defendants failed to identify a number of so-called "red flags" which ultimately caused injury to Plaintiffs. To that end, Plaintiffs repeatedly refer to the "unusually high" number of early withdrawal requests made by Hyduk as a "red flag" that should have alerted Defendants' to a potential fraud. But, the Amended Complaint includes no averment related to the frequency of requests, the type of requests made, or for which Plaintiffs requests were made. Rather, the Amended Complaint supports its position through the use of generalities (*see, e.g.*, Am. Coml. ¶¶ 88-89 (using phrases such as "unusually high" and "on occasion.").) Also, Plaintiffs claim that many withdrawal forms submitted by Hyduk were forged and "should have been easily identified by [Defendants'] compliance department[s]." (*see, e.g.*, Am. Compl. ¶¶ 89, 149, 267.) Plaintiffs reference no specific signature that was forged, or injury caused by such forgery. In fact, Plaintiffs made the averment on "information and belief," which compounds the factual deficiency present here. *See UHS of Del., Inc. v. United Health Servs.*, No.12-485, 2015 WL 7294454, \*7 (M.D. Pa. Nov. 19, 2015). Put simply, these "red flags" fail to meet the standard required under 9(b).

Moreover, Plaintiff liters the Amended Complaint with conclusory statements in an attempt to satisfy the mandate of Rule 9(b). For example, Plaintiffs claim that "Hyduk was not operating in accordance with industry standards." (*see, e.g.*, Am. Compl. ¶¶ 88, 148.) No averment was made to suggest an industry standard, or show what conduct of a Defendant was in question.

Finally, as specifically noted by Defendant North American, in some respects the Amended Complaint created more questions than it answered. For example, in the Amended Complaint Plaintiffs aver that the alleged misrepresentations were made "in person (typically at the victim's home) and on the telephone." (Am. Compl. ¶¶ 57, 118, 188, 241.) Such a statement does not provide nearly enough information for a Defendant to properly respond. In fact, it leaves this Court and Defendants with more questions: What was discussed at these meetings?; Was each Defendants' product pitched to a potential victim or was it just one Defendants' product?; Were the alleged misrepresentations made in the home as was typical, or over the phone? The fact that these basic questions remain unanswered illustrates why Rule 9(b) has not been satisfied.

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

Because the Amended Complaint fails to comply with Rule 9(b), Count I and II of the will be dismissed.

### 2. *Federal Rule of Civil Procedure 8*

Defendants Forethought and North American argue that Count III of Plaintiffs' Amended Complaint remains noncompliant with the mandates of Federal Rule of Civil Procedure 8. However, this is incorrect.

Federal Rule of Civil Procedure 8 provides "that any pleading that includes a claim for relief shall contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *In re Westinghouse Securities Litigation*, 90 F.3d 696, 702 (3d Cir. 1998) (Alito, J) (citing FED.R.CIV.P. 8(a)(2)). Rule 8 further provides that "each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). "Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Securities Litigation*, 90 F.3d at 702 (citing *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure* § 1217 at 169 (2d ed. 1990)). Further, the statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Twombly*, 550 U.S. 544, 555 (2007).

Put simply, the Amended Complaint satisfies the requirements of Rule 8. The infirmity identified by this Court in the original complaint has been cured. Defendants are on fair notice of the claims asserted by Plaintiffs in Count III. And, Defendants suggestion otherwise would be akin to requiring a heightened pleading standard, like that of Rule 9(b), for traditional negligence claims. Such a decision would be inappropriate.

**\*6** Therefore, Count III of Plaintiffs' Amended Complaint will not be dismissed for non-compliance with Federal Rule of Civil Procedure 8.

### B. Defendants' Vicarious Liability for the Actions of Hyduk

One of the bedrock disputes between the parties is whether Hyduk should be considered Defendants' agent. Defendants argue that Hyduk should not be considered an agent of their insurance companies, but rather should be considered a broker. Defendants suggest that designating Hyduk as a broker would mean that Hyduk was Plaintiffs' agent. If accepted, it follows that Defendants would not be liable for any acts undertaken by Hyduk because no agency relationship existed. Plaintiffs disagree and argue that even if Hyduk is considered a broker, he may still be considered Defendants' agent. Further, Plaintiffs contend that discovery is necessary when an agency relationship is alleged, and therefore this Court may not dismiss claims predicated on such a relationship at this stage of litigation.

As an initial matter, this Court is able to evaluate whether or not Plaintiffs have properly pled an agency relationship when reviewing a motion to dismiss. Plaintiffs rely on a number of cases to suggest that "discovery is necessary when an agency relationship is alleged," and this Court agrees. (*See, e.g.*, Doc. 77, at 20-21.) However, this does not mean that a plaintiff may survive a motion to dismiss if they offer solely conclusory or insufficient statements to imply an agency relationship. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed.Appx. 803, 808 (3d Cir. 2003) (noting that plaintiffs are required to "allege facts sufficient to allow [an agency relationship] to be proven at trial, but is not required to have extensive proof at the complaint stage."); *My Space Preschool & Nursery, Inc. v. Capitol Indem. Corp.*, No. 14-2826, 2015 WL 1185959, at \*4 (E.D. Pa. Mar. 13, 2015) (dismissing a claim for failure to properly allege an agency relationship). Thus, dismissal is proper when no agency relationship is adequately alleged. For these reasons, this Court may determine whether or not Plaintiffs have pled facts sufficient to survive a motion to dismiss.

The Pennsylvania Supreme Court has held that an insurance broker is considered the agent of the insured when the insured employs a broker to choose an insurer. *Transgaurd Ins. Co. of Am. Inc., v. Hinchey*, 464 F. Supp. 2d 425, 431 (M.D. Pa. 2006) (citing *Taylor v. Crowe*, 282 A.2d 682, 683 (Pa. 1971)). But, this does not mean that a broker may never be considered an agent of an insurer. Rather, "in some situations, a broker can be considered an agent for the insured in some respects and an agent for the insurer in other respects." *Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 514 (M.D. Pa. 1998) (Caputo, J.). "The agency status of a broker depends on the relationship between the broker and the insured as well as the broker and the insurer." *Id.* A broker will likely be considered an agent of the insurer if there is evidence that the broker had the insurers "apparent, if not actual authority." *Id.* So, here, Plaintiffs must provide averments related to the relationship between the Defendant-insurers and the Plaintiffs sufficient to suggest an agency relationship exists.

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

**\*7** Plaintiffs do provide some averments related to a potential agency relationship between the Plaintiffs and Defendants. However, the averments made are not sufficient to survive a motion to dismiss. Many of the averments raised by Plaintiffs are identical for each Defendant. For example, Plaintiffs aver that "Hyduk as an agent of [Defendants], targeted Plaintiffs for investment opportunities...." (see, Am. Compl. ¶¶ 57, 118,188, 241.) Such statement, a mere conclusion related to agency, is not considered when analyzing a motion to dismiss.[3] Additionally, Plaintiffs aver the existence of contractual agreements between each Defendant and Hyduk. These agreements generally referred to Hyduk as an "agent" and set forth the terms by which Hyduk was to sell Defendants' annuities. Plaintiffs posit that reference to Hyduk as an "agent" in these agreements and various other marketing forms is sufficient to survive the instant motions to dismiss. But, this is incorrect; "[a]gency contracts alone are not sufficient to establish agency between a broker and an insurer." *Hartford Cas. Ins. Co. v. ACC Meat Co., LLC*, No. 10-1875, 2012 WL 4506059, at \*8 (M.D. Pa Apr. 26, 2012) (citing *Kairys v. Aetna Cas. & Sur. Co.*, 461 A.2d 269, 273 (Pa. Super. Ct. 1983)) *report and recommendation adopted* 2012 WL 4504600 (M.D. Pa Oct. 1, 2012) (Connor, J). In *Hartford Casualty*, a contract that permitted an "agent" to "solicit, quote, and provide customary insurance services" on behalf of an insurer to members of the public was insufficient to "overcome the presumption ... that the broker is the agent of the insured, not the insurer." *Id.* The facts pled in Plaintiffs' Amended Complaint provide a nearly identical scenario. As was the case in *Hartford Casualty*, this Court will find that such a contract is insufficient to establish an agency relationship.

[3]     Additional conclusory statements related to agency exist across averments against all four Defendants. For example, Plaintiffs claim that "Hyduk's conduct occurred during his agency relationship with [Defendants]." Again, statements like this will not be considered during a motion to dismiss.

Since pleading related to an agency contract and marketing materials are the only statements offered by Plaintiffs to suggest an agency relationship, Defendants are owed dismissal for all claims relying on an agency relationship between Hyduk and the various Defendants.

**C. Timeliness of Plaintiffs' Amended Complaint**

Defendant Allianz argues that Plaintiffs' Amended Complaint should be dismissed in its entirety because its claims are time-barred to the extent that they are predicated on representations associated with their annuity purchases. To support its position, Defendant Allianz has provided the contracts for annuities that were expressly implicated by the Complaint. These documents show that all of the Allianz annuities referenced in Plaintiffs' Amended Complaint were purchased in 2008 and 2009; the most recent policy issued in June of 2009. Defendants suggest that Plaintiffs' UTPCPL claim is subject to a six-year statute of limitations, and Plaintiffs' remaining claims are subject to a two-year statute of limitations. Since this action was not filed until October 13, 2015, it would follow that all claims brought by Plaintiffs against Allianz would be time barred.

Plaintiffs do not suggest that Defendants argument is incorrect. Rather, Plaintiffs posit that Defendants may not argue that claims are barred by the statute of limitations in a motion to dismiss when the bar is not "apparent on the face of the complaint." (Doc. 76, at 25 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).) Plaintiffs also suggest that the documents referenced by Defendant Allianz must not be considered to determine whether the action is barred by the statute of limitations because the contents of those documents are not "apparent on the face of the complaint," and the claims asserted by Plaintiffs are not "based" on those documents. (Doc. 76, at 25-26.) In this regard, Plaintiffs are incorrect; these documents may be examined.[4]

[4]     It is well-settled that this Court may consider "undisputedly authentic" documents when a plaintiff's claims are based on the documents and a defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.*, 424 Fed.Appx. 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A Court may also consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). Here, Plaintiffs have explicitly cited to the documents in question in the Amended Complaint. For this reason, the documents may be considered when deciding Defendant Allianz's Motion to Dismiss.

**\*8** However, Plaintiffs claims are not time-barred because the injury alleged by Plaintiff is not solely based on

Case 3:20-cv-01446-RDM Document 33-1 Filed 11/09/20 Page 40 of 72

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

representations made by Hyduk or Defendants at the time the annuities were purchased, but on the withdrawal of funds and continued fraud perpetrated by Hyduk. No dates exist on the face of the complaint, or within the documents submitted by Defendant Allianz, to suggest that these claims would be time-barred simply because Plaintiffs could have known that early withdrawal charges existed in 2008 and 2009. Stated differently, the application of the statute of limitations is not "obvious," and the application of the statute of limitations is "reasonably susceptible to dispute." *Javaid v. Weiss*, 2011 WL 6339838, at *10 (M.D. Pa. Dec. 19, 2011). As such, it would be inappropriate to dismiss Plaintiffs' claims against Defendant Allianz as untimely.

**D. Count I: UTPCPL Claims**
Pennsylvania's UTPCPL makes it unlawful for individuals or businesses to engage in unfair or deceptive acts or practices. Defendants contend that Count I of Plaintiffs' Amended Complaint should be dismissed because Plaintiffs fail to plead a false statement or misrepresentation made by Defendants and similarly fail to plead that they justifiably relied upon Defendants' supposed misrepresentation as required by the UTPCPL.

"In order to state a claim under the UTPCPL, a plaintiff must allege one of the unfair or deceptive trade practices set forth in 73 P.S. § 201-2(4)(i)-(xxi)." *Freeny v. Disston Manor Personal Care Home*, 849 A, ed 590, 597 (Pa. Super. Ct. 2004), *appeal denied*, 581 Pa. 691 (2004). Plaintiffs cite four sections of the UTPCPL in the Amended Complaint. Each alleged unfair or deceptive trade practice alleged is discussed below:

*(1) Plaintiffs fail to allege a claim under 73 P.S. § 201-2(4)(v)*
Plaintiffs first argue that the Amended Complaint adequately pleads a claim under 73 P.S. § 201-2(4)(v). This provision of the UTPCPL notes that it is an "unfair or deceptive act" to "[r]epresent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." 73 P.S. § 201-2(4)(v). In laymans terms, it is unlawful to falsely advertise. "In order to set forth a claim under this provision of the UTPCPL, a plaintiff must allege: (1) 'a defendant's representation is false; (2) 'it actually deceives or has a tendency to deceive'; and (3) 'the representation is likely to make a difference in the purchasing

decision.' " *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (citing *Fay v. Erie Ins. Grp.*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999)). As with all claims under the UTPCPL, Plaintiffs must also allege justifiable reliance, causation, and an ascertainable loss. *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) (citing *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140-41 (3d Cir. 2005); *Seldon*, 647 F. Supp. 2d at 467.

*9 Here, Plaintiffs' claim fails because Plaintiffs have not alleged that Defendants made a false representation. To support their claim, Plaintiffs contend that documents provided by Defendants–such as *pro formas* and marketing materials–"falsely advertised that the annuities were safe, risk free investment vehicles." (*See, e.g.*, Doc. 76, at 12). But, no such allegation is made in the Amended Complaint. Rather, Plaintiffs only aver that these documents "convinced" the defendants to purchase the annuities, and that the documents created the impression that the annuities were "safe risk free investment vehicles." (*See, e.g.*, Am. Compl. ¶¶ 203-205). There is no question that Plaintiffs regularly note that Hyduk used these documents to support his fraud. (*See, e.g.*, Am. Compl. ¶¶ 198-202). However, Hyduk's misrepresentations will not be imputed to the Defendants, and no averment exists within the Amended Complaint to suggest that the *pro formas* or marketing materials provided by Defendants were false. For this reason, the facts as pled do not support a claim under § 201-2(4)(v).

*(2) Plaintiffs fail to allege a claim under 73 P.S. §§ 201-2(4)(ii),(iii)*
Next, Plaintiffs allege claims of misrepresentation of services and misrepresentation of association under 73 P.S. §§ 201-2(4)(ii)-(iii). The UTPCPL defines a misrepresentation of services as an act "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services." 73 P.S. §§ 201-2(4)(ii) On the other hand, a misrepresentation of association is defined as an act "causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another." 73 P.S. §§ 201-2(4)(iii). Like all claims under the UTPCPL, a plaintiff is required to plead justifiable reliance, causation, and an ascertainable loss. *See Baker*, 440 F. Supp. 2d at 412; *Seldon*, 647 F. Supp 2d at 467.

In addition to the normal pleading requirements for a UTPCPL claim, a plaintiff raising a claim of misrepresentation of services must plead that the defendants

2017 WL 4812308

"representations were likely to cause confusion or misunderstanding." *Id.; accord* 73 P.S. §§ 201-2(4)(ii). Here, Plaintiffs posit that the Defendants' use of "suitability" forms or questionnaires caused a misunderstanding that Defendants' annuities were appropriate investment vehicles for Plaintiffs. But, Plaintiffs never allege that the annuities were inappropriate for Plaintiffs, or that they were confused about the meaning of the so-called suitability forms. Rather, the core of Plaintiffs argument is that they fell victim to a fraud perpetrated by Hyduk, not that they were confused by a representation made by Defendants. In fact, it is undisputed that Plaintiffs were aware of the potential fees associated with the early termination of their annuities. Any pled confusion or misunderstanding is not attributed to the marketing efforts of Defendants, but rather to Hyduk's fraud. Thus, Plaintiffs have failed to adequately plead a claim for misrepresentation of services under the UTPCPL because Plaintiffs have not adequately pled that a representation made by Defendant likely confused Plaintiffs and caused an ascertainable loss.

Similarly, Plaintiffs claim for misrepresentation of association fails. While Plaintiffs have sufficiently pled that materials provided by Defendants may have caused a misunderstanding as to Hyduk's "affiliation, connection or association, with" Defendants, Plaintiffs have failed to plead that this misunderstanding caused their harm. Plaintiffs never pled that confusion related to Hyduk's association with the Defendants caused Plaintiffs to suffer losses related to the early withdrawal fees assessed by Defendants. Because Plaintiffs failed to plead a causal connection between the alleged misrepresentation and the harm suffered, Plaintiffs claim for misrepresentation of association under the UTPCPL will be dismissed. *See Seldon*, 647 F. Supp. 2d at 467 (noting that causation is an element "essential to any UTPCPL claim").

*(3) Plaintiffs fail to allege a claim under* 73 P.S. § 201-2(4)(xxi)

Finally, Plaintiffs allege a claim under the UTPCPL's catch-all provision, 73 P.S. 201-2(4)(xxi). As explained in this Court's earlier Memorandum, this claim sounds in fraud and requires not only pleading compliant with Federal Rule of Civil Procedure 9(b), but requires Plaintiffs plead the common law elements of fraud. The common law elements of fraud are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result." *Piper v. Am. Nat'l Life Ins. Co.*, 228 F. Supp 2d 553, 560 (M.D.

Pa. 2002). Further, the Third Circuit has held that "a defendant cannot be held 'derivatively liable' under the UTPCPL for the fraudulent action of a third party when 'plaintiff fails to allege or present any evidence that [the defendant] ever knowingly engaged in misrepresentation.' " *Belmont v. MB Inv. Partners*, 708 F.3d 470, 499 (3d Cir. 2013) (citing *Canty v. Equicredit Corp. of Am.*, No. 01-5804,2003 WL 21243268, at *3 (E.D. Pa. May 8, 2003)).

**\*10** As discussed earlier in this Opinion, Plaintiffs have failed to meet the pleading requirements under Rule 9(b). Therefore, this claim will be dismissed. Additionally, this claim will be dismissed because Plaintiffs are attempting to hold Defendants derivatively liable for a fraud committed by Hyduk where they have not pled that Defendants "knowingly engaged in misrepresentation." For these reasons, Plaintiffs claim under the catch-all provision of the UTPCPL will be dismissed.

### E. Count II: Breach of Fiduciary Duty [5]

[5]    As noted above, Count II of the Amended Complaint will be dismissed due to its failure to comply with Federal Rule of Civil Procedure 9(b). The following analysis does not supplant, but rather supplements that analysis and provides an alternative justification for dismissal.

Next, Defendants contend that Count II of Plaintiffs' Second Amended Complaint should be dismissed because Plaintiffs fail to allege that Defendants entered a fiduciary or confidential relationship with any given Plaintiff, and therefore no fiduciary duty was owed. Defendants are correct.

In order to allege a breach of fiduciary duty, "a plaintiff must establish that a fiduciary or confidential relationship existed between her and the defendants." *Baker*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) (citing *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005); *see Mifflinburg Tel., Inc. v. Criswell*, No. 14-0612, 2017 WL 4310187, *26 (M.D. Pa. Sept. 28, 2017). In the insurance context, contracts give rise to a fiduciary relationship under special circumstances indicating "overmastering influence." *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 617 (D.N.J. 1996) (analyzing Pennsylvania law). "[T]he critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on the one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." *eToll, Inc. v. Elias/Savion Advertising, Inc.*,

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

Case 3:20-cv-01446-RDM Document 33-1 Filed 11/09/20 Page 42 of 72

811 A.2d 10, 22 (Pa. Super. Ct. 2002) (citing *Basile v. H&R Block*, 777 A.2d 95,101 (Pa. Super. Ct. 2001). A confidential relationship is slightly different. "Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966). Further, the relevant case law suggests that whether a fiduciary duty arises "depends not on the goods or services that are the subject of the transaction, but the character of the relationship between the parties." *See. e.g., See Hatch v. Prudential Fin., Inc.*, No. 05-2050, 2006 WL 3325636, at *4-5 (M.D. Pa. Nov. 14, 2006).

Here, neither a fiduciary nor confidential relationship has been properly pled.

First, Plaintiffs have failed to plead "special or unusual facts" that would indicate an "overmastering influence," and thus a fiduciary relationship. Generally, an insurance contract–epitomizing the "quintessential arm's-length relationship between buyer and seller"–is not accompanied by such "special or unusual" facts as to create a fiduciary relationship. *See Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d 218, 227 (3d Cir. 2000) ("Under Pennsylvania law, a fiduciary duty ... does not arise out of an insurance contract until the insurer asserts a stated right to handle all claims asserted against the insured."); *Bank Trust Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("As a general rule, a life insurance company has no fiduciary obligation to the beneficiary...."). Plaintiffs have not pled facts to suggest that special circumstances exist which would create a fiduciary relationship between any one Plaintiff and any one Defendant. Therefore, a fiduciary relationship has not been properly pled.

 *11 Not only did Plaintiffs fail to plead "special or unusual" facts necessary to establish a fiduciary relationship, Plaintiffs pled facts that illustrate Defendants lack of an "overmastering influence." For example, Plaintiffs' averments suggest that each Plaintiff had the opportunity to consider annuities from each of the Defendants. In fact, the Amended Complaint shows that many Plaintiffs obtained annuities from several different annuity providers. For this reason, it is hard to imagine that any Defendant had an "overmastering" influence over any Plaintiff when Plaintiffs had the option to–and seemingly did–seek out alternate providers if they were not pleased with the terms offered by a given Defendant. These facts simply do not support a finding that the Defendants were in a fiduciary relationship with Plaintiffs.

Having failed to affirmatively plead facts necessary to establish a fiduciary relationship, Plaintiffs argue that a *per se* fiduciary relationship is created when there is an agreement between an annuity carrier (an insurer) and the beneficiaries of an annuity. To support this position Plaintiffs rely solely on a decision by the Lackawanna County Court of Common Pleas: *Beecham v. American Life & Cas. Co.*, 63 D. & C. 4.th. 52, 64-65 (C.C.P. Lackawanna 2003). In *Beecham*, the court held that a fiduciary relationship exists between an annuity carrier and the beneficiaries of the annuity. *Id.* While this case clearly supports Plaintiffs' position, it will not be followed here for two reasons. First, in rendering its unpublished decision, the *Beecham* Court did not cite a single authority to support the contention that a fiduciary relationship exists simply because an annuity is involved. Second, case law within this District has suggested the opposite. *See Hatch*, 2006 WL 3325636, at *4-5; *see also Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 WL 4072585, at * 7 (E.D. Pa. Sept. 2, 2008). For these reasons, this Court will not conclude that there is a *per se* fiduciary relationship between an annuity carrier and holder.

Second, Plaintiffs failed to plead that any Defendant served Plaintiffs as "advisor or counselor" as to establish a confidential relationship. Plaintiffs pled no facts to suggest that they were counseled or advised by Defendants. The Amended Complaint includes no allegation that Plaintiffs discussed their annuities directly with Defendants, and there is no allegation that Plaintiffs received financial advice from Defendants. Further, Plaintiffs do not claim that Defendants recommended surrendering their annuities. Instead, Plaintiffs suggest that "*pro formas* and marketing materials" convinced Plaintiffs that they were being offered "safe, risk-free investment vehicles" by Defendants. Further, Defendants have offered documentation to suggest that they were never engaging in advisory services.[6] For example, the enrollment form provided by Defendant Forethought specifically states: "Forethought Life Insurance Company does not offer legal, financial, tax, investment, or estate planning advice." Moreover, that same form notes that Plaintiffs had "the opportunity to seek such advice from the proper sources before" purchasing the annuity. As such, no facts pled suggest that a confidential relationship was created.

[6]     These documents may be reviewed on a motion to dismiss. *See Am. Corp. Soc.,* 424 Fed.Appx. at 86;

Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

Case 3:20-cv-01446-RDM    Document 33-1    Filed 11/09/20    Page 43 of 72

*In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

Plaintiffs alternatively suggest that this analysis is inappropriate upon review of a motion to dismiss because the "existence of a confidential relationship requires a fact-sensitive inquiry not to be disposed rigidly as a matter of law." *Yenchi v. Ameriprise Fin., Inc.*, 123 A.3d 1071, 1079 (citing *Basile*, 777 A.2d at 101). Here, however, the question before the Court is not whether or not a confidential relationship existed, but whether there has been adequate pleading to support such a claim. Courts within the Third Circuit have regularly dismissed claims for failing to properly plead a fiduciary or confidential relationship. *See, e.g.*, *Reginella Constr. Co. Ltd. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 613 (W.D. Pa. 2013) ("Even if [Plaintiff] were to prove every fact it alleges in its Complaint, it still would not be entitled to relief on its fiduciary duty claims, because the facts fail to establish that a fiduciary duty existed...."); *Minesweaser v. Prudential Ins. Co. of Am.*, No. 16-1172, 2016 WL 5792778, at *5 (W.D. Pa. Oct. 4, 2016); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 617 (D.N.J. 1996) (holding that Plaintiff failed to state a claim under Pennsylvania law and dismissal pursuant to Rule 12(b)(6) was appropriate where no special circumstances had been pled to establish a fiduciary relationship). For this reason, this Court may consider whether Plaintiffs have properly pled facts necessary to support a fiduciary or confidential relationship.

*\*12* Finally, Plaintiffs claim that Defendants entered into a fiduciary or confidential relationship with Plaintiffs through their agent, Hyduk. As described above, Plaintiffs have not properly pled an agency relationship between Hyduk and Defendants. As such, this argument is unpersuasive.

Because neither a fiduciary nor confidential relationship has been sufficiently pled, Defendants' Motions to Dismiss should be granted with respect to Count II.

**F. Count III: Negligence Claims**

Defendants argue that Count III of Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted because Pennsylvania's economic loss doctrine–recognized by the Third Circuit–bars Plaintiffs' negligence claims. Plaintiffs disagree and argue that the economic loss doctrine is not applicable here because the doctrine has historically applied only in products liability cases. Further, Plaintiffs contend that courts in this Circuit have held that the

doctrine does not apply to bar claims of negligent hiring or supervision. Plaintiffs are incorrect.

At bottom, the "economic loss doctrine provides that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.' " *Longenecker-Wells v. Benecard Servs.*, 658 Fed.Appx. 659, 661 (3d Cir. 2016) (citing *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009)); *see Azur v. Chase Bank, USA*, 601 F.3d 212, 222 (3d Cir. 2010). While it is true that the doctrine was born out of product liability claims, the doctrine has expanded to encompass negligence claims of a much wider variety. *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001) (noting that the doctrine "developed in the context of courts' precluding products liability tort claims...."); *Lower Lake Doc Co. v. Messinger Bearing Corp.*, 395 Pa. Super. 456, 462-63 (Pa. Super. 1990) (stating that the doctrine "is not limited to products liability, but has equal application in negligence cases."). [7] For example, the economic loss doctrine applies to claims of negligent supervision. *See Estate of Clark v. Toronto Dominion Bank*, No. 12-6259, 2013 WL 1159014, *10 (E.D. Pa. Mar. 21, 2013)* ("[B]ecause the only damages which Plaintiff alleges it sustained as a consequence of Defendant's alleged negligence and negligent supervision in this case are solely economic in nature, we find that these claims are barred by operation of the economic loss doctrine."); *Flannery v. Mid Penn Bank*, No. 08-0685, 2008 WL 5113437, *7 (M.D. Pa. Dec. 3, 2008)*

---

[7]   *See, e.g.*, *Longenecker-Wells*, 658 Fed.Appx. at 661-62 (applying the doctrine to a negligence claim related to an illegal data breach that only caused economic harm); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 177-78 (3d Cir. 2008) (holding that the doctrine barred plaintiff's negligence claims arising out of a theft of credit card information where plaintiff suffered only economic harm); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (applying the doctrine in the context of UTPCPL cases); *Enslin v. Coca-cola Co.*, 136 F. Supp. 3d 654, 672 (E.D. Pa. 2015) (applying the economic loss doctrine to bar a negligence claim premised on the economic harm caused by the unlawful disclosure of Defendant's employees' personal identification information); *Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 WL 4072585, *8 (E.D. Pa. Sept.*

Case 3:20-cv-01446-RDM  Document 33-1  Filed 11/09/20  Page 44 of 72
Dolan v. PHL Variable Insurance Company, Not Reported in Fed. Supp. (2017)

2017 WL 4812308

2, 2008) (noting that it is well-established that the
economic loss doctrine may bar claims of negligent
misrepresentation (citing *Duquesne Light Co. v.
Westinghouse Elec. Corp.*, 66 F.3d 604, 620-21 (3d
Cir. 1995)).

 **\*13**  Conceding that a number of courts have broadened the
economic loss doctrine, Plaintiffs are forced to argue that
the decisions of these courts were in error. To support this
contention Plaintiffs rely heavily on two cases: *Independent
Warehouse Inc. v. Professori*, No. 15-1369, 2016 WL
1569210 (W.D. Pa. Apr. 19, 2016), and *Heller v. Patwil
Homes*, 713 A.2d 105 (Pa. Super. 1998). First, Plaintiffs'
cite *Independent Warehouse* to support the notion that the
"economic loss doctrine does not apply to claims for negligent
hiring, retention and supervision." (Doc. 77, at 22). In
making such conclusion, the *Independent Warehouse* Court
compared the applicability of the doctrine to the "gist of
the action" doctrine. Such comparison has been made by
the Third Circuit in the past, but any distinction does
not provide–as *Independent Warehouse* suggests–that the
economic loss doctrine is reserved to cases involving products
liability. Considerable precedent, identified above, suggests
the opposite. In fact, just months after *Independent Warehouse*
was decided, the Third Circuit held that the economic loss
doctrine applied to a negligence claim premised on an
unlawful computer breach; not a products liability claim.
*Longenecker-Wells*, 658 Fed.Appx. at 661. For this reason,
reliance *on Independent Warehouse* is misplaced.

Second, Plaintiffs cite a 1998 case from the Pennsylvania
Superior Court to establish that Pennsylvania law does not
limit negligent supervision claims to cases of physical injury.
In *Heller v. Patwil Homes*, the court affirmed an award
recovered by a Plaintiff on a theory of negligent supervision
following discovery of an investment scam orchestrated
by Defendant's employee. 713 A.2d at 105. Notably, the
court neither mentioned nor discussed the applicability of
the economic loss doctrine. *See generally, id.* Plaintiffs'
suggestion otherwise is simply incorrect. More significantly,
having been decided in 1998, the *Heller* Court rendered its
opinion prior to a number of decisions applying the economic
loss doctrine to similar actions.

Here, the economic loss doctrine applies to bar Plaintiffs'
negligence claims. Plaintiffs Amended Complaint includes
no reference to physical injury or property damage as
required to bring a negligence claim susceptible to the
economic loss doctrine. In fact, Plaintiffs concede that the
only damages claimed are economic damages. Because the
economic loss doctrine bars Plaintiffs' negligence claims,
Count III of Plaintiffs' Amended Complaint will be dismissed
with prejudice.

## G. Leave to Amend

Defendants contend that Plaintiffs should not be granted leave
to amend the Amended Complaint and request that all claims
be dismissed with prejudice. However, this Court is instructed
to allow a curative amendment unless an amendment would
be inequitable or futile. *Phillips v. Cnty of Allegheny*, 515 F.3d
224, 237 (3d Cir. 2008). Here, because Plaintiffs may be able
to amend their pleadings to support the claims asserted, this
Court will grant Plaintiffs one final leave to amend Counts
I and II of the Amended Complaint. But, since Plaintiffs'
negligence claims are barred by the economic loss doctrine,
this Court will find that amendment would be futile. Thus,
Count III of Plaintiffs' Amended Complaint will be dismissed
with prejudice.

## IV. Conclusion

For the above stated reasons, Plaintiffs Amended Complaint
is dismissed in its entirety. Notably, Count III will be
dismissed with prejudice because the economic loss doctrine
bars Plaintiffs' negligence claims.

An appropriate order follows.

## All Citations

Not Reported in Fed. Supp., 2017 WL 4812308

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.



# Johnson v. Chase Manhattan Bank, USA N.A.

United States District Court, E.D. Pennsylvania. |     July 11, 2007 |     Not Reported in F.Supp.2d |     2007 WL 2033833

| **Document Details** | | **Outline** |
|---|---|---|
| KeyCite: | **KeyCite Yellow Flag - Negative Treatment** | Attorneys and Law |
|  | Declined to Follow by Melfi v. WMC Mortgage Corp., 1st Cir.(R.I.), | Firms (p.1) |
|  | June 11, 2009 | *MEMORANDUM* |
| alwd Citation: | Johnson v. Chase Manhattan Bank, USA N.A., CIV.A. 07-526, 2007 WL | (p.1) |
|  | 2033833 (E.D. Pa. July 11, 2007) | All Citations (p.7) |
| All Citations: | Not Reported in F.Supp.2d, 2007 WL 2033833 | |

**Search Details**

| Jurisdiction: | Pennsylvania |
|---|---|

**Delivery Details**

| Date: | November 9, 2020 at 8:53 AM |
|---|---|
| Delivered By: | Teri Townsend |
| Client ID: | 257825.000001 |

Johnson v. Chase Manhattan Bank, USA N.A., Not Reported in F.Supp.2d (2007)

2007 WL 2033833

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Melfi v. WMC Mortgage Corp.,   1st Cir.(R.I.),
June 11, 2009

2007 WL 2033833
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Alexander JOHNSON, et al

v.

CHASE MANHATTAN BANK, USA N.A., et al.

Civil Action No. 07-526.
|
July 11, 2007.

**Attorneys and Law Firms**

Robert P. Cocco, Law Offices of Robert P. Cocco PC,
Philadelphia, PA, for Plaintiffs.

Theodore F. Haussman, Jr., Drinker Biddle & Reath LLP,
Joel I. Herzfeld, Eric J. Phillips, Salmon Ricchezza Singer
& Turchi LLP, David E. Shapiro, Philadelphia, PA, for
Defendants.

*MEMORANDUM*

BARTLE, C.J.

**\*1** Plaintiffs Alexander and Darlene Johnson bring this
action against defendants Chase Bank USA, N.A. ("Chase"),
Glenn Randall ("Randall"), Lexington & Concord Search and
Abstract, LLC, ("Lexington"), and Jonathan Ganz ("Ganz").
Plaintiffs seek rescission of a residential mortgage loan and
damages with respect to a contract for improvements on their
home. Before the court is the motion of defendant Chase to
dismiss Count I and part of Count II of plaintiff's amended
complaint under Rule 12(b)(6) of the Federal Rules of Civil
Procedure for failure to state a claim upon which relief can
be granted.

In Count I of the amended complaint, plaintiff Darlene
Johnson alleges that defendant Chase violated the Truth-in-
Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. In Count II
of the amended complaint, both plaintiffs bring claims against
all defendants alleging: (1) violations of Pennsylvania's Home

Improvement Finance Act ("HIFA"), 73 Pa. Stat. Ann. §
500-101, et seq; (2) violations of Pennsylvania Unfair Trade
Practice and Consumer Protection Law ("UTPCPL"), 73 Pa.
Stat. Ann. § 201-1, et seq; and (3) conspiracy to commit fraud
under UTPCPL, HIFA, and Pennsylvania common law. [1]
Chase moves to dismiss Count I and the HIFA and UTPCPL
violations alleged against it in Count II but does not address
the conspiracy allegations in Count II at this time.

[1]     In Count III of the amended complaint, not
        presently at issue, both plaintiffs bring a claim
        of negligence against defendants Randall and
        Lexington.

I.

For present purposes, we accept all well-pleaded allegations
in the amended complaint as true. *Cal. Pub. Employees' Ret.
Sys. v. Chubb Corp.,* 394 F.3d 126, 143 (3d Cir.2004) (citation
omitted).

Plaintiffs, husband and wife, are homeowners in the City
of Philadelphia. They were solicited by two men, Calvin
Harris and Marcus Newsome, on behalf of the Philadelphia
Home Improvement Outreach Program ("PHI"), to perform
improvements to plaintiffs' property. Newsome told plaintiffs
that PHI would assist them in arranging financing in the
amount of $76,000 to pay for the improvements. Without
plaintiffs' knowledge, Newsome or Harris contacted a
mortgage broker, defendant Jonathan Ganz of Bryn Mawr
Mortgage to arrange for financing. Sometime thereafter,
Newsome, Harris and/or Ganz submitted a loan application
to Chase.

Plaintiffs agreed to a loan from Chase in the amount of
$186,900. Approximately $90,000 of this total was to pay
off two existing mortgages on their home. Other portions of
the loan were to pay other existing debt that the plaintiffs
carried. The plaintiffs were also to receive $26,530 in cash.
On or about January 25, 2005, Newsome and Eric Senders,
an employee of defendant Lexington, participated in the
closing of the loan at plaintiffs' residence. Newsom and
Senders told plaintiffs that Chase would escrow the cash
intended for home improvements and would disburse the
funds upon authorization of plaintiffs to PHI's subcontractors.
Defendant Randall, who was not present at the mortgage
closing, notarized the plaintiffs' signatures on the mortgage.

**\*2** Despite the representations to plaintiffs prior to the closing of the mortgage, the non-mortgage debt was not paid off, and plaintiffs did not receive a cash disbursement. Instead, a total of $70,000 in three checks from the loan proceeds was distributed to Harris. Although PBI hired subcontractors to complete work on plaintiffs' property, much of the work was not completed and that which was completed was shoddy and consisted of sub-standard materials. On June 26, 2006, plaintiffs notified Chase that they were rescinding the loan. Chase has refused to honor plaintiffs rescission request.

## II.

Chase first argues for the dismissal of Count I, which seeks rescission of the mortgage loan and alleges that Chase violated TILA when it failed properly to complete paperwork given to Darlene Johnson regarding her right to rescind the mortgage loan. According to plaintiffs, the line provided for the date by which the right to rescind must be exercised was left blank on Ms. Johnson's notice.[2]

[2] The date was properly inserted on the corresponding line on Alexander Johnson's form. In a transaction involving multiple consumers, however, notice of right to rescind must be made separately "to each consumer who has the right to rescind." 12 C.F.R. § 226.17(d); *In re Apgar*, 291 B.R. 665, 670 (Bankr.E.D.Pa.2003). Here, Chase was obliged to provide proper notice to both Darlene and Alexander Johnson. *See* 12 C.F.R. § 226.23(a). Because plaintiffs do not argue that Alexander Johnson's notice was defective in any way, it is only the right of Darlene Johnson to rescind which is presently at issue.

TILA gives certain borrowers a temporary right to rescind a mortgage transaction:

> [I]n the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business

> day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later ....

15 U.S.C. § 1635(a). The creditor must provide the borrower with notice of this right by giving two copies of the notice to each borrower who has a right of rescission. 12 C.F.R. § 226.23(b). The notice must clearly and conspicuously disclose:

> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

> (ii) The consumer's right to rescind the transaction.

> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

> (iv) The effects of rescission, as described in paragraph (d) of this section.

> (v) The date the rescission period expires.

*Id.* If a creditor fails to deliver notice of the right to rescind or any of the required material disclosures, the debtor may rescind at any time up to three years following the consummation of the transaction. *Id.* § 226.23(a)(3).

The Board of Governors of the Federal Reserve System (the "Board"), which is responsible for developing model disclosure forms, has published a model Notice of Right to Cancel form. *See* 12 C.F.R. Pt. 226, App. H-8. A creditor using this model form is deemed to be in compliance with the disclosure provision of TILA. 15 U.S.C. § 1604(b). In the instant matter, the form used by Chase conforms to the model form promulgated by the Board. In using the model form, Chase was required to insert on the appropriate blank line the date by which the right to rescind must be exercised. Chase does not dispute that the line on Darlene Johnson's notice was left blank. Instead, relying on *Palmer v. Champion Mortgage,* 465 F.3d 24 (1st Cir.2006), it argues that its duty was only to provide an objectively reasonable notice of the deadline and that Darlene Johnson's notice was sufficient to meet that standard because it twice provided information which would make the deadline clear to the average consumer.

**\*3** In particular, Chase relies on the following two portions of the notice describing the deadline for the right to rescind:

Your Right to Cancel

You are entering into a transaction that will result in a mortgage/security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occur last:

(1) The date of the transaction which is *January 25, 2005;* or

(2) The date you received your Truth-in-Lending disclosures; or

(3) The date you received this notice of your right to cancel.

\* \* \*

If you cancel by mail or telegram, you must send the notice no later than midnight of *[left blank]* (or midnight of the third business day following the latest of the three events listed above).

In the *Palmer* case, on which Chase relies, the creditor mailed the borrower her Notice of Right to Cancel after the closing had taken place. The notice identified the deadline for rescission as April 1, 2003, but the borrower did not receive the letter until sometime after that date had passed. As with the notice in the instant case, the notice in *Palmer* contained language explaining that the rescission deadline would not pass until three days after the latest of the three triggering events, one of which was the date the borrower received the notice of her right to cancel. The notice also included a parenthetical note after listing the rescission deadline, identical to the one in this case, setting out an alternative manner for determining the deadline if the three triggering events did not occur at the same time. The borrower attempted to rescind the transaction seventeen months later. She argued that because the April 1 deadline had passed before she received the notice, the notice was "confusing" and such defective notice extended her right to rescind to the statutory three year period. *Id.* at 27. The *Palmer* court used the standard of an "average consumer, looking at the Notice objectively" to determine that the notice was not confusing and that the extended rescission right under TILA was not triggered. *Id.* at 28-29. The court stated that the "twice-repeated alternative deadlines" would have made it "crystal

clear" to the average consumer that the April 1 deadline would not necessarily be the applicable one. *Id.* at 29.

Chase urges this court to apply *Palmer's* reasoning to the present situation. As noted above, it argues that the notice to Darlene Johnson provided all the necessary material information for a reasonably alert person to determine when her right of rescission would expire, even with the blank in her notice. We disagree.

A notice of the right of rescission must contain "[t]he date the rescission period expires." 12 C.F.R. § 226.23(b)(v). The amended complaint alleges, and Chase does not deny, that Chase's notice to Darlene Johnson's did not contain this vital piece of information. Darlene Johnson has properly set forth a TILA violation, and the question presently before this court is whether that alleged violation can be excused, as Chase argues it should be. By contrast, the notice in *Palmer* did contain the date of the rescission deadline and otherwise complied with each of the governing regulations. *Palmer* did not address whether an alleged TILA violation could be excused. Instead, the issue there was whether the notice was defective because it was confusing even though there was compliance with the TILA. The *Palmer* court itself expressly distinguished the situation it confronted from one in which the notice at issue stated no rescission date at all. 465 F.3d at 29.

**\*4** The correct standard for TILA violations is one of strict liability:

> TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made. A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent. Once the court finds a violation, no matter how technical, it has no discretion with respect to liability.

*In re Porter, 961 F.2d 1066, 1078 (3d Cir.1992), citing Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3d Cir.1990)* (internal quotations omitted). Indeed, we were unable to find, nor did Chase cite, a single case excusing a creditor's failure to fill in the blank designated for the

Johnson v. Chase Manhattan Bank, USA N.A., Not Reported in F.Supp.2d (2007)

2007 WL 2033833

rescission deadline. *See, e.g. Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 704 (9th Cir.1986); *Williamson v. Lafferty,* 698 F.2d 767 (5th Cir.1983); *Mayfield v. Vanguard Sav. & Loan Ass'n,* 710 F.Supp. 143 (E.D.Pa.1989); *In re Armstrong,* 288 B.R. 404 (Bankr.E.D.Pa.2003).

In sum, Darlene Johnson has stated a claim under the TILA because of Chase's failure to include the rescission deadline on her notice. As a result, the time period in which she may exercise her right of rescission is three years, pursuant to 12 C.F.R. § 226.23(a)(3). If Ms. Johnson proves her allegations of a TILA violation, she has until three years after January 25, 2005, the day the transaction was consummated, to rescind. If, as she alleges, she notified Chase of her desire to rescind on June 26, 2006, she acted well within the permissible time period to do so. Chase would then be required to honor Ms. Johnson's right to rescind the mortgage loan transaction.

Chase additionally asserts that Count I of the amended complaint should be dismissed against it because plaintiffs did not tender the principal of the mortgage loan to Chase prior to pursuing rescission. "When a borrower rescinds a loan, he or she must return the money borrowed." *Porter,* 961 F.2d at 1077. The question Chase raises is whether the borrower must always repay, or offer to repay, the proceeds of the loan before seeking to terminate the creditor's security interest.

Section 1635(b) of TILA sets forth the sequence of rescission and tender that must be followed unless a court orders otherwise. Within twenty days of the borrower's notification that she is exercising her right of rescission, the creditor must return any money or property given as earnest money, downpayment, or otherwise and reflect the termination of its security interest that was created by the transaction. After the creditor has met these obligations, the borrower must tender the property or its reasonable monetary value.[3] The Notice of Right to Cancel that Chase provided to both plaintiffs describes the rescission procedure in much the same way. The Notice made clear that, after receiving plaintiffs' notice of rescission, Chase "must take the steps necessary to reflect the fact that the mortgage on [plaintiffs'] home has been cancelled" and that only after Chase has undertaken that obligation does the borrower have the responsibility to tender the money or property.

[3]     The full text of the statutory provision reads as follows:

(b)  Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor ... becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b).

**\*5**  It is apparent from the plain language of the statute that the borrower does not have to tender the proceeds of the loan before invoking her right to rescind unless and until a court decides otherwise and modifies the statutory scheme. Contrary to Chase's assertion, this modification is a matter of the court's equitable discretion and does not operate automatically. Indeed, in each of the cases Chase cites, the court recognizes that it is using its authorized discretion to depart from the ordinary order as described in the statue. *See, e.g. Yamamoto v. Bank of New York,* 329 F.3d 1167 (9th Cir.2003); *Williams v. Homestake Mortgage Co.,* 968 F.2d 1137 (11th Cir.1992); *FDIC v. Hughes Dev. Co.,* 938 F.2d 889 (8th Cir.1991); *Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n,* 683 F.2d 444 (D.C.Cir.1982) (per curiam).

Chase has not made a request for conditional rescission in this court. Even if we were to interpret Chase's motion for dismissal as such a request, it would be premature at this stage of the litigation. There is not yet any record,

as there was in each of the cases cited by Chase, of the plaintiffs' inability to return the proceeds of the loan or any of the other circumstances this court would be obliged to consider if making a decision on equitable grounds. Because the plaintiffs were under no initial obligation to tender the proceeds of their mortgage loan prior to seeking rescission of that loan, Chase's argument to the contrary fails, and its motion to dismiss Count I of the amended complaint will be denied.

III.

Chase also argues for the dismissal of Count II, which alleges state law claims for fraud and conspiracy to commit fraud under HIFA, UTPCPL, and Pennsylvania common law.

HIFA is a Pennsylvania consumer protection statute which governs "home improvement installment contracts" that are to be performed in the Commonwealth. Plaintiffs assert that Chase violated the HIFA provisions which prohibit the collection of certain non-interest charges and of combining cash loans with financing of home improvement installation contracts. 73 Pa. Stat. Ann. §§ 500-407 and 500-408. Chase counters that those provisions of HIFA do not apply to it because it is a national banking association governed by the National Bank Act, 12 U.S.C. § 1, et seq ("NBA") and the regulations of the Office of the Comptroller of Currency ("OCC"). Chase maintains that those federal regulations preempt the HIFA provisions at issue.

A national banking institution may make mortgage loans subject to the terms, conditions and limitations set forth in the NBA and the OCC's regulations. 12 U.S.C. § 371; 12 C.F.R. § 34.3(a). Those regulations specifically address the question of the applicability of state law and provide that:

Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans ... without regard to state law limitations concerning:

* * *

**\*6** (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under

which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

* * *

(11) Disbursements and repayments[.]

12 C.F.R. § 34.4(a). Chase argues that these regulations preempt HIFA's prohibition on cash loans. We agree. The regulation's broad preemption of state laws which constrict the ability of national banks to make real estate loans plainly encompasses HIFA's restriction against making cash loans in connection with a home improvement installment contract.

Additionally, an OCC regulation explicitly provides that: "A national bank may charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). Plaintiffs acknowledge this and admit that HIFA's prohibitions of such fees are preempted by the federal regulation. Thus, plaintiffs' amended complaint will be dismissed against Chase to the extent that it alleges a HIFA violation.[4]

4    Plaintiffs also allege that Chase's HIFA violations are per se violations of the UTPCPL. Because we find that plaintiffs have not stated a claim under HIFA, their UTPCPL claim will also be dismissed to the extent it is based on alleged HIFA violations.

Plaintiffs also allege that Chase violated three provisions of Pennsylvania's UTPCPL. Chase counters with a number of arguments, including that fraud was not pleaded with particularity, as it must be under Rule 9(b) of the Federal Rules of Civil Procedure. We will assume without deciding that plaintiffs pleaded fraud with sufficient particularity and address plaintiffs' allegations on other grounds.

First, plaintiffs claim that the defendants engaged in the unfair trade practice of "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." 73 Pa. Con. Stat. Ann. § 201-2(4) (v). Plaintiffs assert that this provision was violated when the benefits of the loan were misrepresented to plaintiffs. Specifically, the plaintiffs allege that the loan made by Chase failed to pay the plaintiffs' debts, as Harris and/or defendant Ganz had represented and that the proceeds of the loan were paid to Harris instead of to plaintiffs. In order to prove a UTPCPL violation based on § 201-2(4)(v), a plaintiff must

2007 WL 2033833

show: (1) the defendant made a false representation; (2) which actually deceived or has the tendency to deceive plaintiff; and (3) the plaintiff relied on the false representation. *See DiLucido v. Terminix Int'l, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237, 1240-41 (Pa.Super.1996). Nowhere do the plaintiffs allege that any Chase employee made a representation of any sort to them. Instead, the plaintiffs contend that Harris and Ganz were Chase's agents, such that Chase should be held responsible for their actions, including their alleged misrepresentations.

Both parties agree that agency is comprised of three elements under Pennsylvania law: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115, 1120 (Pa.2000). An agency relationship does not arise out of every action taken on another's behalf. *Id.* at 1121. "Rather, the action must be a matter of consequence or trust, such as the ability to actually **bind** the principal or alter the principal's legal relations." *Id.* (emphasis in original).

 **\*7** Plaintiffs allege that Harris and Ganz were agents of Chase because "defendant Chase remained in control of the undertaking with Ganz, [Bryn Mawr Mortgage Group ("BMMG") ], and Harris in that it directed how the financing of the loans was to be accomplished by barring any mention of improvements in the loan application process to comply with Chase underwriting standards." Plaintiffs, however, acknowledge that their loan application had to be submitted to Chase's underwriting department for consideration and acceptance. Pl.'s Am. Compl. at ¶ 29, 49(e)(1). Even accepting as true plaintiffs' allegations that a Chase account executive engaged in misconduct by directing Ganz and/or Harris how to fill out the plaintiffs' loan application, plaintiffs do not allege that Ganz or Harris had the authority to bind Chase to a nearly $186,900 loan. Instead, Chase's underwriting department was the entity that determined whether or not to authorize the loan to plaintiffs. Thus, plaintiffs have not sufficiently pleaded an agency relationship between Chase and Ganz, BMMG and Harris. The alleged representations of these other parties cannot be attributed to Chase. Since there are no other allegations of Chase making a false representation to the plaintiffs, plaintiffs have failed to plead a violation by Chase of the UTPCPL based on § 201-2(4)(v), and this claim will be dismissed.

Next, plaintiffs aver that the defendants violated § 201-2(4)(xvi) of the UTPCPL, which defines as an unfair trade practice: "Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing." 73 Pa. Stat. Ann. § 201-2(xvi). "Under section 201-2(4)(xvi), a plaintiff must show that a defendant agreed in writing to perform a contract with a certain quality and that the work was substandard and inferior." *DiLucido,* 676 A.2d at 1241 (footnote and citation omitted). Plaintiffs do not allege that Chase made any repairs, improvements or replacements on their property or that Chase contracted to perform any such services. Again, plaintiffs rely entirely on an agency theory, seeking to hold Chase responsible for the alleged actions of Ganz and Harris. As described above, plaintiffs' agency theory is untenable. Plaintiff's claim under § 201-2(xvi) will therefore be dismissed against Chase.

Finally, plaintiffs allege that § 201-2(4)(xxi), the "catchall provision" of the UTPCPL, was violated when defendant Randall notarized the plaintiffs' signatures on the mortgage although he was not personally present at the closing. As with plaintiffs' other assertions of liability under the UTPCPL, plaintiffs seek to hold Chase responsible as a principal for the conduct of another. Here, plaintiffs rely on the same theory as above to link Harris and Ganz to Chase, but add that Randall and Lexington were agents of Harris and Ganz and that Chase should thus be responsible for their actions as well. Without deciding whether Randall and Lexington were agents of Harris and Ganz, we have already determined that Harris and Ganz were not agents of Chase. Since the chain of agency has not been properly alleged, it follows that Randall and Lexington cannot be deemed Chase's subagents. As plaintiffs put forth no other basis for Chase's liability for the actions of Randall and Lexington, we will dismiss plaintiffs' claim under § 201-2(4)(xxi) of the UTPCPL against Chase.

 **\*8** In sum, we will dismiss Count II of plaintiffs' amended complaint against Chase as to the alleged violations under HIFA and the UTPCPL.

*ORDER*

AND NOW, this 11th day of July, 2007, for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

2007 WL 2033833

(1) the caption of this case shall be changed from "Chase Manhattan Bank, USA N.A." to "Chase Bank USA, N.A.";

(2) the motion of defendant, Chase Bank USA, N.A., to dismiss the amended complaint is DENIED as to it with respect to Count I and GRANTED with respect to plaintiffs' claims in Count II under the Pennsylvania Home Improvement Finance Act and Pennsylvania Unfair Trade Practice and Consumer Protection Law.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2033833

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Levin v. Strayer University, LLC

United States District Court, E.D. Pennsylvania. |    July 26, 2018 |    Not Reported in Fed. Supp. |    2018
WL 3585124

| Document Details | | Outline |
|---|---|---|
| alwd Citation: | Levin v. Strayer U., LLC, CV 18-0893, 2018 WL 3585124 (E.D. Pa. July 26, 2018) | Attorneys and Law Firms (p.1) |
| All Citations: | Not Reported in Fed. Supp., 2018 WL 3585124 | **MEMORANDUM** (p.1) |
| **Search Details** | | All Citations (p.6) |
| Jurisdiction: | Pennsylvania | |
| **Delivery Details** | | |
| Date: | November 9, 2020 at 8:53 AM | |
| Delivered By: | Teri Townsend | |
| Client ID: | 257825.000001 | |

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 54 of 72

Levin v. Strayer University, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 3585124

2018 WL 3585124
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

David LEVIN, Plaintiff,
v.
STRAYER UNIVERSITY, LLC, Defendant.

CIVIL ACTION NO. 18-0893
|
Filed 07/26/2018

**Attorneys and Law Firms**

Lawrence Solomon, Solomon Sherman & Gabay, Philadelphia, PA, for Plaintiff.

L. Evan Van Gorder, Ogletree Deakins Nash Smoak & Stewart PC, Philadelphia, PA, for Defendant.

**MEMORANDUM**

C. Darnell Jones, II, Judge

**I. Introduction**

 **\*1** Plaintiff David Levin brings the above-captioned action against Defendant Strayer University, LLC ("Strayer"), alleging Misrepresentation/Fraud (Count I), "Contract" (Count II), and violations of Unfair Trade Practices and Consumer Protection Law (Count III). Plaintiff's claims center around an alleged oral "promise" made by Strayer through Strayer personnel, in which said personnel said the University would provide him with job placement services after graduation in exchange for his enrollment. Currently before this Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. For the reasons set forth below, Defendant's Motion shall be granted and Plaintiff shall be granted leave to amend.

**II. Background**

 **A. Procedural History**

On or about February 12, 2018, Plaintiff filed his Complaint in the Philadelphia Court of Common Pleas. Specifically, Plaintiff asserted claims against Strayer for Misrepresentation / Fraud (Count I), Punitive Damages (Count II), and "Contract" (Count III). On February 28, 2018, Strayer removed the matter to this Court on the basis of

diversity jurisdiction pursuant to 28 U.S.C. § 1332. On March 6, 2018, Strayer filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and in response, Plaintiff filed an Amended Complaint alleging Misrepresentation/Fraud (Count I), "Contract" (Count II), and violations of Unfair Trade Practices and Consumer Protection Law (Count III). The instant Motion followed.

 **B. Factual History**

In 2009, Plaintiff enrolled in one of Strayer's campuses located in King of Prussia, Pennsylvania. (Am. Compl. ¶ 3.) In 2013, Plaintiff took a three-semester hiatus to recuperate from injuries sustained in a motor vehicle accident. (Am. Compl. ¶ 4.) Plaintiff re-enrolled in 2014, at which time he was informed that the course requirements had changed and he was required to complete additional courses that were not a part of the 2009 curriculum. (Am. Compl. ¶¶ 5-6.)

Plaintiff alleges that a major reason he initially enrolled at Strayer was based on an oral promise made to him by personnel on behalf of Strayer that the University would assist Plaintiff with job placement services after graduation. (Am. Compl. ¶¶ 9, 21.) However, upon graduating, Plaintiff attempted to obtain job placement services from Strayer and was informed that the University did not offer same. (Compl. ¶ 10.) Plaintiff alleges Strayer was aware of his reliance on this information and knowingly made these false representations to convince him and other students to enroll in order to increase enrollment statistics and enrich Strayer. (Am. Compl. ¶¶ 15-17, 30.) As a result, Plaintiff alleges he incurred financial detriment and loss in the form of at least $77,793.00 in debt and several thousand dollars in "other" expenses. (Am. Compl. ¶¶ 26-28.)

**III. Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly,* "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim has facial plausibility when

Case 3:20-cv-01446-RDM Document 33-1 Filed 11/09/20 Page 55 of 72

Levin v. Strayer University, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 3585124

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id. Accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## IV. Discussion

### A. Untimely Opposition

**\*2** As a preliminary matter, Defendant argues its Motion should be treated as unopposed because Plaintiff failed to file his response in a timely manner. Def.'s Reply Mot. Dismiss 2.) Although Local Rule 7.1(c) permits the court to treat Strayer's Motion to Dismiss the Amended Complaint as uncontested, it shall not do so in this case. E.D. Pa. R. Civ. P. 7.1(c). Plaintiff's opposition was filed on April 17, 2018, six days after the fourteen (14) day deadline. A court may deny a request that a motion be treated as unopposed if the untimely briefing "is helpful to our determination of the issues in [the] matter." *See McNiff v. Asset Mgmt. Specialists, Inc.*, 337 F.Supp.2d 685, 687 n.1 (E.D. Pa. 2004). As considering the untimely opposition assists this Court in reaching a determination regarding the instant Motion and results in no prejudice to Defendant, this Court shall deny Defendant's request to treat its Motion as unopposed.

### B. Count I: Misrepresentation / Fraud

In order to sufficiently plead a claim of fraudulent misrepresentation, a plaintiff must adequately allege: "(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker to induce the recipient thereby; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the misrepresentation." *See C & K Petroleum Products, Inc. v. Equibank*, 839 F.2d 188, 191 (3d Cir. 1988) (citing *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134, 137 (Pa. 1973) ). However, the pleading standard is heightened with respect to claims of fraud, in that a "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires plaintiffs to plead claims with particularity to "place the defendants on notice of the precise misconduct with which they are charged." *Anzalone v. Dulgerian (In re Dulgerian)*, 388 B.R. 142, 147 (Bankr. E.D. Pa. 2008) (internal citations omitted).

### i. Sufficiency of Pleadings

Count I of Plaintiff's Amended Complaint woefully fails to adequately allege any misrepresentation, and must therefore be dismissed. Although Plaintiff attempts to provide clarification of his claims in his "Answer" to the instant Motion, said clarification essentially functions as an amendment to his pleadings and is impermissible. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1987) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")(quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ).

Moreover, under 42 Pa.C.S.A. § 5524(7), any claims for Misrepresentation/Fraud must be brought within two (2) years:

> In Pennsylvania, the statute of limitations for fraud claims is two years. 42 Pa. Cons. Stat. § 5524(7). "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises...." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (Pa. 1983). It is tolled, however, "until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir. 1997) (internal quotation marks and citations omitted). "[L]ack of knowledge, mistake or misunderstanding do not toll the statute of limitations, even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy[.]" *Pocono*, 468 A.2d at 471 (citation omitted).

*McArdle v. Verizon Communs. Inc.*, 567 F. App'x 116, 118 (3d Cir. 2014); *see also Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013) ("In Pennsylvania, a four-year limitations period governs a breach of contract claim ... and a two-year period governs tort claims of professional negligence, fraudulent misrepresentation, fraudulent concealment, and fraud[.]") (citing 42 Pa. Cons. Stat. § 5524).

**\*3** In this case, Defendant argues Count I of Plaintiff's Amended Complaint is barred by the statute of limitations. (Def.'s Mot. Dismiss 7.) Upon review of said claim, this Court finds that Plaintiff has generally alleged that a "promise" was made to him sometime prior to his enrollment in the Fall 2009. (Am. Compl. ¶¶ 3, 9.) He further alleges this "promise"

Case 3:20-cv-01446-RDM    Document 33-1    Filed 11/09/20    Page 56 of 72

Levin v. Strayer University, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 3585124

was broken "upon graduating" ... "at a later date" after his re-enrollment in Fall 2014. (Am. Compl. ¶¶ 8, 10.) Plaintiff commenced the instant action on February 28, 2018 (ECF No. 1). As such, it is impossible to determine whether or not this claim is timely, based upon these deficient allegations as contained within Plaintiff's Amended Complaint.

Inasmuch as: Plaintiff filed the instant Complaint in response to Defendant's first Motion to Dismiss and this is the first opportunity for the court to assess its sufficiency on the merits; and, this Court cannot definitively hold that further amendment would be futile, he shall be granted leave to do so.

### ii. The "Gist of the Action" Doctrine

Regardless of Plaintiff's ability to establish timeliness or allege facts to support the necessary elements, his Misrepresentation/Fraud claim is necessarily barred by the "gist of the action" doctrine *if* a contract actually existed. Plaintiff concedes this point by agreeing to dismiss the Misrepresentation/Fraud claim if the court finds that a contract existed. (Pl.'s Answer Mot. Dismiss p. 14.)

The gist of the action doctrine prohibits plaintiffs from "re-casting" breach of contract claims as tort claims in cases where they are essentially identical. *See e.g. Owen J. Roberts Sch. Dist. v. HTE, Inc.*, No. 02-7830, 2003 U.S. Dist. LEXIS 2997 at *16, 2003 WL 735098, at *5–6 (E.D. Pa. Feb. 28, 2003). However, because Plaintiff has failed to adequately plead a Misrepresentation/Fraud claim, this Court need not determine whether or not the same is barred by the gist of the action doctrine at this time.

### C. Count II: Contract

#### i. Pleading Requirements to Demonstrate Existence of a Contract

As discussed more fully above, in order to survive a Rule 12(b)(6) motion, "bald assertions" are not sufficient to sustain a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996) ). At the pleading stage, "[t]he burden is on the plaintiff to prove by a preponderance of the evidence the existence of the contract to which the defendant is a party." *Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185, 1187 (Pa. 1977) (quoting *Lemoyne Sleeper*

*Co. v. Bruce*, 54 Pa. D. & C.2d 537 (1972) ). In Pennsylvania, a breach of contract claim may be sustained if a plaintiff shows the following: "(1) the existence of a valid and binding contract to which the plaintiff and defendants were parties; (2) the contract's essential terms; (3) that plaintiff complied with the contract's terms; (4) that the defendant breached a duty imposed by the contract; and (5) damages resulting from the breach." *Nowosad v. Villanova Univ.*, No. 97-5881, 1999 U.S. Dist. LEXIS 7319 at *19-20, 1999 WL 322486, at *6 (E.D. Pa. May 19, 1999) (citing *Gundlach v. Reinstein*, 924 F.Supp. 684, 688 (E.D. Pa. 1996) ). "[A]n agreement is enforceable as a contract only if both parties have manifested an intention to be bound by its terms, if those terms are sufficiently definite to be enforced, and if there is consideration." *See e.g. Bennett v. Itochu Int'l, Inc.*, No. 09-CV-1819, 2012 WL 3627404, at *15, 2012 U.S. Dist. LEXIS 119791 at *45-46 (E.D. Pa. Aug. 23, 2012). With specific regard to oral contracts,

> Where a plaintiff seeks to recover on an oral agreement, it is particularly important that the pleading at least identify in as specific detail as possible the date of the agreement and the individuals involved. This information will enable a corporate defendant faced with a claim based on an alleged oral agreement to investigate the claim and, in particular, speak with those who have allegedly entered into the oral agreement at issue. Based on this investigation, the corporate defendant will be better positioned to respond to the allegations and assert defenses to the claim. This is a pleading requirement that cannot be avoided by merely asserting that the defendant already knows the material facts that have been omitted from the pleading.

**\*4** *Pratter v. Penn Treaty Am. Corp.*, 11 A.3d 550, 563-564 (Pa. Commw. 2010).

However, "[w]here the parties have adopted a writing as a complete and exclusive statement of the terms of the agreement, even consistent additional terms are superseded." *United States v. Teklu*, 513 F. App'x 228, 231 (3d Cir.

Levin v. Strayer University, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 3585124

2013)(quoting Restatement (Second) of Contracts § 213 cmt. c (1981) ). This would include those made via oral promises.

With respect to contract damages, they need not be exact; however, they must be proven to a "reasonable certainty." This standard "at a minimum embraces 'a rough calculation that is not too speculative, vague or contingent upon some unknown factor.' " See *Alpart v. General Land Partners, Inc.*, 574 F.Supp.2d 491, 504 (E.D. Pa. 2008) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226 (3d Cir. 2003) ). Nevertheless, a Defendant's "argument about the sufficiency of damages is more appropriate at the summary judgment phase of the litigation." *Lodato v. Silvestro*, No. 12-1130, 2013 WL 172203, at *5 n. 3, 2013 U.S. Dist. LEXIS 6174, at *14 n.3 (E.D. Pa. 2013). At the motion to dismiss stage, it is sufficient that a plaintiff "has stated a cognizable claim for resultant damages." *Id.* at *5, 2013 U.S. Dist. LEXIS 6174, at *13.

### ii. "Promise" To Assist in Finding Employment

In this case, Count II of Plaintiff's Complaint is entitled "Contract" and consists of an *ad damnum* clause, preceded by one paragraph: "All of the preceding Paragraphs are hereby incorporated by reference as though fully set forth a length herein." (Am. Compl. ¶ 32.) All of the incorporated paragraphs are contained within Count I of Plaintiff's Amended Complaint: Misrepresentation/Fraud (Am. Compl. ¶¶ 1-31). As discussed above, a plaintiff cannot simultaneously proceed on both a Misrepresentation/Fraud claim and Breach of Contract claim involving the same alleged conduct. Further, none of the preceding paragraphs in Plaintiff's Amended Complaint sufficiently allege the existence of a contract, let alone a breach thereof.

Plaintiff alleges in pertinent part that Defendant promised it "would assist him in finding employment after his graduation[,]" and that after graduating, he "was informed that Strayer University did not offer job placement services." (Am. Compl. ¶¶ 9-10.) Plaintiff further makes the blanket allegation that Defendant "promised enrolling students on a regular basis that it would assist them with job placement which they claimed was very successful even though it had no intention of assisting them." (Am. Compl. ¶ 11.) However, Plaintiff also concedes he does not know "the difference between 'job placement services' and 'career service resources[,]' " and that "Defendant does not guarantee it will successfully find employment for its graduates[.] (Am.

Compl. ¶¶ 12-14.) Moreover, Plaintiff is apparently seeking to pursue his "contract" claim solely on an alleged "promise" by an unidentified individual, at an unidentified time, in an unidentified place."

As Defendant correctly maintains, "the relationship between a private university and a student is contractual" and the contractual relationship is generally "comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Mekuns v. Capella Educ. Co.*, No. 15-1542, 2015 U.S. Dist. LEXIS 153636 at *8, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015)(quoting *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999) ). A student's claim for breach of contract against a university "must relate to a specific and identifiable promise that the school failed to honor." *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011).

**\*5** In this case, Plaintiff has omitted any reference to the University's written policies that govern the bases of his claims. However, this Court may look to same for purposes of deciding the instant Motion. *See Turner v. Leggett*, 421 F. App'x 129, 131 (3d Cir. 2011) (discussing means by which a court is permitted to decide a motion to dismiss, including review of " 'documents that form the basis of a claim.' ") (quoting *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) ). The written materials underlying Plaintiff's claims clearly delineate the career services offered by the University and would govern the nature of those services as they pertain to Plaintiff. *See Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999) (contractual relationship between a student and university is generally "comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution."). Plaintiff is apparently aware of these materials, as Paragraph 13 of his Amended Complaint recites and rewords a portion thereof. *Compare* Strayer University, https://strayer.smartcatalogiq.com/en/2018-2019/Student-Handbook/University-Services-and-Policies/Career-Services (last visited July 19, 2018) ("Although the intent is to actively engage students in the career development process, participation in career development activities and/ or completion of any Strayer University program ***does not guarantee a student will find employment after graduation***."), *with* Pl.'s Am. Compl. ¶ 13 ("Defendant ***does not guarantee it will successfully find employment for its graduates***[.]") (emphasis added).

Case 3:20-cv-01446-RDM   Document 33-1   Filed 11/09/20   Page 58 of 72

Levin v. Strayer University, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 3585124

The allegations Plaintiff provides in support of Count II of his Amended Complaint regarding the allegedly broken oral promise, are simply not sufficient to survive dismissal. However, Plaintiff shall be granted leave to amend this aspect of his contract claim.

### iii. Additional Courses

As with his "Contract" claim regarding job placement services, Plaintiff's assertion that he was required to "take courses that were not required by his original curriculum or by his new reconstituted curriculum" is insufficiently pleaded. (Am. Compl. ¶ 7.) Plaintiff fails to identify any "contract" (or part thereof) that pertains to curriculum requirements, an additional promise, or an agreement of any kind regarding Strayer's duty to refrain from changing the curriculum after Plaintiff left the school in 2013, and/or requiring enrollment in certain classes. In fact, written policies do exist regarding curriculum requirements upon readmission to the University. *See* Strayer University, https://strayer.smartcatalogiq.com/2015-2016/Catalog/Admission-to-the-University/Graduate-Admission/Readmission (last visited July 19, 2018). However, Plaintiff's Amended Complaint contains no reference to these policies, even though his claim is based on same.

Because Plaintiff has failed to adequately allege the existence of a contract or breach thereof with respect to this issue, he cannot sustain his claim. Accordingly, the same shall be dismissed. However, in the event Plaintiff determines amendment would not be futile in light of the applicable policies regarding readmission, he shall be given leave to amend.

### D. Count III: Unfair Trade Practices and Consumer Protection Law (UTPCPL)

The "general purpose" of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) "is to protect the public from fraud and unfair deceptive business practices." *See Duffy v. Lawyers Title Ins. Co.*, 972 F.Supp.2d 683, 688 (E.D. Pa. 2013)* (citing *Burke v. Yingling*, 446 Pa.Super. 16, 666 A.2d 288, 291 (Pa. Super. 1995)* ). The statute provides this protection to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" as the result of an unlawful act. *Geary v. Wells Fargo Bank*, No. 17-2468, 2017

U.S. Dist. LEXIS 119471 at *3-4, 2017 WL 3226001, at *2 (E.D. Pa. July 31, 2017)* (quoting Pa. Cons. Stat. 201-9.2(a) ). Under UTPCPL, a Plaintiff must show: "(1) deceptive conduct; (2) an ascertainable loss; (3) justifiable reliance on the defendant's wrongful conduct or misrepresentations; and (4) that such reliance caused an injury." *Pellegrino v. State Farm Fire and Cas. Co.*, No. 12-2065, 2013 U.S. Dist. LEXIS 105511 at *23-24, 2013 WL 3878591, at *9 (E.D. Pa. July 29, 2013)* (quoting *Caroselli v. Allstate Prop. & Cas. Ins. Co.*, No. 10-1671, 2010 LEXIS 83515 at *20-21, 2010 WL 3239356, at *7 (E.D. Pa. Aug. 16, 2010)* ).

### i. Sufficiency of the Pleadings

**\*6**  In support of his UTPCPL claim, Plaintiff simply: (1) incorporates all prior paragraphs of his Amended Complaint by reference; (2) provides the text of selected paragraphs of the UTPCPL statute; and, (3) alleges "[a]ll the violations of the UTPCPL by the Defendant were done intentionally and with malice." (Am. Compl. ¶ 35.)

Upon assessment of all of the allegations set forth in Plaintiff's Misrepresentation/Fraud and Contract Counts (as incorporated by reference in his UTPCPL Count), this Court finds Count III of Plaintiff's Amended Complaint to be similarly deficient. In particular, Plaintiff's Amended Complaint fails to sufficiently plead wrongful conduct or misrepresentations by Defendant and ascertainable loss as a result thereof. Again, Plaintiff concedes Defendant made "no guarantee" of employment upon graduation. (Am. Compl. ¶ 13.) Moreover, although Plaintiff alleges that he graduated later than he would otherwise have graduated because he had to take extra classes, he fails to acknowledge the readmission policies in effect at the time of his re-enrollment. Finally —and perhaps most importantly—Plaintiff's recitation of statutory language and conclusory statement that all of the alleged UTPCPL violations "were done intentionally and with malice[,]" amounts to nothing more than a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements [and does] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)* (citing *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)* ). A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged—something Plaintiff has failed to do here. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Accordingly, Defendant's Motion to Dismiss Count III

2018 WL 3585124

of Plaintiff's Amended Complaint shall be granted. If, upon review of this claim in conjunction with his Contract claim, Plaintiff is able to earnestly determine amendment would not be futile, he shall be given leave to do so.

### ii. Economic Loss Doctrine

The "economic loss doctrine" "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski, 286 F.3d 661, 671 (3d Cir. 2002)* (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)* ). The Third Circuit has held that when such claims essentially arise from a breach of contract, "the Pennsylvania Supreme Court would apply the economic loss doctrine to UTPCPL claims based on intentional torts like fraud." *See Berkery v. Verizon Communs. Inc., 658 F. App'x 172, 175 (3d Cir. 2016)* (discussing *Werwinski, 286 F.3d 661 at 679-81*).

In the event Plaintiff was ultimately able to plead a plausible contract claim, his UTPCPL claim would be barred because a double recovery is prohibited under the economic loss doctrine.

### V. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss shall be granted and Plaintiff shall be permitted leave to amend in accordance herewith.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2018 WL 3585124

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

408 Fed.Appx. 609
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also Third Circuit
LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.

Edward MURPHY; Sandra Murphy, Appellants

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, (Receiver for
Washington Mutual Bank); Wells Fargo.

No. 09–1843.
|
Submitted Under Third Circuit
LAR 34.1(a) Nov. 4, 2010.
|
Opinion Filed: Nov. 24, 2010.

**Synopsis**
**Background:** Borrowers brought action against lender's
assignee alleging multiple types of wrongdoing arising out
of origination and servicing of residential mortgage loan.
After amended complaint adding assignee's assignee was
filed, the United States District Court for the Eastern District
of Pennsylvania, J. Curtis Joyner, J., dismissed amended
complaint and denied borrowers' motion for reconsideration
and for leave to file amended complaint. Borrowers appealed.

**Holding:** The Court of Appeals, Rendell, Circuit Judge, held
that assignee was not subject to liability under Pennsylvania
Unfair Trade Practices and Consumer Protection Law
(UTPCPL) for alleged violations that occurred before
assignment.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (1)

**[1]**    **Antitrust and Trade Regulation** ⚖️ Persons
liable

Assignee holder of mortgage was not subject
to liability under Pennsylvania Unfair Trade
Practices and Consumer Protection Law
(UTPCPL) for alleged violations that occurred
before assignment. 73 P.S. § 211.

10 Cases that cite this headnote

**\*609**  Appeal from the United States District Court for the
Eastern District of Pennsylvania (D.C. Civil No. 2–07–cv–
04417), District Judge: Honorable J. Curtis Joyner.

**Attorneys and Law Firms**

Rebecca Steiger, Matthew B. Weisberg, Prochniak Weisberg,
for Appellants.

Henry F. Reichner, Reed Smith, Philadelphia, PA, for Federal
Deposit Insurance Corporation and Wells Fargo.

Before: SCIRICA, RENDELL and ROTH, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

**\*\*1**  Plaintiffs Edward and Sandra Murphy appeal the United
States District Court for the Eastern District of Pennsylvania's
grant of defendant Wells Fargo's Motion to Dismiss their
complaint and the District Court's denial of plaintiffs' Motion
for Partial Reconsideration and for Leave to File an Amended
Complaint. Because the District Court's disposition of both
motions was proper, we will affirm.

The District Court had diversity jurisdiction under 📑 28
U.S.C. § 1332 and federal question jurisdiction under **\*610**
28 U.S.C. § 1331. We exercise jurisdiction over the District
Court's final order under 28 U.S.C. § 1291.

Because we write only for the benefit of the parties, we
include only the essential facts. Plaintiffs initiated this

action solely against Washington Mutual Home Loans, Inc. ("WaMu") [1] alleging multiple types of wrongdoing arising out of the origination and servicing of a residential mortgage loan they entered into with non-party Gateway Funding Diversified Mortgage Services, L.P. ("Gateway Funding"). The mortgage loan was subsequently assigned to WaMu. WaMu commenced a foreclosure action in May, 2006 after plaintiffs defaulted on their mortgage payments. Plaintiffs allegedly sent a check to reinstate their mortgage on June 27, 2006, and WaMu thereafter dismissed the foreclosure action. Plaintiffs alleged that WaMu then sent them conflicting statements, each demanding a different amount of payment and stating a different due date for that payment.

Three months after filing a complaint against WaMu, plaintiffs filed an amended complaint against Wells Fargo Bank, N.A. ("Wells Fargo"), a later assignee of the mortgage loan. The amended complaint asserted sixteen causes of action against Wells Fargo on the basis of assignee liability. The Murphys alleged that their mortgage loan was assigned to Wells Fargo at some point after the events described above and that, consequently, Wells Fargo became liable as a matter of law for Gateway Funding and WaMu's wrongs. At no point did plaintiffs allege that Wells Fargo independently committed any misdeeds.

In granting Wells Fargo's Motion to Dismiss plaintiffs' complaint, the District Court explained that plaintiffs' mortgage loan was assigned to Wells Fargo *after* the events surrounding plaintiffs' allegations against WaMu occurred. Thus, the District Court concluded that plaintiffs had not alleged any facts that supported the sixteen causes of action they asserted against Wells Fargo. Following the District Court's dismissal of the Murphys' complaint, they filed a Motion for Partial Reconsideration and for Leave to File an Amended Complaint. In denying this motion, the District Court noted that plaintiffs had done nothing more than re-assert the same arguments the Court had already rejected and that the amendments plaintiffs sought would not give them valid claims on which relief could be granted.

We exercise plenary review over a District Court's grant of a 12(b)(6) Motion to Dismiss. *See* *McGovern v. City of Philadelphia,* 554 F.3d 114, 115 (3d Cir.2009). The District Court's judgment "is proper only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the

complaint." *Id.* We review a denial of a motion for leave to amend for abuse of discretion. Where amendment would be futile, meaning that the complaint, "as amended, would fail to state a claim upon which relief could be granted," the District Court does not abuse its discretion in denying leave to amend.

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). *See also* *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002).

**\*\*2** Only plaintiffs' claim against Wells Fargo under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 211, remains. [2] Plaintiffs make two arguments on **\*611** appeal. First, with regard to their UTPCPL claim, they argue that the District Court erred in dismissing their amended complaint for lack of specificity. Second, they assert that the District Court abused its discretion when it refused to grant their request to file an amended complaint based on its conclusion that amendment would be futile. They argue that amendment would not be futile because, pursuant to the Federal Trade Commission's Rule Concerning the Preservation of Consumers' Claims and Defenses (the "FTC Holder Rule"), assignee holders of mortgages are subject to the same liability as the lenders with whom their loans originated.

Plaintiffs' claims lack merit; the District Court did not err in dismissing their complaint and did not abuse it discretion in denying their request for leave to amend. The UTPCPL, the sole legal basis on which plaintiffs appeal, does not impose liability on assignees. *See* *Williams v. Nat'l Sch. of Health Tech., Inc.,* 836 F.Supp. 273, 283 (E.D.Pa.1993) (noting that the UTPCPL "does not impose liability on parties who have not themselves committed wrongdoing."); *Roche v. Sparkle City Realty,* No. 08–2518, 2009 WL 1674417, at \*4 (E.D.Pa. June 12, 2009) ("[N]umerous courts have found that loan assignees cannot be held liable under the UTPCPL without allegations that they specifically committed wrongdoing.").

Plaintiffs' reliance on the FTC Holder Rule is also misplaced. First, the Rule, which requires that certain language be included in "consumer credit contracts," does not apply to mortgage loans. 16 C.F.R. § 433.2 (2005); *In re Woodsbey,* 375 B.R. 145, 150 (Bankr.W.D.Pa.2007); *Johnson v. Long Beach Mortgage Trust, 2001–4,* 451 F.Supp.2d 16, 55 (D.D.C.2006). Second, even if notice had mistakenly

been included in the plaintiffs' mortgage note pursuant to the FTC Holder Rule, the Truth in Lending Act's ("TILA") assignee liability provisions would trump the Rule and preclude Wells Fargo from incurring liability for the wrongs of others. *Ramadan v. Chase Manhattan Corp.,* 229 F.3d 194, 200–03 (3d Cir.2000). Without the FTC Holder Rule, plaintiffs have no UTPCPL claim, and any amendment to their complaint would be futile because plaintiffs could never allege that their loan was not subject to TILA.

For the foregoing reasons, we will affirm the District Court's grant of defendant's Motion to Dismiss and denial of plaintiffs' Motion for Partial Reconsideration and for Leave to File an Amended Complaint.

**All Citations**

408 Fed.Appx. 609, 2010 WL 4780380

# Footnotes

1    Since September 25, 2008, WaMu has been in the receivership of the Federal Deposit Insurance Corporation ("FDIC"). The FDIC is the named defendant in this case.

2    The District Court granted plaintiffs' request to discontinue without prejudice their claims against WaMu/FDIC, so only plaintiffs' claims against Wells Fargo remain.

---

**End of Document**                                      © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Prukala v. Chase Bank, N.A.

United States District Court, M.D. Pennsylvania. |   September 4, 2020 |   Slip Copy |   2020 WL 5351042

**Document Details**

| | |
|---|---|
| alwd Citation: | Prukala v. Chase Bank, N.A., 3:19-CV-1791, 2020 WL 5351042 (M.D. Pa. Sept. 4, 2020) |
| All Citations: | Slip Copy, 2020 WL 5351042 |

**Search Details**

| | |
|---|---|
| Jurisdiction: | Pennsylvania |

**Delivery Details**

| | |
|---|---|
| Date: | November 9, 2020 at 8:53 AM |
| Delivered By: | Teri Townsend |
| Client ID: | 257825.000001 |

**Outline**

Attorneys and Law Firms (p.1)

**MEMORANDUM OPINION** (p.1)

All Citations (p.5)

2020 WL 5351042
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Christina PRUKALA, Plaintiff,
v.
CHASE BANK, N.A., Defendant.

3:19-CV-1791
|
Filed 09/04/2020

**Attorneys and Law Firms**

Joseph T. Sucec, Grantham, PA, for Plaintiff.

Jenny N. Perkins, Ballard Spahr, LLP, Philadelphia, PA, for
Defendant.

### MEMORANDUM OPINION

Robert D. Mariani, United States District Court Judge

### I. INTRODUCTION AND PROCEDURAL HISTORY

**\*1** On September 9, 2019, Plaintiff Christina Prukala filed a
putative class action complaint in the Court of Common Pleas
of Lackawanna County against Defendant JPMorgan Chase
Bank, N.A., improperly named as "Chase Bank", [hereinafter
"Chase"] for alleged violations of Pennsylvania's Fair Credit
Extension Uniformity Act ("FCEUA") and the federal Fair
Debt Collection Practices Act ("FDCPA"). (Doc. 1, Ex. 1).
On October 16, 2019, Defendant Chase properly removed the
action to this Court. (Doc. 1).

On October 21, 2019, Defendant filed a Motion to Dismiss
Plaintiff's complaint. (Doc. 4). On November 4, 2019,
Plaintiff amended her complaint eliminating the FDCPA
claims, but still alleging Defendant violated the FCEUA
when Defendant reported Plaintiff's consumer credit report as
"delinquent, with derogatory information therein." (Doc. 8,
at ¶¶ 1, 11). Plaintiff seeks relief under Pennsylvania's Unfair
Trade Practices and Consumer Protection Law ("UTPCPL").
(*Id.* at ¶ 39). Plaintiff seeks monetary damages, punitive
damages, and injunctive relief on behalf of herself and a
putative class. (*Id.* at 10-11).

On December 5, 2019, Defendant again filed a Motion
to Dismiss Plaintiff's Amended Complaint with prejudice,
which is now pending before the Court. (Doc. 9). The issues
have been fully briefed and Defendant's Motion is ripe for
disposition.

For the reasons set forth below, the Court will grant
Defendant's Motion to Dismiss with prejudice. (Doc. 9).

### II. FACTUAL ALLEGATIONS

Plaintiff's Amended Complaint (Doc. 8) alleges the following
facts which, for the purposes of resolving Defendant's Motion
to Dismiss, the Court takes as true:

Plaintiff Christina Prukala is a citizen and resident of
the Commonwealth of Pennsylvania. (Doc. 8, at ¶ 4).
Defendant Chase is a "corporate entity engaged in, among
other enterprises, collection of allegedly overdue credit
accounts." (*Id.* at ¶ 5a). Defendants John Does 1-10 are
unknown individuals or entities who "played a substantial
role in the commission of the acts." (*Id.* at ¶ 5b). Defendants
X, Y, and Z Corporations are unknown entities who also
"played a substantial role in the commission of the acts." (*Id.*
at ¶ 5c).

Plaintiff possesses consumer debts, used for "personal,
household or family purposes," that Defendant was seeking
to collect. (*Id.* at ¶ 10).

One of Plaintiff's consumer accounts was reported as
delinquent and derogatory information was placed on her
credit report by Defendant. (*Id.* ¶¶ 11, 14; Doc. 8-1, at 21–
22). When Plaintiff discovered the derogatory information on
her credit report, she "sent Defendant letters both disputing
the high balance of each account and requesting copies of the
original contracts." (*Id.* at ¶ 12).

Defendant updated the Credit Reporting Agencies ("CRAs")
on a regular basis, which is reflected on Plaintiff's
consumer credit report. (*Id.* at ¶¶ 15, 17). Defendant
"constructively, if not actively" updated the information on
Plaintiff's consumer report "without either reinvestigating
said derogatory information or notating on the report that the
account was disputed." (*Id.* at ¶ 19).

**\*2** Defendant had actual and/or constructive notice
that Plaintiff disputed the debts as Plaintiff sent letters

to Defendant indicating her dispute and requesting an accounting of the debts and the original contracts. (*Id.* at ¶ 18A; Doc. 8-1, at 23–25). Plaintiff never received a response from Defendant to her letters. (*Id.* at ¶ 18B).

The derogatory information on the consumer credit report "negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness." (*Id.* at ¶ 16).

As a result, Plaintiff suffered "repeated disruption of te [sic] pursuit of any business affairs affected by the false, unverified information on her credit report as well as the emotional distress suffered from being the target of Defendant's collection activity." (*Id.* at ¶ 43). Plaintiff's damages include "lost time in dealing with said violations, including but not limited to loss of credit opportunities and business standing in the community, and in seeking and contacting legal counsel for the purpose of exploring and commencing this litigation." (*Id.* at ¶ 34).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.' " *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.' " *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* at 786-787 (quoting *Iqbal*, 556 U.S. 679).

**\*3** However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### IV. ANALYSIS

Defendant Chase argues that Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. (Doc. 9). Defendant's argument under the UTPCPL is twofold: (1) Plaintiff has not pleaded facts that she suffered an ascertainable loss resulting from Defendant's fraudulent actions, and (2) Plaintiff has not pleaded facts

that demonstrate justifiable reliance on Defendant's actions or failure to act. (Doc. 10, at 6–7). The Court agrees.

Pennsylvania's FCEUA statute outlines actions taken by creditors which constitute an "unfair or deceptive debt collection act or practice." 73 Pa. Stat. Ann. § 2270.4(b). It further declares any violation of the FCEUA to also constitute a violation of Pennsylvania's UTPCPL. 73 Pa. Stat. Ann. § 2270.5(a). The UTPCPL provides a private right of action to any person who has suffered "any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]." 73 Pa. Stat. Ann. § 201-9.2.

The FCEUA does not provide a private cause of action for violations; instead, plaintiffs must use the UTPCPL's remedy provision to obtain relief. *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013); *see* 73 Pa. Stat. Ann. § 201-9.2. Consequently, to plead a cause of action under the FCEUA, plaintiffs must be able to state a claim under the UTPCPL. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015); *see also Baldwin v. Monterey Fin. Servs., Inc.*, No. 3:14-CV-2346, 2017 WL 4767696, at *6 (M.D. Pa. Oct. 20, 2017).

To state a claim under the UTPCPL, the plaintiff first must allege "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). Second, the plaintiff must show that "he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Hunt v. U.S. Tobacco Co.*, 583 F.3d 217, 224 (3d Cir. 2008)(quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).

To allege an ascertainable loss, the plaintiff "must be able to point to money or property that he would have had but for the defendant's fraudulent actions." *Benner*, 917 F. Supp. 2d at 359. Damages resulting from emotional distress are not cognizable under the UTPCPL. *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015). Likewise, the cost of retaining counsel does not qualify as an ascertainable loss. *Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 105 A.3d 1188, 1193 (Pa. 2014)(explaining that the UTPCPL separately provides for awards of costs and reasonable attorney's fees).

*4 Moreover, "damages cannot be speculative." *Jarzyna v. Home Properties, L.P.*, 185 F. Supp. 3d 612, 626 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019); *see also Grimaldi v. Bank of Am.*, No. 3:12-CV-2345, 2013 WL 1050549, at *5 (M.D. Pa. Mar. 14, 2013)(holding a hypothetical attempt to refinance a home is not an ascertainable loss). The test for speculative damages is not necessarily about "the difficulty in calculating the amount," but instead with "whether there are identifiable damages." *Kaymark*, 783 F.3d at 182 (quoting *Pashak v. Barish*, 450 A.2d 67, 69 (Pa. 1982)).

Here, Plaintiff alleged that she has suffered "repeated disruption of any business affairs" and "emotional distress." (Doc. 8, at ¶ 43). Plaintiff failed to provide any facts regarding what the business affairs are, in what ways they were disrupted, or what specifically was lost because of the disruption. (*See generally*, Doc. 8). Without alleging any facts that she lost money or property that she would have had but for Defendant's actions, Plaintiff's damages are speculative and unascertainable.

Furthermore, Plaintiff's "emotional distress" (*Id.* at ¶ 43) is not cognizable under the UTPCPL and is, therefore, not an ascertainable loss. Additionally, Plaintiff's damages connected to retaining legal counsel (*Id.* at 10–11) are not an ascertainable loss under the statute.

Plaintiff has not met her burden to prove that she has lost any money or property that she would have had but for Defendant's actions. Plaintiff's Amended Complaint does not allege an ascertainable loss as required for a UTPCPL or FCEUA claim.

In addition to alleging an ascertainable loss, the Pennsylvania Supreme Court "has categorically and repeatedly stated that, due to the causation requirement in the Consumer Protection Law's standing provision, 73 Pa. Cons.Stat. § 201-9.2(a) (permitting suit by private plaintiffs who suffer loss "as a result of" the defendant's deception), a private plaintiff pursuing a claim under the statute must prove justifiable reliance." *Hunt*, 538 F.3d at 221.

The Pennsylvania Supreme Court has held that the UTPCPL is to be "liberally construed to effectuate its objective of protecting the consumers." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007). However, the Pennsylvania Supreme Court has also held, "Nothing in the legislative history suggests that the legislature ever intended statutory

language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *Weinberg, 777 A.2d at 446*. Therefore, the plaintiff's justifiable reliance on the defendant's fraudulent conduct must have caused the harms suffered by the plaintiff. *See Hunt, 538 F.3d at 224–225; Walkup, 147 F. Supp. 3d at 358.*

It is the plaintiff's burden to prove justifiable reliance in the complaint. *Weinberg, 777 A.2d at 446; see also Toy v. Metro. Life Ins. Co., 928 A.2d 186, 202 (Pa. 2007)*("... [A] plaintiff alleging violations of the [UTPCPL] must prove justifiable reliance."); *Hunt, 538 F.3d at 227* (rejecting a presumption of reliance).

Viewing all facts in the light most favorable to the Plaintiff and drawing all reasonable inferences in Plaintiff's favor, there is no allegation of causation or justifiable reliance in the Amended Complaint. (*See generally*, Doc. 8). Even if the disrupted pursuit of business affairs was an ascertainable loss (*Id.* at ¶ 43), Plaintiff does not allege how the Defendant's actions caused such a disruption. Plaintiff pleads that Defendant caused derogatory information to be placed on her consumer credit report despite sending Defendant a dispute letter. (*Id.* at ¶¶ 14, 18). However, she does not explain what the derogatory information is or how that derogatory information impacted her business pursuits. Nor does Plaintiff allege reliance, justifiable or not, on any actions taken or statements made by the Defendant.

**\*5** Plaintiff's Amended Complaint does not allege causation or justifiable reliance as is required by the UTPCPL and FCEUA; and therefore, fails to state a claim upon which relief may be granted.

A district court may dismiss a complaint without leave to amend "on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).* Furthermore, "it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir. 2007); see also Burch v. Milberg Factors, Inc., 662 F.3d 212, 230 (3d Cir. 2011)*("A district court may enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint.").

A motion to dismiss with prejudice is appropriate in cases where the plaintiff has already had the opportunity to amend her complaint, but was still unable to plead facts sufficient to survive a Rule 12(b)(6) motion. *Ghaffari v. Wells Fargo Bank N.A., 621 F. App'x 121, 125 (3d Cir. 2015)*("[Plaintiff] had already been given an opportunity to amend his complaint after Wells Fargo filed its motion to dismiss his original complaint."); *see also Fletcher-Harlee Corp., 482 F.3d at 253* ("Here, Fletcher-Harlee was not caught unaware by the Court's entry of judgment, as it had notice of Pote's motion and every opportunity to amend its complaint beforehand."); *Silver v. Pep Boys-Manny, Moe & Jack of Del., Inc., No. CV1700018FLWLHG, 2018 WL 1535285, at \*8 n.3 (D.N.J. Mar. 29, 2018)* ("Plaintiff filed the Second Amended Complaint ... with full knowledge of the arguments in Defendant's original motion, and, yet, has failed to address them. Plaintiff's demonstrated inability to allege the most basic facts, which should be within her knowledge, in support of her claim ... makes dismissal with prejudice the appropriate outcome here.").

Plaintiff does not allege facts sufficient to state a claim upon which relief can be granted in her Amended Complaint, nor does she request leave to amend the complaint. (*See generally*, Doc. 8). The Court is not required to grant leave to amend where, as here, the plaintiff already has had an opportunity to amend her complaint. Defendant Chase filed a Motion to Dismiss Plaintiff's original Complaint on October 21, 2019. (Doc. 4). Defendant's original Motion not only raised the defects in Plaintiff's FDCPA claims (*Id.* at 7–11), but also raised the same defects that are present in Plaintiff's FCEUA and UTPCPL allegations. (*Id.* at 11–15). In response, Plaintiff saw fit not to amend her complaint at all, other than abandoning her FDCPA claims. (*Compare* Doc. 1-2, Ex. 1 *with* Doc. 8). Defendant Chase therefore raised the same two defects of the UTPCPL claim once again in its Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 10, at 6–10). Plaintiff opposed the Motion but neither addressed these issues nor sought leave to amend the Amended Complaint. (Doc. 11).

The Court deems Plaintiff had the opportunity to amend her Complaint and cure its deficiencies but did not do so. No further leave will be granted.

**\*6** Without alleging justifiable reliance on the Defendant's prohibited statements or actions and without alleging an ascertainable loss as a result of that reliance, Plaintiff's complaint does not state a claim upon which relief can be

granted under the UTPCPL and the FCEUA. Plaintiff was on notice of these defects after Defendant's initial Motion to Dismiss, but saw fit not to address them. The complaint must be dismissed without leave to amend.

### V. CONCLUSION

Therefore, for the reasons set forth in this Memorandum Opinion, the Court will grant Defendant's Motion to Dismiss with prejudice (Doc. 9). A separate Order follows.

**All Citations**

Slip Copy, 2020 WL 5351042

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

614 Fed.Appx. 80
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also U.S.Ct. of
Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals,
Third Circuit.

James E. SCHWARTZ, Appellant

v.

ONEWEST BANK, FSB.

No. 13–4680.
|
Submitted Under Third Circuit
LAR 34.1(a) June 4, 2015.
|
Filed: June 5, 2015.

**Synopsis**

**Background:** Mortgagor, who owned two parcels of land,
brought action against mortgage assignee, asserting claims
under state law for quiet title, slander of title, violation of
the Fair Credit Extension Uniformity Act (FCEUA), violation
of the Unfair Trade Practices and Consumer Protection Law
(UTPCPL), abuse of process, and intentional interference
with existing and prospective contractual relations, arising
from assignee's attempts to foreclose on parcel of land that
was not subject to the mortgage. The United States District
Court for the Eastern District of Pennsylvania, Nitza I.
Quinones Alejandro, J., 2013 WL 6037078, granted summary
judgment in mortgagor's favor on quiet title claim and
dismissed remaining claims for failure to state a claim.
Mortgagor appealed.

**Holdings:** The Court of Appeals, Shwartz, Circuit Judge, held
that:

[1] assignee's allegedly improper communications were
protected by absolute judicial privilege, and

[2] mortgagor failed to state abuse of process claim.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (2)

[1]  **Antitrust and Trade Regulation**  ⚷ Privilege
      or immunity

      **Finance, Banking, and Credit**  ⚷ Defenses
      and safe harbors in general

      **Libel and Slander**  ⚷ Defenses

      **Torts**  ⚷ Contracts in general

      Allegedly improper communications made by
      mortgage assignee or its attorneys with respect to
      parcel of land that assignee claimed was subject
      to mortgage were made in connection with
      foreclosure action, and thus were protected by
      absolute judicial privilege under Pennsylvania
      law, such that they could not be used as a
      basis for mortgagor's claims alleging slander
      of title, violation of the Fair Credit Extension
      Uniformity Act (FCEUA), violation of the
      Unfair Trade Practices and Consumer Protection
      Law (UTPCPL), and intentional interference
      with existing and prospective contractual
      relations. 73 P.S. §§ 201–1 et seq., 2270.1.

      2 Cases that cite this headnote

[2]  **Process**  ⚷ Pleading

      Mortgagor's allegation that mortgage assignee
      commenced foreclosure action for the improper
      purpose of attempting to unlawfully gain
      ownership of parcel of land that was not subject
      to mortgage was insufficient to state a claim
      for abuse of process under Pennsylvania law,
      absent allegations that the process was pursued
      to achieve an unauthorized purpose.

      1 Cases that cite this headnote

**\*81**  Appeal from the United States District Court for the
Eastern District of Pennsylvania, (D.C. No. 2–13–cv–00113),
District Judge: Hon. Nitza I. Quinones Alejandro.

**Attorneys and Law Firms**

H. Peter Nelson, Esq., Grim, Biehn & Thatcher, Perkasie, PA, for Appellant.

Martin C. Bryce, Jr., Esq., Daniel McKenna, Esq., Ballard Spahr, Brett L. Messinger, Esq., Brian J. Slipakoff, Esq., Duane Morris, Philadelphia, PA, for OneWest Bank, FSB.

Before: FISHER, JORDAN, and SHWARTZ, Circuit Judges.

OPINION *

SHWARTZ, Circuit Judge.

James Schwartz brought Pennsylvania state law claims against OneWest Bank, FSB ("OneWest"), based on statements OneWest allegedly made in connection with foreclosure proceedings on Schwartz's property. The District Court dismissed Schwartz's claims, holding that OneWest's statements were protected by Pennsylvania's absolute judicial privilege and that Schwartz's abuse of process claim was inadequately pled. We will affirm.

I

We draw the following facts from Schwartz's First Amended Complaint ("FAC"), accepting them as true in accordance with our standard of review. Schwartz owns two parcels of land in Tinicum Township, Pennsylvania: approximately thirty acres on the north side of Hollow Horn Road (the "North 30 Parcel") and approximately twenty acres on the south side of Hollow Horn Road (the "South 20 Parcel"). Schwartz executed a note and mortgage on the North 30 Parcel in 2007, and OneWest acquired the mortgage by assignment in 2010 (the "Assignment"). OneWest filed a foreclosure action against Schwartz in Pennsylvania state court, asserting that the mortgage "covers both the South 20 Parcel and the North 30 Parcel," and OneWest's counsel "continu[ed] to assert this position" in communications to Schwartz's counsel. **\*82** App. 31. OneWest sought a default judgment against Schwartz and a "Sheriff Sale" of Schwartz's properties in connection with the foreclosure action, "not recognizing that only the North 30 Parcel is subject to the" mortgage. App. 30. The FAC alleges that OneWest's actions thwarted Schwartz's attempted sale of the parcels to Schmidt

Properties, LLC, and of development rights on the properties to Tinicum Township.

Based on these facts, Schwartz asserted the following causes of action: quiet title and a "declaratory judgment," seeking a declaration "that the only property subject to the [mortgage] is the North 30 Parcel" (Counts I & II), App. 31–32; slander of title (Count III); violation of the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1 et seq. (Count IV); violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201–1 et seq. (Count V); abuse of process (Count VI); and intentional interference with existing and prospective contractual relations (Counts VII & VIII).

OneWest moved to dismiss the FAC in its entirety for failure to state a claim, and Schwartz cross-moved for summary judgment as to Counts I and II. The District Court entered judgment in favor of Schwartz on Counts I and II, concluding that, as OneWest conceded, the mortgage applied only to the North 30 Parcel, and granted OneWest's motion to dismiss Counts III through VIII. The District Court reasoned with respect to all but the abuse of process claim that Schwartz's causes of action depended on "alleged misrepresentations made during the course of the foreclosure action," including the filing of the foreclosure action itself and the communications between OneWest's counsel and Schwartz's counsel, and that these alleged misrepresentations were not actionable under Pennsylvania's absolute judicial privilege. App. 19. With respect to the abuse of process claim, the District Court reasoned that the FAC failed to state a claim under Pennsylvania law because it merely alleged that OneWest commenced the foreclosure action for an improper purpose, and commencement of an action alone does not provide a basis for an abuse of process claim. Schwartz appeals. [1]

II

A

[1] We first address the District Court's dismissal of all claims but the abuse of process claim on the ground that they depended on communications protected by Pennsylvania's absolute judicial privilege. "The judicial privilege ... extends to 'communications [ (1) ] which are issued in the regular course of judicial proceedings and [ (2) ] which are pertinent

and material to the redress or relief sought.' " *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 311 (3d Cir.2003) (quoting *Post v. Mendel,* 510 Pa. 213, 507 A.2d 351, 355 (1986)). This privilege sweeps broadly to protect "[a]ll communications pertinent to any stage of a judicial proceeding," *Binder v. Triangle Publ'ns, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (1971), including "not only ... communications made in open court, but also ... pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest," *Richmond v. McHale,* **\*83** 35 A.3d 779, 785 (Pa.Super.Ct.2012) (internal quotation marks and emphasis omitted). Although the judicial privilege most often bars defamation suits, Pennsylvania courts have applied the privilege broadly to confer "immunity from civil liability in the context of judicial proceedings." *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950, 956–57 (1988).

Here, all of Schwartz's claims arise from the foreclosure action and communications that occurred in connection with that action, namely the foreclosure complaint, the related sale notices posted as a result of the state court judgment in the foreclosure action, *see* Pa. R. Civ. P. 3129.1, and communications between OneWest's and Schwartz's attorneys that directly pertained to the foreclosure action, *see* App. 29–30, 33. [2] These communications reflected counsel's efforts to share their clients' litigation positions regarding OneWest's assertion that the mortgage covered both parcels, and thus were "pertinent and material to the redress or relief sought" in the foreclosure case. *Post,* 507 A.2d at 355; *see, e.g., Richmond,* 35 A.3d at 784, 786 (holding statement "made by one attorney to another during a discussion regarding discovery in a pending case" was privileged, as it "was made in connection with [the attorney's] representation of his client in a judicial proceeding"). Thus, we will affirm the District Court's dismissal of all claims, other than the abuse of process claim, on the ground that the allegedly improper communications that form the basis for these claims are protected by the judicial privilege. [3]

**B**

**[2]** We next address the District Court's dismissal of the abuse of process claim. Under Pennsylvania law, "abuse of process is the improper use of process after it has been issued." *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1023 (1987) (internal quotation marks omitted). Thus, merely "initiati [ng] ... litigation for a wrongful purpose" alone is not actionable. *Rosen v. Tesoro Petroleum Corp.,* 399 Pa.Super. 226, 582 A.2d 27, 33 (1990) (internal quotation marks omitted) (concluding plaintiffs failed to state a claim for abuse of process where they "merely complain that 'defendant issued and served process on the plaintiffs' for various improper and ulterior purposes" but did not include "any allegation of a coercive use of the process").

Here, Schwartz's abuse of process claim relies entirely on OneWest's filing of the foreclosure action itself, asserting that it was filed for the improper purpose of "attempt[ing] to unlawfully gain ownership of [the] South 20 Parcel." App. 39. An abuse of process claim bars the use of process invoked "to coerce a desired result that is not the legitimate object of the process." *McGee,* 535 A.2d at 1026. The **\*84** purpose of the process was to foreclose on the property, an authorized goal of the procedure. Schwartz has not alleged any act "not authorized by" or that perverted the process. *Rosen,* 582 A.2d at 32 (internal quotation marks omitted); *see also Gen. Refractories,* 337 F.3d at 304 ("A perversion of legal process occurs when a party uses the process primarily to accomplish a purpose for which the process was not designed." (internal quotation marks omitted)). Thus, even if the foreclosure action was based on incorrect facts, the allegations in the FAC do not demonstrate that the process was pursued to achieve an unauthorized purpose. *See Gen. Refractories,* 337 F.3d at 304. Thus, Schwartz fails to state a claim for abuse of process.

**C**

Finally, we address Schwartz's argument that the District Court abused its discretion by failing to offer him leave to amend the FAC, despite the fact that, as Schwartz concedes, he did not request leave to amend before the District Court. In this non-civil rights case, the District Court is not required to sua sponte offer an amendment. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 252–53 (3d Cir.2007). Thus, Schwartz's claim that the District Court erred by not allowing him to amend his complaint fails.

III

For the foregoing reasons, we will affirm the judgment of the District Court.

**All Citations**

614 Fed.Appx. 80

## Footnotes

\*    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1    The District Court had jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of OneWest's motion to dismiss, accepting the facts alleged in the FAC as true. *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.,* 694 F.3d 340, 350 (3d Cir.2012).

2    In his brief, Schwartz also contends that statements made in the Assignment, which are unconnected to any judicial proceeding, are not privileged. Although the Assignment is attached to the FAC, the FAC includes no allegations based upon it and mentions it only once in passing to explain why OneWest may be liable for claims associated with the mortgage. Thus, the District Court did not err by declining to consider the Assignment as a basis for liability. *Cf. Frederico v. Home Depot,* 507 F.3d 188, 201 (3d Cir.2007) (declining to consider factual allegations in plaintiff's briefs that provided more specificity than her complaint, as "we do not consider after-the-fact allegations in determining the sufficiency of ... complaint[s]").

3    We need not decide whether the judicial privilege applies to the tort of abuse of process based upon these communications, *see Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 312 (3d Cir.2003), as we will affirm with respect to that claim on a different basis, as discussed in II.B. *infra.*