IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHELSEY GOSSE, CHRISTOPHER DETTORE, AND LORI A. DETTORE, *on their own behalfs and on behalf of other similarly situated persons*,<br><br>Plaintiff,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC.; U.S. BANK, N.A.; RATCHFORD LAW GROUP, P.C.; PORTNOY SCHNECK, L.L.C.; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4; GSS DATA SERVICES LLC<br><br>Defendants. | Case No: 3:20-cv-01446-RDM-MCC<br><br><br><br>(JURY DEMAND) |

## FIRST AMENDED COMPLAINT[1]

Plaintiffs Chelsey Gosse, Christopher Dettore, and Lori A. Dettore (collectively "Plaintiffs") on their own behalf and on behalf of similarly situated persons, brings this action by their undersigned counsel and says in support:

1.

### I.   INTRODUCTION

The Defendants have worked together and collectively orchestrated to collect and attempt to collect debts through unfair and/or deceptive methods of collection. The issue has already been litigated and resolved with regard to Plaintiff Chelsey Gosse against the Defendants by a court of competent jurisdiction in a decision that estops the Defendants from contesting their actions and liability here.

---

[1] Pursuant to Rule 15 attached as Exhibit C is a comparison copy of the changes made herein from the original complaint.

This action concerns the unlawful actions including the debt collection practices of Defendants National Collegiate Student Loan Trust 2007-3 and National Collegiate Student Loan Trust 2007-4 ("Trusts" or "NCSLT Trusts") through Transworld Systems, Inc. ("Transworld") and debt collection law firms, directed and controlled as part of Transworld's "Agency and Attorney Network," RATCHFORD LAW GROUP, P.C. ("RLG") and PORTNOY SCHNECK, L.L.C ("PS"). all on behalf of US Bank, National Association ("US Bank") (collectively "Defendants"). Specifically, the Defendants knew but recklessly disregarded:

     a.  The Defendants do not have the right to collect any sums from the Plaintiffs and the Class members because the accounts they sought to collect on do not have the documentation necessary to prove the NCSLT Trusts' ownership of the loans.

     b.  The Defendants do not have the right to flood the courts with consumer debt collection actions, under the color of law, based upon records they know are unreliable and are otherwise infected with inaccurate information and incomplete information required for debt collectors to pursue collection by litigation.

     c.  Notwithstanding this knowledge, as part of their pattern and practice related to their unfair, deceptive, or otherwise unconscionable debt collection practices, Defendants act through their affiliates and authorized agents to collect and attempt to collect on the hundreds and thousands of purported consumer debts they acquire for pennies on the dollar of what they claim is due.

3.

4.    Here, the debts the Defendants are attempting to collect upon are (i) non-governmental loans and (ii) that originated for student borrowers with co-signers.

As a direct and proximate result of the Defendants' acts and omissions, the Plaintiffs and Class members have sustained damages and losses in the form of (i) incurred costs to defend the Defendants' improperly pursued debt collection actions, (ii) payments made to the Defendants which were not lawfully owed, and (iii) stress, worry, frustration, and anxiety related to the Defendants' debt collection activities. Plaintiffs and the Class members are also entitled to statutory damages.

## II.     JURISDICTION AND VENUE

This action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act, PA ST 73 P.S. § 2270.1 ("FCEUA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. PA ST 73 P.S. § 201-1 ("UTPCPL").

Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1334(a), 1337. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as each defendant conducts business in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District.

## III.     PARTIES

8.     Plaintiff Chelsey Gosse is a citizen of Pennsylvania state and is listed as the borrower on a certain consumer loan at issue in this case.

9.     Plaintiffs Christopher Dettore, and Lori A. Dettore are also citizens of Pennsylvania state and are listed as the borrowers on a certain consumer loan at issue in this case.

10.     Defendant Transworld Systems, Inc. ("Transworld") is a debt collector which acts on behalf of US Bank for the NCSLT Trust and is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts allegedly owed to others. Transworld is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Penn., 19044. Transworld does business in Pennsylvania. Its registered agent in Pennsylvania is CT Corporation System. In addition:

  a.  Transworld is a debt collector as defined in the FDCPA. It acquired the alleged consumer loan accounts of the Plaintiffs and Class members at a time when it knew Plaintiffs' and Class members' debts were in default on or about November 1, 2014. Among the debts Transworld collects are "private student loans" allegedly owed to the NCSLT Trusts.

b. Transworld is managed by a Board of Directors.

c. To carry out part of its consumer collections business, it also operates and manages an Attorney Network business unit, which includes Defendants PS and RLG, that file debt collection lawsuits in Pennsylvania and nationwide to collect on behalf of the NCSLT Trusts.

d. These "Agency and Attorney Networks" were described on TSI's website[2] as follows:

> Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading edge technology and the expertise needed to achieve results.
>
> We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. TSI is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. TSI has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

11. Defendant RATCHFORD LAW GROUP, P.C. ("RLG") is a debt collection law firm incorporated in Pennsylvania. RLG is a professional corporation doing business under the laws of Pennsylvania. RLG conducts business out of an office in Scranton Pennsylvania.

12. Defendant PORTNOY SCHNECK, L.L.C., ("PS") is a debt collection law firm incorporated in Pennsylvania. PS is a professional corporation doing business under the laws of

---

[2] https://web.archive.org/web/20150511054427/https://www.tsico.com/Services/Agency_Attorney_Network.html

Pennsylvania. RLG conducts business out of an office located at 3705 Quakerbridge Road, Suite 116, Hamilton, NJ 08619

RLG and PS seeks to collect defaulted consumer debts on behalf of the NCSLT Trusts through litigation and the mails. In addition:

13.

a.  RLG and PS each are debt collectors as defined in the FDCPA. Each regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another including the alleged loan accounts of the Plaintiffs and putative class members.

b.  To carry-out part of its consumer collections business, PS and RLG also operates as part of Transworld's Attorney Network business unit and files debt collection lawsuits in Pennsylvania to collect on behalf of the Trusts.

c.  RLG and PS were each fully aware of, countenanced, permitted, and encouraged the conduct of the other Defendants.

d.  RLG and PS agree to terms of an agreement with Transworld that gives Transworld the exclusive right to direct and control their actions.

14.

Defendant National Collegiate Student Loan Trust 2007-3 ("NCSLT 2007-3 Trust") is a Delaware statutory trust, formed and existing pursuant to the laws of the state of Delaware for the purpose of acquiring purported consumer debts.

15.

Defendant National Collegiate Student Loan Trust 2007-4 ("NCSLT 2007-4 Trust") is a Delaware statutory trust, formed and existing pursuant to the laws of the state of Delaware for the purpose of acquiring purported consumer debts.

17.

The NCSLT 2007-3 Trust and NCSLT 2007-3 Trust are among fifteen (15) NCSLT trust entities.

Defendant U.S. Bank, NA is a National Banking Association which does business in Lackawanna County, Pennsylvania and:

a.  Serves as the "indenture trustee" for the NCSLT Trust. U.S. Bank's role in the Trust is not in pursuit of its consumer banking activities.

b. Became "Special Servicer" to the NCSLT Trusts in 2012.U.S. Bank, rather than perform as Special Servicer, engaged and delegated performance of its responsibilities, negligently, to Turnstile Capital Management, LLC ("Turnstile"). US Bank had the non-delegable duty to properly supervise and control the activities of Transworld and its Attorney Network, and for breach of that duty is vicariously liable for the torts and other wrongful conduct committed against Plaintiff and others in Washington by Transworld and/or its Attorney Network.

18. Defendant GSS DATA SERVICES LLC ("GSS") is the Administrator of the Trusts, and Wilmington Trust Company is the Owner Trustee of the Trusts and is responsible for managing their affairs at the direction of the NCSLT Trusts. GSS is a professional corporation doing business under the laws of Delaware. GSS conducts business out of a principal office in California.

19. Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trust Defendants and other NCSLT Trusts, by way of a Verified Amended Complaint filed in Delaware Chancery Court against Transworld and two codefendants (*The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank National Association, GSS Data Services Inc., Turnstile Capital Management, LLC and Transworld Systems, Inc.*; Chancery Court of Delaware, Cause #2018-0167-JRS) ("Verified Amended Complaint"),"[3] (a copy of which is Exhibit A, hereto), against U S. Bank, Turnstile, and GSS Data Services, Inc., made, among others, the following allegations which, on information and belief, after investigation, Plaintiff asserts are accurate, and on information and belief reallege:

a. ¶45 "Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to

---

[3] As of 2020, this suit has been consolidated with three others as *In re National Collegiate Student Loan Trusts Litigation*, C.A. No. 12111-VCS (Del. Ch. Jan. 21, 2020).

perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trust, and they do not follow any directions or instructions issued by the Trust. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits."

b. ¶46. "To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . .'"

c. ¶47. "U.S. Bank's duties further included monitoring the performance of Turnstile and replacing it if it was deficient or negligent in performing its duties. As set forth herein, Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor Turnstile's performance and failed to replace Turnstile as Subservicer."

20.      The remainder of the allegations as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank was in a position to prevent and avoid the unfair and deceptive acts and practices performed by Transworld and the attorneys from Transworld's Attorney Network acting in Pennsylvania and elsewhere; that U.S. Bank knew of and was fully informed about said unfair and deceptive acts and practices being performed in Pennsylvania and elsewhere; that U.S. Bank had a duty to prevent and avoid such unfair and deceptive acts and practices; and that U.S. Bank negligently and/or grossly negligently and/or intentionally failed to prevent such unfair and deceptive acts and practices in Pennsylvania and elsewhere, and in fact aided and abetted the commission of such unfair and deceptive acts and practices in Pennsylvania

and elsewhere by Transworld and the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Pennsylvania and elsewhere.

The doctrine of *respondeat superior* and vicarious liability applies to U.S. Bank, and renders it responsible for the wrongful conduct of Transworld in Pennsylvania and elsewhere as herein alleged and for the wrongful actions of the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Pennsylvania and elsewhere.

21.

Paragraphs 71 through 79 of the said Verified Amended Complaint establish that U.S. Bank and Transworld were fully aware that key portions of instruments which allegedly transferred the Discharged Loans or servicing rights thereto, including Schedule 1, Schedule 2, or Schedule 3 (collectively the "Loan Schedules") to those instruments, do not exist. Despite that knowledge, Transworld, with the knowledge and consent of U.S. Bank, has failed to disclose these material facts and continued in many cases, in Pennsylvania and elsewhere, to file affidavits and/or declarations under oath which falsely, recklessly, and knowingly testify that such schedules do exist, and that the affiant or declarant has personal knowledge of their existence (when he/she does not) and to mislead as to the true nature of the loans.

22.

23.

Paragraphs 80 through 85 of said Verified Amended Complaint set forth examples of case authority and rulings which establish that U.S. Bank, and Transworld, knew that the declarations and affidavits, submitted to support claims made in the name of NCSLT Trusts, concerning loan documentation were false.

24.

In fact, Transworld has not only failed to disclose material facts but has created false documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and Transworld, through its employees and through its Attorney Network, falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine loan documents and that the attorney, affiant or declarant had personal knowledge of their authenticity.

The foregoing omissions and statements made in, or summarized from, the said Verified Amended Complaint constitute admissible evidence under Federal Rules of Evidence Rule 801(d)(2).

25.      U.S. Bank has been fully aware of the Transworld Stipulation and Consent Order Issued by the Consumer Financial Protection Bureau ("CFPB") on September 18, 2017 and available publicly at https://www.consumerfinance.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/transworld-systems-inc/, and fully aware of the unfair and deceptive acts and practices, including violations of the FCEUA and UTPCPL that Transworld and U.S. Bank permitted, consented to, and aided and abetted those unfair or deceptive acts and practices.

26.      U.S. Bank was, and is, bound by the Transworld Consent Order issued by the CFPB. That order imposed both affirmative and prohibitory duties upon U.S. Bank. U.S. Bank has failed and/or refused to act in accordance with its duties under said Transworld Consent Order. The failure of U.S. Bank to act in accordance with its duties under the Transworld Consent Order to the detriment of the Plaintiff and putative class members, and to ensure and enforce Transworld's compliance with that Consent Order, establishes that US Bank's consent to, and aiding and abetting in the commission of, unfair and deceptive acts and practices by Transworld in violation of the FCEUA and UTPCPL was willful and knowing.

27.      The actions, omissions, and non-actions of US Bank in consenting to, and aiding and abetting, the unfair and deceptive acts and practices of Transworld in violation of the FCEUA and UTPCPL, constitute unfair practices in violation of the PUTP, when committed by a national banking association in, or related to, its status as a trustee for the Trusts.

28.      At all times relevant to this Complaint, Transworld has acted as the debt collector on behalf of the NCSLT Trusts and the NCSLT Trusts expressly authorized Transworld to carry out all work that it has done on their behalf.

29.      The Trusts are each a person subject to the FCEUA and UTPCPL.

30.      The Trusts are not entitled to benefit from its unfair or deceptive practices.

U.S. Bank, TSI, RLG and PS have pursued collections of debts that are not legally enforceable through debt collection correspondence and litigation (under the color of law by flooding the courts with so many cases that it anticipates the efforts will overwhelm any efforts to discovery is unlawful and deceptive activities).

This Court has jurisdiction over Transworld, RLG, PS, U.S. Bank and the NCSLT Trusts because they do business in the Commonwealth of Pennsylvania by collecting or attempting to collect debts from Pennsylvania residents who they allege owe debts to the NCSLT Trusts. Therefore, Defendants have obtained the benefits of the laws of Pennsylvania (without the right to do so), and Defendants are subject to the jurisdiction of this Court.

## IV.   FACTUAL BACKGROUND

### A.   NCSLT Trusts and Transworld Background

34. Based on publicly available documents and information and belief, the Trusts are investment vehicles that engaged in the practice of allegedly buying and selling large numbers of purported education-related consumer loans and collecting payments from the borrowers for the benefit of investors. The NCSLT Trusts have been subject to significant litigation, including some discussed *infra*, and are aware that the assets (i.e. the purported student loans) acquired by them subject to this action are unenforceable since they otherwise cannot enforce them since they lack trustworthy information to enforce any alleged debt and some of the alleged debts are discharged. What was not publicly available, and only disclosed shortly before the filing of the original Complaint in this action was that the loans are unenforceable by the Trusts and they do not qualify to be excepted under any exception to bankruptcy discharges.

As the NCSLT Trusts have no employees, any actions performed nominally by the NCSLT Trusts or on their behalf are actually performed by its board and management structure, servicers, or by attorneys hired by the servicers. NCO Financial Systems, Inc. was the default debt collector for the Trusts until November 1, 2014, at which time Transworld became the successor in interest to NCO.

10

Transworld became the default loan debt collector for the Plaintiffs' and Class members' account loans after the loans were in default and Transworld treated the loans as in default. Transworld became the servicer for the Discharged Loan accounts at a time then it knew the Discharged Loan records were inaccurate and prone to errors, and thus rendered the loans unenforceable. Transworld knew this based on the records Transworld received from NCO and the Trusts and their affiliates at the time of the servicing transfer. However, Transworld concealed this material information from the Plaintiffs and putative Class members until less than twelve months before the commencement of this action.

36.

Based upon public disclosures, and upon information and belief, Transworld retains a national network of law firms and attorneys to pursue delinquent borrowers by filing collection lawsuits in state courts. These firms include RLG and PS.

37.

38.

On information and belief, RLG and PS are subject to laws that govern its practice including the federal Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Extension Uniformity Act ("FCEUA") and Unfair Trade Practices Consumer Protection Law ("UTPCPL").

### B.    Debt Collection Begins against the Named Plaintiffs

39.

Chelsey Gosse received letters from RLG informing her of a potential settlement for the NCSLT 2007-3 Trust loan. These separate collection communications concealed information available to the NCSLT 2007-3 Trust and its debt collector RLG that would have identified to any reasonable person that they could not collect the alleged debt.

40.

### 1.   The Trust Files Suit against Gosse

41.

On August 14, 2019, Chelsey Gosse was sued by NCSLT 2007-3 Trust, represented by RLG in the Superior Court, Lehigh County, Pennsylvania, Case No. 2019-cv-2482.

NCSLT 2007-3 Trust, Transworld, and RLG alleged that Chelsey Gosse had liability for a loan originated by JP Morgan Chase, which, they alleged, had subsequently been purchased by the Trust in consolidated loan pools. These statements were false, unfair, and deceptive.

After receiving the filed summons and complaints via process service in February 2020, Chelsey Gosse filed preliminary objections to the action the gravamen of which was that the Trust lacked standing to assert any legal rights as assignee of the Gosse loan.

42. The complaint filed by the NCSLT 2007-3 Trust, with the aid and assistance of U.S. Bank and their debt collectors Transworld and RLG, was unfair, abusive, and deceptive in multiple ways, as explained herein:

43.

### 2. The NCSLT 2007-3 Trust could not substantiate their ownership of the Gosse loan.

In the Gosse case, the NCSLT 2007-3 Trust concurrently filed a verification affidavit signed by Aaron Motin, an employee of Transworld, the NCSLT Trusts' debt collector.

44. Motin's Affidavit claimed that Motin was fully familiar regarding the facts set forth in the complaint stating there was an outstanding principal balance on a loan currently owned by the Trust, and that the associated loan had been transferred and assigned to the NCSLT 2007-3 Trust. In fact, as shown *infra* Motin knew or should have known that the facts alleged were false and based on untrustworthy records and/or he concealed certain facts known to him that demonstrated the NCSLT 2007-3 Trust had no legal right to pursue the collection action, thus misrepresenting directly or indirectly, expressly or by implication, that Transworld could prove the claims.

45. Attached to Complaint verified by Motin are two exhibits purporting to substantiate the chain of assignment for the loan. Exhibit A was a document titled "Loan Application/Promissory Note" or "Loan Request /Credit Agreement" allegedly signed by Chelsey Gosse as borrower, along with a document titled "Note Disclosure Statement" that includes additional information about the alleged loan. Exhibit B consisted of a "Pool Supplement" evidencing the purported sale of certain loans from JP Morgan Chase as successor to Bank One NA to The National Collegiate Funding LLC, however, Exhibit A makes no mention of Bank One having any involvement in the loan. There is nothing submitted to show that National Collegiate Funding LLC made any transfer of this loan to the Defendant NCSLT 2007-3 Trust.

The Pool Supplement notes that the actual list of loans in each pool is specified by "Schedule 1" of the "Loan Schedule" of the associated Pool Supplement. The Pool Supplement attached to does not include the Loan Schedule referenced and thus cannot establish that the loan in question was validity of assignment by JP Morgan to The National Collegiate Funding LLC as well as the statement that the Pool Supplement referenced loans originated by Bank One, not JP Morgan.

**3.   The Gosse State Court Case is Dismissed.**

On January 3, 2020, the Lehigh County Pennsylvania Common Pleas Court granted Gosse's preliminary objections. The case was dismissed because NCSLT 2007-3 Trust and its agents and affiliates, including its co-defendants in this action, could not demonstrate the right to pursue the collection action. Gosse incurred legal fees to defend against the wrongful collection attempt and also sustained worry, anxiety, and frustration by the threats of the Defendants, directly and indirectly, to collect sums not owed under the color of law.  That order was never appealed and is a final order of dismissal with prejudice thereby (a copy of which is Exhibit B, hereto).

**4.   The Dettore State Court Case is Commenced.**

On November 5, 2020, the Dettores were sued by NCSLT 2007-4 Trust, represented by PS in the Court of the Common Pleas for Luzerne County, Pennsylvania, Case No. 202010118.

In the Dettore action, the NCSLT 2007-4 Trust, Transworld, and U.S. Bank allege many of the same unfair and deceptive representations, directly or indirectly which they made in the Gosse action in that:

a.   the NCSLT 2007-4 Trust concurrently filed a verification affidavit signed by Anna Kimbrough, another employee of Transworld, the NCSLT Trusts' debt collector. Kimbrough's Affidavit claimed that Kimbrough was fully familiar regarding the facts set forth in the complaint that included there was an outstanding principal balance on a loan currently owned by the Trust, that the associated loan had been

13

transferred and assigned to the NCSLT 2007-4 Trust.  In fact, as shown *infra* Kimbrough knew or should have known that the facts alleged were false and based on untrustworthy records and/or he concealed certain facts known to him that demonstrated the NCSLT 2007-4 Trust had no legal right to pursue the collection action, thus misrepresenting directly or indirectly, expressly or by implication, that Transworld could prove the claims.

b.  Attached to the Complaint verified by Kimbrough are exhibits purporting to substantiate the chain of assignment for the loan. Exhibit B is a "Loan Request /Credit Agreement" allegedly signed by the Dettores as borrowers, along with a document titled "Note Disclosure Statement" that includes additional information about the alleged loan. Exhibit C consisted of a "Pool Supplement" evidencing the purported sale of certain loans from RBS Citizens N.A. as successor to Citizens Bank of Rhode Island to The National Collegiate Funding LLC.

c.  The Pool Supplement notes that the actual list of loans in each pool is specified by "Schedule 1" of the associated Pool Supplement. The Pool Supplement attached does not include the Schedule 1 referenced and thus cannot establish that the loan in question was validity of assignment by RBS Citizens NA as successor to Citizens Bank of Rhode Island to The National Collegiate Funding LLC. The only thing submitted, appears to be an excerpt of a document created for litigation purporting to reference the loan. In sum, there nothing submitted to show that National Collegiate Funding LLC made any transfer of this loan to the Defendant NCSLT 2007-4 Trust.

d.  Lastly, Kimbrough claims that Transworld is the record custodian of all student loans for the Trusts as referenced in the Complaint's Exhibit A, however Transworld does not have any of the records in its possession, as it relies on other entities to supply them with loan documents.

C.    **The NCSLT Trusts Possessed Knowledge that They Chose to Conceal from the Plaintiff, Class Members, and State Courts.**

TSI was recently the subject of investigation by the CFPB.  All of the Defendants have record and/or actual knowledge of this action.

On September 15, 2017, more than two years before filing suit against Gosse and three years before the Dettores, the CFPB issued a Stipulation and Consent to the Issuance of a Consent Order ("Transworld Stipulation") and a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts ("Transworld Consent Order"), filing both in 2017-CFPB-0018.

That Transworld Consent Order was issued specifically as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The Transworld Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of Transworld on behalf of, or in the name of, the NCSLT Trusts identified above.

In the Transworld Consent Order, the CFPB found that Transworld and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

a.    Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

b.    Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

c.    Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

The Transworld Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

54. In 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust Agreements), filed suit in Delaware Chancery Court against Transworld and two codefendants, for breach of contract, charging them with costing the Collective NCSLT Trusts

55. billions of dollars and with causing "wrongful and fraudulent …cases being brought against thousands of borrowers." *See* Verified Amended Complaint, Exhibit A

56. Specifically, the Collective NCSLT Trusts have accused Transworld of injurious falsehood for, among other things:

   a. Recklessly making false and misleading representations to borrowers that the Collective NCSLT Trusts had a right to sue the Plaintiff and putative class members, when they did not;

   b. Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not;

57. c. In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

At the time the NCSLT 2007-3 Trust filed suit against Chelsey Gosse on August 14, 2019, the Trust was aware of the CFPB Consent Order, and of their lawsuit against Transworld

58. and other codefendants in Delaware Chancery Court.

At the time the NCSLT 2007-3 Trust filed suit against Gosse on August 14, 2019,

59. the Trust was aware of the reckless and injurious practices of Transworld as explained in the Delaware lawsuit.

At the time the NCSLT 2007-3 Trust filed suit against Gosse, with the aid and assistance of Transworld and RLG, on August 14, 2019, the NCSLT Trust, U.S. Bank, Transworld, and RLG were aware of Transworld's reckless and injurious practices. Yet, Transworld, U.S. Bank, RLG, and the NCSLT Trust continued their unfair and deceptive practices

16

of flooding the courts with hundreds of debt collection actions without a reasonable basis to do so and without the right to due so based on their prior admissions in the CFPB Consent Order.

At the time the NCSLT 2007-4 Trust filed suit against Dettores on November 5, 2020, the NCSLT 2007-4 Trust was aware of:

60.

    a.   the CFPB Consent Order, and of their lawsuit against Transworld and other codefendants in Delaware Chancery Court.the reckless and injurious practices of Transworld as explained in the Delaware lawsuit.

61.

At the time the NCSLT 2007-4 Trust filed suit against the Dettores, with the aid and assistance of Transworld and RLG, the NCSLT Trust, U.S. Bank, Transworld, and PS were aware of Transworld's reckless and injurious practices since at least January 3, 2020 when the Gosse Collection action was dismissed for lack of standing. Yet, Transworld, U.S. Bank, PS, and the NCSLT Trust continued their unfair and deceptive practices of flooding the courts with hundreds of debt collection actions without a reasonable basis to do so and without the right to due so based on their prior admissions in the CFPB Consent Order.

62.

The actions of the NCSLT Trusts, Transworld, U.S. Bank, PS, and RLG in regard to Chelsey Gosse and the Dettores were substantially identical to the actions that the Transworld Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act.

63.

The NCSLT Trusts, PS, RLG, U.S. Bank and Transworld were aware that they lacked the ability to prove their ownership of any loans taken out by Chelsey Gosse at the time they filed their collection action against Gosse and also of any loans taken out by the Dettores at the time they filed their collection action against the Dettores.

64.

Transworld, the NCSLT Trusts, and U.S. Bank are aware that the Loan Schedule related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. No entity has the Loan Schedules and thus these loans are uncollectible by any successor because no one can prove valid assignment and history of the loans.

## V.   CLASS ALLEGATIONS

Plaintiffs also sue on behalf of others, pursuant to Fed. R. Civ. P.  R. 23, who are similarly situated to them: a FDCPA Class and the State Class. These putative Classes of similar persons are defined as follows:

65.
    **a. FDCPA Class:** Those persons with an address in the Commonwealth of Pennsylvania whom RLG. PS or Transworld has communicated with directly or indirectly for the purpose of collecting a purported student loan owned by a Trust in the one year period preceding the filing of the original complaint in this action. Excluded as members of the FDCPA Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants; (ii) a relative of an employee or independent contractor of any of the Defendants; (iii) is an employee of the Court where this action is pending or (iv) have previously released the Defendants for the claims asserted in this action.

    **b. STATE CLASS**

Any member of the FDCPA class in the two (2) year period preceding the filing of the complaint in this action.

66.

67.     The Class definitions may be amended or modified from time to time.

Plaintiffs propose to represent themselves and the State Class and the FDCPA Class defined above.

68.

69.    Plaintiffs qualify as persons who are members of the respective Class definitions they seek to represent.

The members of the STATE Class and FDCPA Classes are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

Upon information and belief based on public records, the STATE Class and FDCPA Class are each sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that the Trust have sued thousands of consumers nationwide, including hundreds of cases in Pennsylvania by RLG, PS and Transworld.

There are questions of law and fact common to the State Class which predominate over any questions affecting only the individual members of the State Class. The common issues include, but are certainly not limited to:

    a.  Whether the Defendants engaged in improper collection efforts for the reasons set forth herein;

    b.  Whether the Defendants efforts described herein constitute unfair or deceptive practices;

72.    There are questions of law and fact common to the FDCPA Class which predominate over any questions affecting only the individual members of the FDCPA Class. The common issues include, but are certainly not limited to:

    a.  Whether the FDCPA Defendants have used false, deceptive or misleading statements in connection with its attempts to collect debts from the members of the FDCPA class;

    b.  Whether the FDCPA Defendants have made false statements concerning the character, amount or legal status of any debts, misrepresenting, directly or indirectly, expressly or by implication, that Defendants had verified that the debt was the accurate amount, owed by the consumer, and collectible;

    c.  Whether the FDCPA Defendants misrepresented, directly or indirectly, expressly or by implication, when filing debt collection lawsuits and other separate communications that they intended to and could prove their claims when they could not do so;

    d.  Whether the FDCPA Defendants have used any false representation or deceptive means to collect or attempt to collect any debt;

e.  Whether the FDCPA Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents.

f.  Whether the FDCPA Defendants engaged in any investigation of the validity or truth of statements contained in the alleged verifications or communications;

g.  Whether the Defendants have used any unfair or unconscionable means to collect or attempt to collect any debt;

h.  Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt; and

i.  The sum of the FDCPA Defendants' net worth;

73.    The Plaintiffs claims are the same as those of each member of the State Class and FDCPA Class and are based on the same legal and factual theories.

74.    There are no material differences between their claims and the claims of the members of the respective classes she seeks to represent.

75.    The Defendants' likely defenses (though unavailing) are and will be typical of and materially the same or identical for each of the State Class and FDCPA Class and will be based on the same legal and factual theories. There are no valid, unique defenses.

77.    Plaintiffs will fairly and adequately represent and protect the interests of the class members.

78.    Plaintiffs do not have any interests antagonistic to the members of the respective classes they seek to represent.

79.    Plaintiffs seek certification pursuant to Fed. Civ. P. 23(b)(2) and (b)(3).

The Defendants' acts were wrongful on grounds that apply uniformly across the State Class and the FDCPA Defendants as to the FDCPA Class so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the classes as a whole. Further, common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and

expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered and uniformity of decisions will be ensured.

79. Apart from details such as names, dates, and dollar amount of Discharged Loans, there are no individual questions to establish the claims of the Plaintiffs and the State Class or the FDCPA Class members. The claims are based on Defendants' omissions and lack of right to collect from Class Members.

80. Plaintiffs' claims are typical of the claims of the State Class and FDCPA Class members.

81. The State Class members have suffered damages, losses, and harm similar to those sustained by Plaintiffs in relation to the improper, unfair, and deceptive collection activities of the Defendants in violation of state laws governing their activities.

82.

83. There is an actual controversy between the State Class members and the Defendants.

84. The FDCPA Class members have suffered damages, losses, and harm similar to those sustained by Plaintiffs in relation to the improper, unfair, and deceptive collection activities of the FDCPA Defendants in violation of federal laws governing their activities.

85. As described herein, the claims of the State Class and FDCPA Class are tolled by the Defendants' unlawful concealment of their knowledge from the Plaintiffs, the State and FDCPA Class members, various state and federal courts, and the public.

86. The Defendants also took affirmative actions to conceal the claims from Plaintiffs and the State Class and FDCPA Class members. Therefore, any limitations period applying to the claims of the State Class members or FDCPA Class Members should be equitably tolled given the Defendants' voluntary and improper election to conceal disclosure of the material information which should have foreclosed its efforts to collect.

## VI.   **CAUSES OF ACTION**

## COUNT I

### Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (On Behalf of The Named Plaintiff and the FDCPA Class Against Certain Defendants)

Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on his behalf and on his behalf of FDCPA Class members against Defendants Transworld, RLG and PS only ("FDCPA Defendants").

87.   Transworld, RLG and PS acquired their interest in the Named Plaintiff and FDCPA Class members' consumer loans during a period in which each allege (directly and indirectly) the loans of the Plaintiffs and FDCPA Class were in default and were otherwise delinquent pursuant to the loan documents. In fact, RLG and PS presented to various state courts in relation to the Plaintiffs and the FDCPA class members verifications under penalties of perjury Transworld's testimony of these facts on behalf of the Trusts. Therefore Transworld, RLG and PS are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6). Transworld, RLG and PS also are debt collectors pursuant to 15 U.S.C. § 1692a(6) because their principal business activity utilizes instrumentalities of interstate commerce or the mails related to the collection of consumer debts on behalf of others including the Trusts.

89.   By communicating with the Plaintiffs and FDCPA class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiffs and the FDCPA class members, which are barred from collection against the Plaintiffs and FDCPA Class members as a result of an inability to prove their claims, Transworld, RLG and PS used false, deceptive, or misleading representations or means in connection with the collection of consumer debts of the Named Plaintiffs and FDCPA Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

90.   Alternatively to the claims asserted in the previous paragraph, Transworld's, RLG's and PS's actions and omissions described herein in relation to pursuing debts with their knowledge of the Trust's inaccurate and incomplete records which are not sufficient to pursue debt collection actions also constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiffs and FDCPA Class Members in violation of 15 U.S.C. § 1692f.

Named Plaintiffs and the FDCPA Class members have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees and court costs as a result of Transworld's, RLG's and PS's illegal debt collection practices and direct and indirect actions described herein.

The FDCPA provides for statutory damages in addition to actual damages.

### COUNT II
### Fair Credit Extension Uniformity Act ("FCEUA")
**(On Behalf of the Named Plaintiffs and State Class Against All Defendants)**

92.

93. Plaintiffs incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the State Class members against the Defendants Transworld, RLG and PS.

94. Transworld, RLG and PS as debt collectors have engaged in acts prohibited by the FCEUA as more particularly set forth above. The FDCPA violations establish violations of the FCEUA.

95. The remaining Defendants as creditors have engaged in acts prohibited by the FCEUA as more particularly set forth above. The remaining Defendants acts violated the prohibitions against under 73 P.S. §2270.4 (b)(5) by using any false, deceptive or misleading representation or means in connection with the collection of any debt and 73 P.S. §2270.4 (b)(6) by using unfair or unconscionable means to collect or attempt to collect any debt.

### COUNT III
### Wrongful Use of Civil Proceedings, 42 Pa.C.S.A. §§ 8351, *et seq*.
**(On Behalf of the Named Plaintiff and the State Class Against All Defendants)**

96.

97. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.  Plaintiffs bring this claim on their behalf and on behalf of the State Class members against all defendants.

As set forth above, Defendants caused the underlying litigation to be instituted against Plaintiffs and putative State Class members.

Because Defendants knew or should have known the Trusts' inaccurate and incomplete records were insufficient to pursue debt collection claims in the collection actions against the Plaintiffs and the State Class members, then, at all times relevant hereto:

98.     a.     Defendants commenced, continued and/or prosecuted the underlying collection actions against the Plaintiffs for the improper purpose of demanding sums not legally due from the Plaintiffs and the class members pursuant to 42 Pa. C.S.A §8351;

b.     Defendants commenced, continued and/or prosecuted the underlying collection actions against the Plaintiffs without probable cause or with gross negligence as to the rights and interests of Plaintiffs and the Class members because Defendants could not reasonably believe in the existence of the facts upon which their collection claims were based nor reasonably believe that their claims were valid under any existing or developing law pursuant to 42 Pa. C.S.A §8352.

99.     The Defendants are collaterally estopped by prior final orders from denying that their actions were improperly filed and prosecuted. The underlying collection action against Plaintiff Chelsey Gosse was terminated in hers favor.

100.     The Defendants are liable to Plaintiffs for their losses, expenses, including legal fees and costs, emotion distress, and for the imposition of punitive damages pursuant to 42 Pa. C.S.A §8353.

## COUNT IV
### Civil Conspiracy
**(On Behalf of the Named Plaintiff and the State Class Against All Defendants)**

101.

102.     Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.  Plaintiffs bring this claim on their behalf and on behalf of the State Class members against all Defendants.

The defendants through formal and informal agreements agreed to act in concert and conspired, substantially contributed, substantially assisted and acted in concert with each other in the misconduct described above and below to their mutual economic benefit by:

a.  falsely filing the collection lawsuits without the intent or ability to prove ownership of the involved debts, i.e. without probable cause;

b.  knowing they were unable to prove the facts to support their standing to file collection lawsuits claims, if contested.

In this regard, said defendants concealed each other's unlawful conduct, by:

103.

a.  Failing or refusing to inform plaintiffs and class members of the Transworld Consent Order as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts including but not limited to the CFPB having found that Transworld and its Attorney Network committed a number of offenses between November 1, 2014 and April 25, 2016, including filing tens of thousands of collections lawsuits against borrowers:

    i.  In which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

    ii. In which they attached affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants did not and frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

    iii. that the aforesaid acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

b.  Failing or refusing to inform plaintiffs and class members of the Collective NCSLT Trusts' 2018 Delaware Chancery Court lawsuit against Transworld and two codefendants, for:

    i.  Breach of contract, charging them with costing the Collective NCSLT Trusts billions of dollars and with causing "wrongful and fraudulent

...cases being brought against thousands of borrowers" See Verified Amended Complaint, Exhibit A;

   ii.   Recklessly making false and misleading representations to borrowers that the Collective NCSLT Trusts had a right to sue the Plaintiffs and putative class members, when they did not;

   iii.  Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not;

   iv.   In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

c.   Failing or refusing to request or demand each terminate its misconduct, and;

d.   By failing or refusing to advise plaintiffs that the conduct was unlawful.

104.   At the time the NCSLT Trust filed suit against Chelsey Gosse on August 14, 2019 and the subsequent suit against the Dettores, the Trusts were aware of the CFPB Consent Order, and of their lawsuit against Transworld and other codefendants in Delaware Chancery Court and therefore the defendants acted with malice and had actual knowledge of their misrepresentations and respective overt acts, omissions, evasions, and concealments, and intended to cause and/or had actual knowledge that their acts would naturally contribute to plaintiffs' damages and losses.


## VII.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief and judgment in their favor and the other members of the FDCPA Class and against Transworld, RLG and PS pursuant to Count I of this Complaint under the FDCPA:

   i.    The Court certify a FDCPA Class of persons as defined herein subject to modification or amendment;

   ii.   The Court appoint Plaintiffs and their counsel to represent the FDCPA Class certified;

iii.     The Plaintiffs and FDCPA Class be awarded statutory damages against each Defendants Transworld, PS and RLG pursuant to the FDCPA in the sum of $500,000 per defendant;

iv.     The Plaintiffs and FDCPA Class be awarded actual damages against the Defendants Transworld, PS and RLG under Count I in an amount to be determined at trial;

v.     The Plaintiffs and the FDCPA Class be awarded their costs, including attorney fees, pursuant to the FDCPA; and

vi.     The Plaintiffs and FDCPA Class be awarded such other and further relief as may be appropriate and proper.

WHEREFORE, the Plaintiffs and the State Class also pray for the following relief and judgment against the Defendants pursuant to Counts II, III, and IV of this Complaint:

vii.     The Court certify a State Class of persons as defined herein subject to modification or amendment;

viii.     The Court appoint Plaintiffs and their counsel to represent the State Class certified;

ix.     The Plaintiffs and State Class be awarded actual damages against the Defendants in an amount to be determined at trial;

x.     The Plaintiffs and the State Class be awarded their costs, including attorney fees to the extent allowed by law; and

xi.     The Plaintiffs and State Class be awarded such other and further relief as may be appropriate and proper.

Date: December 3, 2020                    Respectfully submitted,


                                          */s/Robert P. Cocco*
                                          Robert P. Cocco, Esq.
                                          Robert P. Cocco, P.C.
                                          Attorney I.D. No. 61907
                                          1500 Walnut St., Ste. 900
                                          Philadelphia, PA  19102
                                          (215) 351-0200
                                          bob.cocco@phillyconsumerlaw.com

                                          Christina L Henry, Esq.
                                          Henry & DeGraaff, P.S.
                                          787 Maynard Ave S
                                          Seattle, Washington, 98104
                                          Tel 206/330-0595
                                          Fax 206-400-7609
                                          chenry@HDM-legal.com
                                          *Pro Hac Vice*

                                          Scott C. Borison, Esq.
                                          1900 S. Norfolk St. Suite 350
                                          San Mateo CA 94403
                                          Scott@borisonfirm.com
                                          301-620-1016
                                          Fax (301) 620-1018
                                          *Pro Hac Vice*

                                          Counsel for Plaintiffs and the Classes

                          Certificate of Service

   I hereby certify that this pleading and attached exhibits were served on all counsel of record

in this action when filed with the Court through its CM/ECF system.


                                          */s/Robert P. Cocco*
                                          Robert P. Cocco