# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHELSEY GOSSE, CHRISTOPHER DETTORE, AND LORI A. DETTORE *on their own behalfs and on behalf of other similarly situated persons*,<br><br>     Plaintiffs,<br><br>     v.<br><br>TRANSWORLD SYSTEMS, INC.,<br>U.S. BANK, NA.,<br>RATCHFORD LAW GROUP, P.C.,<br>PORTNOY SCHNECK, LLC,<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4,<br>AND<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4,<br><br>     Defendants. | Case No: 3:20-cv-01446-RDM-MCC<br><br>Hon. Robert D. Mariani<br><br>Electronically Filed |

## PLAINTIFFS' OMNIBUS OPPOSITION TO THE DEFENDANTS MOTIONS TO DISMISS AND MOTION TO STRIKE (ECF. 52-55, 59-62)

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 2

II. Summary of Well Pled Facts ....................................................................................... 4

III. Standard of Review ..................................................................................................... 7

IV. Argument .................................................................................................................... 8

    A. The Defendants are Estopped from Claiming any Right to Collect from Gosse ................ 8

    B. Averments of Malice and Defendants' State of Mind Can Be Alleged Generally. .......... 13

    C. The Documents And Declaration That Defendants Have Submitted as Exhibits To Their Motions Are Not Part of The Pleadings. If Considered, Plaintiffs are Entitled To Discovery Before Any Rulings. ...................................................................................................... 14

        i. A Motion to Dismiss is Limited to the Pleadings. ...................................................... 14

        ii. The Court Is Not Bound By Any Legal Conclusions In The Documents Or Declaration. ................................................................................................................. 14

        iii. If the Court Considers the Document Submitted by the Defendants, The Plaintiffs Should be Permitted Discovery before the Court Makes a Ruling .................................. 15

    D. The Defendants Are Not Permitted to Assert the Litigation Action Privilege to the Claims Asserted against them in this Action ........................................................................ 15

    E. U.S. Bank's Principal-Agency Argument is Not Properly before the Court at this Stage of the Proceedings ........................................................................................................... 18

    F. Plaintiffs Have Stated FDCPA Claims Against Transworld and RLG ............................ 21

        i. Transworld, RLG, and PS are Debt Collectors .......................................................... 21

        ii. Transworld's, RLG's, and PS's used False, Deceptive, or Misleading Representations or Means to Collect and Attempt to Collect Consumer Debts on behalf of the NCSLT Trusts and Their Affiliates ........................................................................... 23

iii. Alternatively, Transworld's, RLG's, and PS's used False, Deceptive, or Misleading Representations or Means to Collect and Attempt to Collect Consumer Debts on behalf of the NCSLT Trusts and Their Affiliates ........................................................................... 28

iv. Transworld's Motion to Dismiss Seeks to Dismiss Claims Not Even before the Court and Should be Denied; It's other theories ........................................................................ 30

G. Plaintiff Gosse Has Stated a Proper Claim in Count III of the FAC Pursuant to the Dragonetti Act ........................................................................................................................ 32

H. Plaintiffs Have Stated Proper Claims for Civil Conspiracy Against All Defendants ....... 34

V. Conclusion ............................................................................................................................. 40

# TABLE OF AUTHORITIES

## Cases

*Aiello v. Ed Saxe Real Estate, Inc.,* 499 A.2d 282 (Pa. 1985) ................................................. 26, 27

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) .................................... 35

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................... 13, 25

*Ayres v. Nat'l Credit Mgmt. Corp.*, No. CIV.A. 90-5535, 1991 WL 66845 (E.D. Pa. Apr. 25, 1991) ........................................................................................................................................ 42

*Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir.) ............................................................. 28

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................. 13

*Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111 (1912)....................... 17

*Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987) ................................. 25, 26

*Bradford Area Sch. Dist. v. Bradford Area Educ. Ass'n,* 663 A.2d 862 (Pa. Commw. Ct. 1995) 32

*Bro-Tech Corp. v. Thermax, Inc.*, 651 F.Supp.2d 378 (E.D.Pa. 2009) .................................. 42, 43

*Buck v. Hampton Tp. School Dist.*, 452 F.3d 256 (3rd Cir. 2006) .............................................. 20

*Caprio v. Healthcare Revenue Recovery Grp., LLC,* 709 F.3d 142 (3d Cir. 2013) .................... 30

*CFPB v. Hanna,* 114 F. Supp. 3d 1342 (N.D. Ga. 2015) ....................................................... 34, 35

*Cipollone v. Liggett Grp., Inc.,* 789 F.2d 181 (3d Cir. 1986) ..................................................... 46

*Cole v. Finsel,* 691 F. Supp. 841 (M.D. Pa. 1988)..................................................................... 19

*Connelly v. Lane Constr. Corp.,* 809 F.3d 780 (3d Cir. 2016) ................................................... 13

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.,* 114 F. Supp. 3d 1342 (N.D. Ga. 2015)................................................................................................................................. 34

*Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ........................................................................................................................... 31

*Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) 43

*Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114 (3d Cir. 2013)........... 13

*Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245, 205 L. Ed. 2d 129 (2019) ........................ 28

*Daubert v. NRA Grp., LLC*, 861 F.3d 382 (3d Cir. 2017) ............................................................ 35

*Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014) ..................................... 30, 35

*Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223 (3d Cir. 2013) ..................................... 13

*Fairbank's Cap. Corp. v. Milligan*, 234 F. App'x 21 (3d Cir. 2007) ......................................... 17

*Feingold v. Graff*, No. CIV.A. 12-1090, 2012 WL 2400998 (E.D. Pa. June 26, 2012) .............. 18

*Freundlich & Littman, LLC v. Feierstein*, 2017 PA Super 40, 157 A.3d 526 (2017) ........... 22, 23

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) .............................................................. 30

*Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir.1972) ................................................................ 17

*Gasbarini's Est. v. Med. Ctr. of Beaver Cty., Inc., Rochester Div.*, 409 A.2d 343 (Pa. 1979) ..... 19

*Gentzler v. Atlee*, 443 Pa.Super. 128, 660 A.2d 1378 (1995) ................................................... 22

*Gregory v. Chehi*, 843 F.2d 111 (3d Cir. 1988) ....................................................................... 16

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ................................................................................... 24

*Hoffman v. Transworld Sys., Inc.*, 806 F. App'x 549 (9th Cir. 2020) ....................................... 10

*Houle v. Walmart Inc.*, 447 F. Supp. 3d 261 (M.D. Pa. 2020) ................................................ 14

*In re Ellis' Estate*, 333 A.2d 728 (Pa. 1975) ........................................................................... 16

*In re Stevenson*, 40 A.3d 1212 (Pa. 2012) .............................................................................. 17

*Integrated Project Servs. v. HMS Interiors, Inc.*, No. 1789MAR.TERM.2001, 2001 WL 1807887 (Pa. Com. Pl. July 2, 2001) ................................................................................................. 19

*Keylard v. Mueller Anderson, P.C.*, No. 13 C 2468, 2013 WL 4501446 (N.D.Ill. Aug. 22, 2013) ............................................................................................................................................ 36

*Keystone Freight Corp. v. Stricker*, 31 A.3d 967 (Pa. Super. 2011) ......................................... 23

*Krisa v. Equitable Life Assur. Soc.*, 109 F. Supp. 2d 316 (M.D. Pa. 2000) ............................... 45

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ................................... 34, 36

*LLMD of Mich., Inc. v. Jackson-Cross Co.*, 559 Pa. 297, 740 A.2d 186 (1999) ....................... 22

*McDonald v. City of W. Branch, Mich.*, 466 U.S. 284 (1984) .................................................. 16

*McGuire v. Shubert*, 722 A.2d 1087 (Pa. Super. Ct. 1998) ................................................. 22, 23

*Mellon Bank v. Rafsky*, 535 A.2d 1090 (Pa. 1987) ................................................................. 16

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019)  9, 38

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552  (1979) ................ 16

*Phillips v. County of Allegheny*, 515 F.3d 224 (3rd Cir. 2008) ..................................................... 14

Piper v. Portnoff Law Assoc., 396 F.3d 227 (3d Cir.2005) ........................................................... 24

*Raynor v. D'Annunzio*, 243 A.3d 41 (Pa. 2020) ........................................................................... 42

*River Road Devel. Corp. v. Carlson Corp.–Northeast,* No. 89–7037, 1990 WL 69085 (E.D.Pa.,

   May 23, 1990) ............................................................................................................................. 45

*Rossi v. Standard Roofing, Inc.,* 156 F.3d 452 (3d Cir.1998) ...................................................... 43

*Safeguard Mut. Ins. Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975) .................................... 16

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007) .............................................. 24, 35

*Schuchardt v. President of the U.S.,* 839 F.3d 336 (3d Cir. 2016) ............................................... 13

*Shaffer v. Smith*, 673 A.2d 872, 543 Pa. 2d 526 (1996) ............................................................... 18

*Sibley v. Fulton DeKalb Collection Serv.,* 677 F.2d 830 (11th Cir. 1982) ................................... 42

*Stilp v. Com.*, 910 A.2d 775 (Pa. Commw. Ct. 2006) ............................................................ 15, 19

*Stilp v. Com., Gen. Assembly*, 601 Pa. 429, 974 A.2d 491 (2009) .............................................. 15

*Stratton v. Portfolio Recovery Assocs., LLC,* 770 F.3d 443 (6th Cir.2014) ................................ 36

*Tatis v. Allied Interstate, LLC*, 882 F.3d 422 (3d Cir. 2018) ......................................... 30, 31, 33

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.,* 530 F.3d 204 (3d Cir.2008) .................. 43

*Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542 (3d Cir. 2006) .......................... 44

*U.S. Nat. Bank in Johnstown v. Johnson*, 487 A.2d 809 (Pa. 1985) ............................................ 19

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) ............................... 43

*Winne v. National Collegiate Student Loan Trust 2005–1*, 228 F.Supp.3d 141 (D.Me., 2017) ... 20

*Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852 (M.D. Pa. 2015) ........................................... 14

*Witkowski v. Welch*, 173 F.3d 192 (3d Cir. 1999) ....................................................................... 17

**Statutes**

15 U.S.C. § 1692(a) ....................................................................................................................... 30

15 U.S.C. § 1692a(6) ................................................................................... 28

15 U.S.C. § 1692f ................................................................................... 34, 35

15 U.S.C.A. § 1692e ................................................................................ passim

15 U.S.C.A. §1692a ........................................................................................ 42

28 U.S.C.A. § 1738 ........................................................................... 16, 18, 19

42 Pa. Stat. and Cons. Stat. Ann. § 8351 .................................................... 38

### Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................... 13, 14

Fed. R. Civ. P. 12(f) ...................................................................................... 14

Fed. R. Civ. P. 9(b) ....................................................................................... 19

### Treatises

10 Standard Pennsylvania Practice 2d § 65:80 ............................................ 19

5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed. 2004) ........... 20

Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006) ...................... 21

Plaintiffs Chesley Gosse ("Gosse") and Christopher Dettore and Lori A. Dettore (the "Dettores")(collectively "Plaintiffs"), on their behalf and on behalf of similarly situated persons, hereby respond in opposition to: (i) Defendant Transworld Systems, Inc.'s ("Transworld") Motion to Strike Portions of Plaintiff's First Amended Complaint and to Dismiss Plaintiffs' First Amended Complaint (ECF. 53, 60); (ii) U.S. Bank, National Association's ("U.S. Bank") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF. 52, 59); (iii) Ratchford Law Group, P.C.'s ("RLG") Motion to Dismiss (ECF. 55, 61); and (iv) National Collegiate Student Loan Trust 2007-3's ("NCSLT Trust 2007-3") and National Collegiate Student Loan Trust 2007-4's ("NCSLT Trust 2007-4")(collectively "NCSLT Trusts") Motion to Dismiss (ECF. 54, 62).[1] In opposition to these preliminary motions, Plaintiffs state as follows:

## I.     INTRODUCTION

The Plaintiffs allege that the Defendants have engaged in a series of wrongful actions to collect debt that they cannot show they own that they claim is owed to the NCSLT Trusts which have no employees or management and must rely upon the affiliates—including Transworld, U.S. Bank, RLG, and PS—to put any collection efforts into action. (First Amended Complaint ("FAC")(ECF 67), ¶¶ 1-2, 35. Each of the Defendants benefit in their various ways from this charade, which floods the state courts with debt collection actions based on inadequate and at best flimsy claims, because they receive fees or other compensation out of the money they wrongfully collect from unsuspecting student or former student consumers. FAC, ¶¶ 4, 59, 61.

---

[1]     The sole remaining Defendant Portnoy Schneck, LLC ("PS") has moved to dismiss without specifying any basis to do so (ECF. 66).  Pursuant to Local Rule 7.5 is memorandum in support of that motion is due on or before March 2, 2021. If, PS elects to file a timely memorandum in support of its motion, Plaintiffs will substantively respond to it at that time as permitted by Local Rule 7.6.

At the helm of this enterprise is U.S. Bank who is responsible for engaging and directing the actions of the other various actors. FAC, ¶¶ 19-21. U.S. Bank makes various decisions as the Indenture Trustee of the NCSLT Trusts, which means it is acting on behalf of various creditors and investors to whom the NCSLT Trusts owe money. *Id.*, FAC, ¶ 17. It is unknown at this stage of the proceeding who these creditors are but to the extent they have other relationships with U.S. Bank, any payments recovered for these creditors provides an additional benefit to U.S. Bank.

As the next step in the operation, U.S. Bank assigned the collections of the alleged accounts to Transworld and since the NCSLT Trusts have no employees or management, the only person who can direct Transworld's day-to-day collections on behalf of the NCSLT Trusts is U.S. Bank. FAC, ¶¶ 17, 19-21, 35, 65. U.S. Bank seeks to insulate itself from any liability for its efforts on behalf of the creditors of the NCSLT Trusts or Transworld so it constructs a series of paper transactions which purport to make it seem as if the NCSLT Trusts have engaged Transworld and therefore, any bad acts by Transworld cannot be attributable to U.S. Bank. However, since the NCSLT Trusts are without employees the decisions are made by U.S. Bank and U.S. Bank has knowledge of TSI's wrongful acts. Id., FAC, ¶¶ 59-64.

Plaintiffs have sued all of the players involved in these wrongful collection efforts. Gosse has already prevailed and shown that the NCSLT Trust who sued her (with the aid of U.S. Bank's delegated authorization to Transworld and engagement of RLG) had no basis to do so. FAC, ¶¶ 28, 35, 40, 43, 47. The First Amended Complaint joins the Dettores who were wrongfully pursued for collections after this action was commenced after the Defendants unfair and deceptive practices are challenged here. FAC, ¶¶ 48, 51, 52.

The standard for the Plaintiffs' claims at this stage is whether the claims they are pursuing (*see* FN 2 *supra*) asserted by the Plaintiffs are plausible. Plaintiffs' well pled claims [2] demonstrate Plaintiffs' action may proceed. The well pled facts before the Court show the clear pattern of Defendants' conduct and omissions have led to the wrongful collection efforts made against the Plaintiffs and many others. FAC, ¶¶ 40-49. Plaintiffs' claims are also largely based upon and supported by the NCSLT Trusts' verified factual allegations and also public enforcement actions and Consent Order against the Defendants which have addressed the conduct experienced by the Plaintiffs described in their FAC. FAC, ¶¶ 51-60. See *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 684 (S.D.N.Y. 2019)(applying and relying upon the CFPB's Consent Order with Transworld); *Hoffman v. Transworld Sys., Inc*., 806 F. App'x 549, 551 (9th Cir. 2020)("the consent order that TSI entered into with the [CFPB] makes it plausible that the affidavits ... were false and the supporting documentation was lost or missing").

The Plaintiffs' claims are also supported by the judgment entered by the by the state court against Defendant NCSLT Trust 2007-3 in Gosse's underlying state collection action. FAC, ¶ 47. Given that the NCSLT Trusts have no employees or management, the Plaintiffs' claims that allege the Trusts' wrongful collection actions against them were done by U.S. Bank, Transworld, RLG, and PS in the name of the NCSLT Trusts are indeed plausible. FAC, ¶¶ 28, 35, 40, 43, 47.

Certain Defendants also move to dismiss the claims by asking the Court to look well beyond the pleadings and accept their largely unsworn, disputed facts and tailored agreements as binding on the Plaintiffs and this Court despite these factual assertions not being in the record before this Court. Therefore, Defendants' extraneous allegations are not properly considered. The

---

[2]     Plaintiffs will not be pursuing their claim under Count II in the FAC pursuant to Fair Credit Extension Uniformity Act and it may be dismissed from the action. The remaining three claims under Counts, I, III, and IV are discussed *infra*.

Defendants seek to present their side before Plaintiffs have been given an opportunity to conduct any discovery of information in Defendants' exclusive possession.

## II.    SUMMARY OF WELL PLED FACTS

Plaintiffs filed their First Amended Complaint on December 3, 2020 alleging that the Defendants knowingly used unfair and deceptive collection practices in the filing of debt collection lawsuit. Since the NCSLTs have no employees, any actions performed nominally by the NCSLT Trusts or on their behalf are actually performed by their agents. Dkt. No. 44, at ¶ 35. The crux of the class allegations centers on the fact that, in 2017, prior to the Plaintiffs' lawsuits, Defendant Transworld Systems Inc, ("TSI")was the subject of a Consumer Financial Protection Bureau ("CFPB") investigation that resulted in the issuance of a "Stipulation and Consent to the Issuance of a Consent Order" (see Exhibit A, "Transworld Stipulation") and a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts (see Exhibit B, "Transworld Consent Order"), filing both in 2017-CFPB-0018. Dkt. No. 44, at ¶ 51. The Transworld Consent Order was issued specifically as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. Dkt. No. 44, at ¶ 52. In the Transworld Consent Order, the CFPB found that the lawsuits Transworld Systems Inc. filed on behalf of the NCSLT Trusts lacked the complete documentation needed to prove that the NCSLT Trusts owned the loans they were suing upon. Dkt. No. 44, at ¶¶ 53a. They also determined that the affidavits filed in those lawsuits were without personal knowledge and that the lawsuits were filed without any intent or ability to prove the claims if contested. Dkt. No. 44, at ¶¶ 53b-c. The Transworld Consent Order also required the Defendants to stop filing NCSLT lawsuits supported by false affidavits. *Id*. Additionally, the Transworld Consent Order imposed both affirmative and prohibitory duties upon agents for the NCSLT Trusts and yet they failed to and/or refused to act in accordance with its duties under the aforesaid Transworld Consent Order. Dkt. No. 44, at ¶¶ 27; 32, 61,

Then, in 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust Agreements), filed suit in Delaware Chancery Court against Transworld and two

codefendants for breach of contract, charging them with costing the Collective NCSLT Trusts billions of dollars and with causing "wrongful and fraudulent …cases being brought against thousands of borrowers." Dkt. No. 44, at ¶ 55, Ex A. The Verified Amended Complaint established that U.S. Bank and TSI were fully aware that key portions of instruments which allegedly transferred the Discharged Loans or servicing rights thereto, including Schedule 1, Schedule 2, or Schedule 3 to those instruments (collectively the "Loan Schedules"), do not exist. Dkt. No. 44, at ¶ 22. It also established that U.S. Bank and Transworld knew that the declarations and affidavits, submitted to support claims made in the name of NCSLT Trusts concerning loan documentation, were made without personal knowledge. Transworld, with the knowledge and consent of U.S. Bank, has failed to disclose these material facts and has continued in many cases, in Pennsylvania and elsewhere, to file affidavits and/or declarations under oath which falsely, recklessly, and knowingly testify that the Loan Schedules exist, and that the affiant or declarant has personal knowledge of their existence (when he/she does not) to mislead consumer borrowers and the Courts as to the true nature of the loans. Dkt. No. 44, at ¶ 22. Furthermore, Transworld not only failed to disclose material facts, but also created false documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and,, through its employees and through its Attorney Network, falsely represented through false affidavits and/or declarations and by false statements in pleadings, and by testimony that such documents were genuine loan documents and that the attorney, affiant or declarant had personal knowledge of their authenticity. Dkt. No. 44, at ¶ 23-24.

Despite the regulatory actions brought against TSI for their actions in collecting for the NCSLT Trusts, it continued with the same or similar actions in new lawsuits. On August 14, 2019, the Chelsey Gosse was sued by NCSLT 2007-3 Trust, the latter represented by Defendant RLG in the Lehigh County Court of Common Pleas, Pennsylvania, Case No. 2019-cv-2482. Dkt. No. 44, at ¶ 40.  On January 3, 2020, the Lehigh County Pennsylvania Common Pleas Court granted Gosse's preliminary objections and the case was dismissed because NCSLT 2007-3 Trust and its agents and affiliates, including its co-defendants in this action, could not demonstrate the right to

pursue the collection action. Dkt. No. 44, at ¶ 47. On November 5, 2020, Christopher Dettore and Lori A. Dettore were sued by NCSLT 2007-4 Trust, the latter represented by Defendant PS in the Luzerne County Court of the Common Pleas , Pennsylvania, Case No. 202010118. Dkt. No. 44, at ¶ 48. In the Dettores' matter, the affidavit signed by an employee of TSI also lacked the documentation needed to prove up the lawsuit. Dkt. No. 44, at ¶ 49.

The actions of the NCSLT Trusts, Transworld, U.S. Bank, and RLG in regards to Chelsey Gosse and the Dettores were substantially identical to the actions that the Transworld Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act. Dkt. No. 44, at ¶ 62. Transworld, the NCSLT Trusts, and U.S. Bank are also aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. Because no entity has the Loan Schedules, these loans are uncollectible by any successor because no one can prove valid assignment and history of the loans. Dkt. No. 44, at ¶ 64. In all of their actions, NCSLT Trusts and U.S. Bank are vicariously liable for the torts and other wrongful conduct committed against Plaintiff and others in [Pennsylvania] by Transworld and/or its Attorney Network. Dkt. No. 44, at ¶ 17b.

## III.    STANDARD OF REVIEW

This Court has explained the standard of review for Motions to Dismiss pursuant to Fed. R. Civ. P. 12(6) as follows:

> A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

> "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at

555, 127 S.Ct. 1955 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.,* 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.' " *Schuchardt v. President of the U.S.,* 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.' " *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955; then quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937).

*Houle v. Walmart Inc.*, 447 F. Supp. 3d 261, 273 (M.D. Pa. 2020).

In considering the Motion to Dismiss "on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.

*Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008)

The standard of review for a motion to strike provides that:

Rule 12(f) allows the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A court may invoke Rule 12(f) to strike material from a pleading either on the timely motion of a party or by its own initiative. *Id.* "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."… However, "striking a pleading is a drastic remedy to be used sparingly because of the difficulty of deciding a case without a factual record." …. "Relief under 12(f) is generally disfavored and will be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" …

*Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 857 (M.D. Pa. 2015)(citations omitted).


IV.   ARGUMENT

### A. The Defendants are Estopped from Claiming any Right to Collect from Gosse

Gosse was previously sued by RLG representing NCSLT 2007-3 and TSI in the state court. FAC at ¶¶ 39-41 ("Gosse State Action"). In the Gosse State Action, RCSLT, NCSLT 2007-3 and TSI claimed Gosse owed NCSLT 2007-3 on a prior loan originated by J.P. Morgan Chase. FAC at ¶ 41. In the Gosse State Action, RCSLT, NCSLT 2007-3 and TSI attempted to show NCSLT 2007-3 owed the debt that had originated with J.P. Morgan Chase but presented false and untrustworthy records and concealed other facts which demonstrated NCSLT 2007-3 had no legal right to pursue the action. FAC at ¶ 44-46. Gosse noted objections to the Gosse State Action pursued by RCSLT, NCSLT 2007-3 against her which were sustained and a judgment of dismissal with prejudice was entered in favor of Gosse accordingly. FAC at ¶ 47. Those objections averred:

- NCSLT 2007-3 is a serial filer of junk lawsuits. ECF. 60-6, FN 1. "Plaintiff has failed to attach any proof of the Note being transferred to it or any other proof of transfer or receipt of the instrument from the debt's originator. On other case matters brought by plaintiff, it has been unable to produce evidence of ownership of the debt (Ex. 'A' attached)." ECF. 60-6, FN 1 and at ECF Page 8 of 12.

- The papers presented by NCSLT 2007-3 by and through TSI and RCSLT were materially inconsistent and failed to prove NCSLT 2007-3 owned the alleged debt. ECF. 60-6 at ¶¶ 1-5.

- The papers presented by NCSLT 2007-3 by and through TSI and RCSLT failed to show NCSLT 2007-3 even had the capacity to sue. ECF. 60-6 at ¶¶ 6-8.

- NCSLT 2007-3 routinely files collection actions as demonstrated with its Consent order with the Consumer Financial Protection Bureau "without the ability or intent to prove the claims if contested because it lacked adequate proof of transfer of the subject loans" to the Plaintiff (ECF. 60-6 at ECF Page 8 of 12) *see again* Exhibit B (the Transworld Consent Order with the CFPB).

The state court judgment entered in the Gosse State Action in favor of Gosse is final. No party has appealed it. FAC at ¶ 47; ECF. 44-2 (Dismissal Order) *See also Stilp v. Com.*, 910 A.2d 775, 791 (Pa. Commw. Ct. 2006) ("*Stilp 2006*"), aff'd sub nom. *Stilp v. Com., Gen. Assembly*, 601 Pa. 429, 974 A.2d 491 (2009) (recognizing that sustaining a preliminary objection based on the face of the complaint occurs when "recovery upon the facts alleged is not permitted as a matter of law").

The state court judgment entered in favor of Gosse is entitled to full faith and credit:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C.A. § 1738. *See also McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 287 (1984)("… § 1738 obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment"); *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988)("A federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738…")(FN omitted). Yet, Defendants ask this Court to disregard the final state court judgment. There is no basis to do so.

In this context—i.e. when state court losers raise defenses in a subsequent action involving the parties and other persons they are in privity with—Pennsylvania law recognizes that:

> Collateral estoppel [may be] used offensively when the "plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4 (1979).

> [A] plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Safeguard Mut. Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975) (citation omitted)

*See also In re Ellis' Estate*, 333 A.2d 728, 731 (1975)(recognizing that mutuality is no longer required to apply collateral estoppel); *Mellon Bank v. Rafsky*, 535 A.2d 1090, 1093 (1987)(collateral estoppel does not "require[] that there be an identity of parties in the two actions in order to invoke the bar."); *In re Stevenson*, 40 A.3d 1212, 1222 (2012)("Modern collateral estoppel doctrine no longer requires mutuality; a litigant who was not a party to the initial litigation may now use collateral estoppel offensively in a new suit against the party who lost on the decided issue in the initial case").

All the necessary collateral factors are present in this action:

1. **Issue Decided:**  The identical issue presented in this action—i.e. whether TSI, RLG, or NCSLT 2007-3 could prove a right to collect a purported debt from Gosse—has been judicially determined in the Gosse State Action in favor of Gosse.  FAC at ¶¶ 44-47. *See also* ECF 44-2.

2. **Final Judgment:**  The judgment in the Gosse State Action is final. No appeal was filed.[3] FAC at ¶¶ 47.  *See also Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21, 23 (3d Cir. 2007)("A dismissal "with prejudice" is treated as an adjudication of the merits and thus has preclusive effect. *Gambocz v. Yelencsics,* 468 F.2d 837, 840 (3d Cir.1972)").

3. **Privity of Parties:** Gosse and Defendants RLG, NCSLT 2007-3 and TSI all participated in or were named parties in the Gosse State Action. FAC at ¶¶ 40-41. *See also* ECF. 60-3.  All the Defendants are in privity with NCSLT 2007-3.  FAC at 40-41, 43-44.[4] *See also* Argument § IV. A., in*fra*.

4. **Full and Fair Opportunity:** The Defendants had a full and fair opportunity to litigate the issue presented since NCSLT 2007-3 was Plaintiff in the Gosse State Action, TSI was a witness, and RLD was counsel.  FAC at ¶¶ 40-41, 44. Further, the remaining Defendants had full knowledge of the irregularities and lack of records available to prove a right to collect, i.e., the CFPB actions and NCSLT 2007-3 admissions in the Delaware action. FAC at ¶¶ 60-64.  Yet, they turned a blind eye and proceeded as part of their pattern of flooding the courts with flimsy claims that lacked proof in the hopes the consumer defendants could not defend themselves.

---

[3]    Exhibit D, Copy of the Final Judgment from the Gosse State Action; Exhibit E, Plaintiff is awaiting Certified Docket entries and Certified Copy of the Final Judgment in the Gosse State Action. *Witkowski v. Welch*, 173 F.3d 192, 199–200 (3d Cir. 1999).

[4]    *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 128–29, (1912)("As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property. (citation omitted) ").  Here, Defendants claim NCSLT 2007-3 had a right to collect from Gosse and their interests are aligned with NCSLT 2007-3 that lost that issue in the Gosse Court Action.

Therefore, the Defendants are not entitled to summary judgment or dismissal of Plaintiffs' claims asserted since Gosse's well pled claims are supported by the state court judgment entered in her favor. That court found TSI, RLG nor NCSLT 2007-3 could not prove any right to collect from Gosse. FAC at ¶ 47, Exhibit. D. Under 28 U.S.C.A. § 1738 and collateral estoppel grounds under *Shaffer v. Smith*, 673 A.2d at 874, Defendants' motions that contend they had any right to pursue Gosse in the Gosse State Action should be DENIED. While every state court loser might like a second bite at the apple in this Court, this Court lacks the authority to disregard the state court judgment or to review it. 28 U.S.C.A. § 1738.

Without significant analysis, Transworld urges the Court to disregard the state court judgment. *See* Transworld MTD (ECF. 60) at 25 (citing to *Feingold v. Graff*, No. CIV.A. 12-1090, 2012 WL 2400998, at *6 at FN 6 (E.D. Pa. June 26, 2012), aff'd, 516 F. App'x 223 (3d Cir. 2013)). The court in *Feingold* conceded that there is "little case law on the point" and its statements were *dicta* (since it had already ruled on other dispositive grounds in the case). *Id. Feingold's* lone authority was the unreported decision of *Integrated Project Servs. v. HMS Interiors, Inc.*, No. 1789MAR.TERM.2001, 2001 WL 1807887, at *3 (Pa. Com. Pl. July 2, 2001). *Id. Integrated Project* is distinguishable to the facts before this Court. The first action… focused only on a "Joinder Complaint" addressing party's responsibilities related to a "Subcontract" claim for indemnification. *Id.* The second action, however, was focused on the parties' responsibilities under primary contract. Thus, neither res judicata nor collateral estoppel precludes [the party] from proceeding on its claim for contractual indemnity." *Id.* at *4.

Pennsylvania law is clear that "an order that sustains preliminary objections and dismisses the complaint is a final order that becomes res judicata if not appealed within the prescribed appeal period." § 65:80. 10 Standard Pennsylvania Practice 2d § 65:80. *See also U.S. Nat. Bank in*

*Johnstown v. Johnson*, 487 A.2d 809, 813 (1985)(a "dismissal of a complaint…upon its preliminary objections is a final appealable order… which becomes res judicata if not appealed within the prescribed appeal period")(citations omitted); *Gasbarini's Estate v. Med. Ctr. of Beaver Cty., Inc., Rochester Div.*, 409 A.2d 343, 345 (1979)(same); *Cole v. Finsel*, 691 F. Supp. 841, 846 (M.D. Pa. 1988)(same); *Stilp 2006*, 910 A.2d at 784 (the Court applied "collateral estoppel" to preclude the claim and requested relief that had been subject to a prior suit).

The Defendants are precluded from arguing they had any right to attempt to collect from Gosse as a matter or collateral estoppel or pursuant to 28 U.S.C.A. § 1738.

### B. Averments of Malice and Defendants' State of Mind Can Be Alleged Generally.

In the various briefs, Defendants contend that there is a deficiency because they contend malice has not been sufficiently alleged. The Defendants arguments ignore that under Fed. R. Civ. P. 9(b) "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To the extent that Defendants contend more is needed, their position is contrary to Rule 9(b).

### C. The Documents And Declaration That Defendants Have Submitted as Exhibits To Their Motions Are Not Part of The Pleadings. If Considered, Plaintiffs are Entitled To Discovery Before Any Rulings.

#### i.  A Motion to Dismiss is Limited to the Pleadings.

A motion to dismiss tests the Plaintiffs' Complaint and the review is limited to the complaint and documents included in the complaint. *Buck v. Hampton Tp. School Dist*., 452 F.3d 256, 260 (3rdCir. 2006)("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, id. at 560, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004).") None of the documents submitted as exhibits by the

Defendants, e.g., U.S Bank's Motion, ECF 59-1-59-3, were referenced or included in the complaint. The declaration of Bradley Luke, ECF 60-13, likewise is not part of the Plaintiffs' complaint. They are not properly before the court in considering the motions to dismiss.

### ii. The Court Is Not Bound By Any Legal Conclusions In The Documents Or Declaration.

The Court is not obligated to accept Defendants' self-serving legal conclusions set forth in the agreement. *Winne v. National Collegiate Student Loan Trust 2005–1*, 228 F.Supp.3d 141, 150 (D.Me., 2017)("Moreover, the characterization of the relationship as one between independent contractors in the NCO Agreement, although relevant, does not dictate the outcome of the constitutional analysis. As the Restatement (Third) of Agency points out, the term 'independent contractor' is often used to describe parties that are in fact in an agency relationship. See Restatement (Third) of Agency § 1.01 cmt. c (Am. Law Inst. 2006). The Restatement further notes that the characterization of a relationship in an agreement between the parties is not controlling. Id. at § 1.02.").

### iii. If the Court Considers the Documents Submitted By The Defendants, The Plaintiffs Should Be Allowed Discovery.

If the Court considers the documents submitted by the Defendants, the Plaintiff is entitled to discovery relating to the operations of the Defendants before the Court makes any conclusions as to whether the documents reflect the reality of the Defendants' operations. The Trusts have no employees. The Trusts must act through others. Notwithstanding any self-serving description of the relationship between the parties that appear in documents, the Plaintiffs should be allowed to conduct discovery. See Declaration of Christina Henry, Exhibit C, ¶¶ 4-8.

Also, to the extent that the Court considers the declaration of Bradley Luke, the Plaintiffs should also be entitled to discovery. As set forth in the declaration of Plaintiffs' counsel, the

statements made in the Luke Declaration are inconsistent with the findings made by another court concerning his ability to testify as to various facts that he claims to have personal knowledge of. See Exhibit C, ¶¶ 4-8.

### D. The Defendants Are Not Permitted to Assert the Litigation Action Privilege to the Claims Asserted against them in this Action

U.S. Bank, Transworld, and the NCSLT Trusts claim directly or indirectly that they are entitled to assert a litigation action privilege or absolute immunity from the Plaintiffs' claims asserted against them. ECF 59, Pages 7-8, 11; ECF 60 at pages 23-29; and ECF 62 at pages 6-10. In other words, Defendants contend they are free to pursue hundreds of debt collection actions in the state courts without a lawful basis to do so. The Court should decline the Defendants' invitation to open the floodgates to permit them to flood the state courts with baseless suits and improper debt collection practices.

The Pennsylvania's judicial action privilege does provide Defendants absolute immunity for all statements or documents filed in court filings. Such a sweeping application of the privilege is generally limited to actions for defamation and limited by policy concerns. *LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 559 Pa. 297, 740 A.2d 186, 188 (1999); *cf.* 42 Pa.C.S. § 8353(2). Moreover, Pennsylvania has recognized that parties will be held liable for bringing improper actions and exploiting the legal process and they cannot hide behind judicial action privilege. *Freundlich & Littman, LLC v. Feierstein,* 2017 PA Super 40, 157 A.3d 526, 535 (2017). In fact, the Dragonetti Act was enacted to make it easier to establish a case of malicious prosecution to provide more protection to persons forced to defend baseless lawsuits. *Feierstein,* 157 A.3d 526, 532. Any broad application of the judicial privilege is limited to instances where "the extension of immunity is in furtherance of the policy underlying the doctrine," *LLMD*, 740 A.2d at 189. The underlying policy limits its application to situations that foster discernment of the truth and to

encourage parties to use the courts to settle disputes, for judges to administer justice without fear of consequences and to encourage complete and honest testimony from witnesses. *McGuire v. Shubert,* 722 A.2d 1087, 1091 (Pa. Super. Ct. 1998). There is simply no protection for litigants who intentionally file lawsuits hoping to obtain settlements in baseless lawsuits. *Gentzler v. Atlee*, 443 Pa.Super. 128, 660 A.2d 1378, 1386 (1995).

U.S. Bank and the NCSLT Trusts cannot use the judicial privilege to protect them from the Plaintiff's conspiracy claims in Count IV of the FAC. Since the well pled allegations aver that U.S. Bank and the Trusts used the legal process for an illegitimate means (*see e.g.* FAC at ¶¶ 19-20, 34, 40-49, 50-64), use of the judicial privilege would be nonsensical. *Feierstein,* supra, 157 A.3d at 535. Although U.S. Bank and the NCSLT Trusts try to limit any allegations of civil conspiracy to violations of tort claims (ECF 59 at pages 16-18; ECF 62 at pages 15-17), violations of the Dragonetti Act are not shielded from liability because the Act merely replaced the common law tort of malicious use of process leaving courts to regularly refer to violations under the Act as torts. *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 971 (Pa. Super. 2011).

To the extent U.S. Bank and the Trusts' arguments suggest that any acts of civil conspiracy are also shielded because they are a tort, again this limitation is unfounded. The application of the judicial privilege doctrine is limited to situations where actions in judicial proceedings support the furtherance of the truth or encouragement of candor from witnesses otherwise the privilege does not apply. Pennsylvania courts have found instances where the judicial action privilege was not allowed to shield parties for actions brought under torts for invasions of privacy, breach of confidentiality, abuse of process, and the wrongful use of civil proceedings, among others. *See eg*, *McGuire,* 722 A.2d at 102 (where an opponent in an equity action obtained and introduced financial information against defendants in litigation, breaching their confidentiality, misusing

their bank account information and committing an invasion of privacy prevented the use of the judicial action privilege); *Feierstein,* 157 A.3d at 535 (Claims brought under the Dragonetti Act or for common law abuse of process require the aggrieved party to discuss the pleadings and allegations underlying the prior, purportedly improper action, and thus the judicial action privilege would not apply).

Thus, any claim that Pennsylvania's judicial action privilege doctrine is absolute and applicable to *all torts* is just not the law. In the case of a civil conspiracy claim based on violations of the Dragonetti Act, such a privilege does not apply.

Transworld seems to suggest that judicial immunity applies to the FDCPA claims asserted against it and the other FDCPA Defendants. (ECF 60 at Pages 23-29). Such a contention as applied to the Plaintiffs' FDCPA claims is without merit. The Supreme Court held that the FDCPA applies to litigation activities in *Heintz v. Jenkins*, 514 U.S. 291 (1995). *See also Piper v. Portnoff Law Assoc.,* 396 F.3d 227, 232 (3d Cir.2005).

Courts have also have rejected that state privileges can limit claims asserted under the federal FDCPA: "[T]here is no blanket common law litigation immunity from the requirements of the FDCPA." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir.2007). The Fourth Circuit explained that the FDCPA sets forth the defenses available to claims made under it and common law privileges is not included in the defenses listed. *Id.* There simply are no common law privileges that defeat FDCPA claims arising out of litigation.

Based on the foregoing the Court should respectfully deny Defendants' motions based on any claim of common law judicial immunity which does not apply to the remaining statutory claims and the civil conspiracy claim.

E. **U.S. Bank's Principal-Agency Argument is Not Properly before the Court at this Stage of the Proceedings**

U.S. Bank presents a disputed view that Transworld does not act on its behalf and direction but rather acts on behalf of the NCSLT Trusts as an independent contractor thus eschewing any vicariously liability to it for Transworld's alleged actions in this lawsuit, ECF 59 at 14. U.S. Bank's basis for this disputed argument is the Transworld Agreement § 11.4 attached as Ex. C to its Response (ECF. 59-4), which it argues limits its own liability. ECF 59 at 14. As discussed in IV., C. above herein, the documents are not properly before the Court and if the Court considers them, the Plaintiffs should be granted discovery to challenge the legal conclusions offered by these documents.

For purposes of U.S. Bank's motion to dismiss, the Plaintiffs have alleged plausible factual allegations in their FAC to support a claim of a principal-agency relationship between US Bank and TSI. See generally FAC. Under Pennsylvania law, an agency relationship exists that binds a principal to the acts of an agent with liability to third parties when the agency relationship is supported by one of the following four grounds: (1) express authority, (2) implied authority, (3) apparent authority, or (4) authority that the principal is estopped from denying. *Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215, 1221 (1987). Thus, the existence of a contractual agreement denying an agency relationship is not enough to support a determination of the issue. The existence of an agency relationship is a question of fact and the Plaintiffs' FAC makes sufficient allegations (FAC at ¶¶ 19-21, 29, 35, 36, 51). *Bolus,* 525 A.2d at 1221 under the Rule 8 pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Plaintiffs' FAC alleges that the NCSLT Trusts have no employees and that they act through other entities. FAC at ¶ 35. Allegations in the FAC plausibly assert an agency relationship through US Bank's role as the Special Servicer for the Trusts with responsibility for the "enforcement, collection and servicing of Delinquent Loans and Defaulted Loans…" under the

Special Servicing Agreement("SSA")(FAC at ¶¶ 17.a and 19.b) and through US Bank's duty to supervise and control the activities of TSI and its Attorney Network which it has plausible claims for a principal agency relationship were pled (FAC at ¶¶ 17.a). As Plaintiffs allege, US Bank negligently delegated its responsibilities under the SSA to Turnstile Management, LLC ("Turnstile"), (FAC at ¶ 17.b.), thereby violating its duty to supervise and control the activities of Transworld and its Attorney Network under the SSA. FAC at ¶¶ 20-21, 103.

Despite the delegation of its authority, US Bank had actual knowledge of Transworld's negligent performance as the Transworld Stipulation and Consent Order issued by the CFPB noted Transworld's unfair and deceptive acts and practices in servicing the NCSLTS and U.S. Bank permitted, consented to, and aided and abetted their actions. (FAC at ¶ 25.). Since U.S. Bank was and is bound by the Transworld Consent Order, their failure to act in accordance with the affirmative and prohibitory duties imposed by that Consent Order to ensure and enforce Transworld's compliance with that Consent Order establishes the factual allegations necessary to support a claim of agency. FAC at ¶¶ 26-29.

Additionally, even if U.S. Bank's claim is correct that it lacks control over Transworld's performance and does not control Transworld's "day-to-day" activities regarding the NCSLT Trusts as supported by its recitation of various provisions of the SSA, it still cannot escape liability. *See* ECF. 59 at 15-16. In contrast with common notions of vicarious liability which protect a principal from liability for the tortious acts of his agent, where the alleged claims are about tortious misrepresentations made by an agent, a principal may be subject to liability for losses caused by another's reliance upon the authorized or apparently authorized tortious misrepresentations of the agent. *Bolus,* 525 A.2d at 1223-24. *See Aiello v. Ed Saxe Real Estate, Inc.,* 499 A.2d 282 (1985) (a principal is liable to innocent third parties for the frauds, deceits, concealments,

misrepresentations, torts, negligence or other malfeasances or misfeasance's of his agent…, although the principal did not authorize, justify, or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them).

The NCSLT Trusts filed documentation in both Plaintiffs' state court collection actions authorizing Transworld to "execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s)" pursuant to U.S Bank's explicit authorization. *See* Exhibit C, Dec of CLH, at ¶ 3, Exhibits A and B thereto. These authorization documents were relied on by the Plaintiffs and the courts, and they support U.S. Bank's actual or apparent authority to govern the actions of Transworld as Special Servicer to the Trusts. FAC at ¶¶ 17.b, 20-1, 35-36, 51.

Additionally, the Plaintiffs alleged US Bank's involvement in debt collection is done through the various actions of other defendants who are acting in concert with it. FAC at ¶¶ 19-21, 29, 35, 36, 51, 102. Plaintiffs also allege that US Bank had a significant role in managing the enforcement, collection, and default servicing of the NCSLT Trusts and that TSI and the Defendant law firms engaged in conduct that constitute violations of the FDCPA. FAC at ¶¶ 17.b, 19.b, 20-21, 27, 32, 103. Thus, there is no reason why U.S. Bank could not be responsible for the actions of those collecting on behalf of the NCSLT Trusts, especially when the trusts have no employees and all of the actions on behalf of NCSLT Trusts are done by others including U.S. Bank and the entities it has hired to perform those duties. *Id.*, *Aiello*, 508 Pa. 553, 499 A.2d 282.

In sum, U.S. Bank may have delegated performance of its duties but cannot unilaterally delegate away its liability for the actions taken by its delegates. Plaintiffs have pled sufficient facts demonstrating U.S. Bank's principal-agency relationship with Transworld and the NCSLT Trusts to find it liable under the claims asserted in the FAC against it.

### F. Plaintiffs Have Stated FDCPA Claims Against Transworld and RLG

#### i. Transworld, RLG, and PS are Debt Collectors

Transworld, RLG,[5] and PS[6] are debt collectors. FAC at ¶ 10-13, 30, 36, 88. Each acquired their interest in consumer accounts alleged to be owned by the NCSLT Trusts subject to this action when they believed the accounts to be in default. *Id.* In addition, Transworld's, RLG's, and PS's "principal business activit[ies] utilizes instrumentalities of interstate commerce or the mails related to the collection of consumer debts on behalf of others including the Trusts." FAC at ¶ 10.

> [T]he [FDCPA] defines "debt collector" as any person (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition), or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition). 15 U.S.C. § 1692a(6). The statute thus provides two separate paths to establishing an entity's status as a "debt collector." *See Henson*, 137 S.Ct. at 1721.

*Barbato v. Greystone All., LLC*, 916 F.3d 260, 264–65 (3d Cir.), cert. denied sub nom. *Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245, 205 L. Ed. 2d 129 (2019).

In relation to the Named Plaintiffs and the putative class members, Transworld "operates and manages an Attorney Network business unit, which includes PS and RLG, that file debt collection lawsuits in Pennsylvania and nationwide to collect on behalf of the NCSLT Trusts." FAC at ¶¶ 10(c), 11, 37. For example, on behalf of NCSLT 2007-3 and as directed by Transworld's Attorney Network, RLG commenced a debt collection action in the Common Pleas

---

[5] RLG did not move to dismiss any of the FDCPA claims against it. ECF. 61. Rather, it simply incorporated the arguments of the NCSLT Trust 2007-4 which do not address the FDCPA claims which are not asserted against it. *Id.* RFG's motion to dismiss may simply be denied as it has waived any arguments to dismiss the FDCPA claims against it.

[6] PS filed a motion to dismiss (ECF. 66) but has not filed any memorandum in support of the motion as of this filing.

Court of Lehigh County against Ms. Gosse to collect an alleged consumer debt. FAC at ¶¶ 40-41 ("Gosse Collection Action"). Specifically, as authorized and required by Transworld, RLG claimed and communicated to Ms. Gosse and the state court that she owed a defaulted consumer debt originated by JP Morgan Chase. FAC at ¶ 41. In addition to the Gosse Collection Action, on behalf of NCSLT 2007-4 Trust and as directed by Transworld's Attorney Network, PS commenced a debt collection action in the Court of Common Pleas of Luzerne County. FAC at ¶ 49 ("Dettores Collection Action"). Specifically, as authorized and required by Transworld, PS claimed and communicated to the Dettores the state court that they owed a defaulted consumer debt originated by someone other than NCSLT 2007-4. FAC at ¶ 49.

      ii.   <u>Transworld's, RLG's, and PS's used False, Deceptive, or Misleading Representations or Means to Collect and Attempt to Collect Consumer Debts on behalf of the NCSLT Trusts and Their Affiliates</u>

"By communicating with the Plaintiffs..., directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiffs and…which are barred from collection," Transworld, RLG, and PS have each "use[d]…false, deceptive, or misleading representation[s] or means in connection with the collection of any debt" in violation of 15 U.S.C.A. § 1692e. FAC at ¶ 89. Each have pursued collections of debts that are not legally enforceable through debt collection communications and/or litigation (under the color of law) by flooding the courts with so many cases that each anticipates the efforts will overwhelm any efforts to discovery of the unlawful and deceptive activities. FAC at ¶ 32. Transworld knew when it became the default loan debt collector for the Plaintiffs' and class members' alleged loans that the loan records were "inaccurate and prone to errors" and as a result were unenforceable; however, Transworld concealed this material information from the Plaintiffs and putative class members until less than twelve months before the commencement of this action. FAC at ¶ 36.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). These abusive debt collection practices, Congress found, lead to personal bankruptcies, marital instability, the loss of jobs, and, relevant to our analysis, "invasions of individual privacy." *Id.* § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 301-02 (3d Cir. 2014). *See also Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018)(recognizing the FDCPA as remedial legislation that should be construed broadly to effect its purpose).

"[T]he FDCPA…prohibits "*any* false, deceptive, *or misleading representation*" associated with debt-collection practices. 15 U.S.C. § 1692e (emphasis added)." *Tatis,* 882 F.3d at 428. In addition, in this action Plaintiffs also rely on the non-exhaustive subsections (2), (5), and (10) of § 1692e. FAC at ¶ 89. These prohibit:

(2) The false representation of--

(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt….

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken….

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C.A. § 1692e.

Relevant to the Plaintiffs' § 1692e claims, this Court has explained further:

Thus, "[a]n act or practice is deceptive if: (1) 'there is a representation, omission, or practice that,' (2) 'is likely to mislead consumers acting reasonably under the circumstances,' and (3) 'the representation, omission, or practice is

30

material.'" *Gordon*, 819 F.3d at 1192-93 (quoting *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994)). **"Deception may be found based on the net impression created by a representation."** *Id.* **at 1193 (internal quotation marks omitted).**

*Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *23

(M.D. Pa. Aug. 4, 2017)(emphasis added).

Specifically, in the Gosse Collection Action, Transworld and RLG unfairly and deceptively pursued litigation and demanded sums from Gosse which they could not demonstrate were owed by Gosse. FAC at ¶¶ 43-46. Such practices were false and improper threats related to the debt claimed due from Gosse. 15 U.S.C.A. § 1692e; *Tatis,* 882 F.3d at 428. As part of this threat to take action that was not permitted to be taken (in violation of § 1692e), Transworld misrepresented facts to the state court "alleged facts" that it "knew or should have known were false and based on untrustworthy records and/or concealed certain facts known to [it] that demonstrated the NCSLT 2007-3 Trust had no legal right to pursue the [Gosse Collection Action]." FAC at ¶ 43.[7] Those representations violated § 1692e(2)(A) since the statements were a misrepresentation of the character of the alleged debt. At the time the Gosse Collection Action was commenced, Transworld and RLG knew that Transworld's 'reckless and injurious practices' subject to this

---

[7]    *See also* ECF. 44-1 and FAC at ¶¶ 23-24, 54-58 (describing NCSLT 2007-3's verified statements in Delaware state court in which it admits that Transworld routinely utilizes false affidavits and false statements in state court debt collection actions like actions against the Plaintiffs), 25-27, 50-54 (describing the unfair and deceptive acts and practices of Transworld as found in its Stipulation and Consent Order with the Consumer Financial Protection Bureau ("CFPB") on September 2017). Transworld's, RLG's, and PS's disregard of these admissions of the NCSLT Trusts about Transworld's use of knowingly false affidavits and statements in collection actions and the CFPB's findings against Transworld, constitute violations of § 1692e, § 1692e(2), § 1692e(5), and § 1692e(10). The FDCPA defendants have knowledge that the claims they sought to pursue in the Gosse Collection Action were "false, deceptive, or misleading" based on the NCSLT's own admissions in the Delaware state court and the CFPB's findings in the CFPB Transworld Consent Order but they sought to collect from Gosse any way in reckless disregard to that knowledge and did not disclose that knowledge to the state courts and the plaintiffs and class members they represent (FAC at ¶¶. *Tatis,* 882 F.3d at 428.

action had been challenged by the CFPB but they elected to continue the unfair and deceptive practices (FAC at ¶ 59) which represents violations of 15 U.S.C.A. § 1692e, § 1692e(2), § 1692e(5), and § 1692e(10). See also *Tatis,* 882 F.3d at 428.

Gosse objected to and challenged the purported right of NCSLT 2007-3 Trust to pursue her in the Gosse Collection Action as represented by RLG and Transworld. FAC at ¶ 42. The state court granted Gosse's objections to the Gosse Collection Action and the representations of Transworld and RLG on behalf of NCSLT 2007-3 and affirming that they could not show NCSLT 2007-3 had "the right to pursue the collection action." FAC at ¶ 47. *See also* ECF. 44-2. *See also* Argument IV. A, *supra* (arguing that the Defendants are estopped from claiming any right to claim in this action that NCSLT 2007-3 had any such right). Thus, while Transworld and RLG may wish to dispute the well pled facts, they are estopped from arguing they had any right to pursue the Gosse Collection Action since the state court held otherwise in a now final order. *Id.[8]*

---

[8] The Defendants also waived any right to claim here that they had a basis to sue Gosse on behalf of NCSLT 2007-4 since no-one appealed or even sought consideration of the Court's Order sustaining Gosse's objections to the claims asserted by NCSLT 2007-4 and that state court ruling is final. The Commonwealth Court of Pennsylvania has explained:

> "Issue preclusion, traditionally known as collateral estoppel or broad res judicata, 'forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment.' " *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 142 Pa.Commonwealth Ct. 176, 187, 597 A.2d 182, 188 (1991), *reversed on other grounds,* 534 Pa. 327, 632 A.2d 1302 (1993) (quoting *City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989)). As we stated in *Hebden,* issue preclusion prevents relitigation of an issue in a later action based on a claim different from that previously asserted. **Once an issue has been decided and remains substantially the same factually and legally, it cannot be relitigated. Issue preclusion does not require an identity of the parties between the two actions.**

*Bradford Area Sch. Dist. v. Bradford Area Educ. Ass'n,* 663 A.2d 862, 864 (Pa. Commw. Ct. 1995)(emphasis added).

Even though they knew their unfair and deceptive policies, practices, and procedures to collect defaulted debts on behalf of the NCSLT Trusts were being challenged in this action, PS and Transworld, on behalf of NCSLT 2007-4 Trust, commenced the Dettores Collection Action. FAC at ¶ 49. As in the Gosse Collection Action, Transworld and its Attorney Network member PS utilized knowingly false affidavits and untrustworthy document to claim the Dettores owed any sums to NCSLT 2007-4 Trust. FAC at ¶¶ 48-49. Such practices were false and improper threats related to the debt claimed due from the Dettores. 15 U.S.C.A. § 1692e; *Tatis,* 882 F.3d at 428.

As part of this effort against the Dettores, Transworld misrepresented "alleged facts" to the state court and the Dettores that it "knew or should have known were false and based on untrustworthy records and/or concealed certain facts known to [it] that demonstrated the NCSLT 2007-4 Trust had no legal right to pursue the [Dettores Collection Action]." FAC at ¶ 49(a). *See also* FAC at ¶¶ 23-24, 54-58 25-27, 50-54. These acts and utilization of the unreliable and untrustworthy records constitute violations of 15 U.S.C. § 1692e, § 1692e(2), § 1692e(5), and § 1692e(10). *See also Tatis,* 882 F.3d at 428. At the time the Dettores Collection Action was commenced, Transworld and PS knew that Transworld's "reckless and injurious practices" which are the subject of this action had been challenged by the CFPB, yet they elected to continue these unfair and deceptive practices. FAC at ¶¶ 60-64. On this additional basis, the Dettores have stated well pled violations of 15 U.S.C. § 1692e, § 1692e(2), § 1692e(5), and § 1692e(10). *See also Tatis,* 882 F.3d at 428.

In sum, the **net impression** of the FDCPA Defendants' overall acts and omissions, based on not only the experiences of the Plaintiffs but also the NCSLT Trusts themselves as well as the CFPB, demonstrate that Transworld, RLG, and PS have operated a "litigation-mill" through Transworld's Attorney Network on behalf of the NCSLT Trusts without any meaningful effort to

make sure the NCSLT Trusts even have the right to make any claims against the Plaintiffs (and the putative class members they represent). Such conduct and omissions state a claim for violations 15 U.S.C.A. § 1692e, § 1692e(2), § 1692e(5), and § 1692e(10). *Compare Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.,* 114 F. Supp. 3d 1342 (N.D. Ga. 2015).

<div style="margin-left:2em;">

iii. <u>Alternatively, Transworld's, RLG's, and PS's used False, Deceptive, or Misleading Representations or Means to Collect and Attempt to Collect Consumer Debts on behalf of the NCSLT Trusts and Their Affiliates</u>

</div>

Alternatively, pursuant to Fed. R. Civ. P. 8(d), Plaintiffs have stated well pled claims against Transworld, RLG, and PS for their actions and omissions in relation to pursuing debts with their knowledge of the Trust's inaccurate and incomplete records being insufficient to pursue debt collection actions. This misconduct also constitutes unfair or unconscionable means to collect or attempt to collect in violation of 15 U.S.C. § 1692f. FAC at ¶ 90.[9]

"To further that goal, the FDCPA [also] bars debt collectors from using 'unfair or unconscionable means' to collect a debt. 15 U.S.C. § 1692f." *Daubert v. NRA Grp., LLC*, 861 F.3d

---

[9]      The Eleventh Circuit explained the meaning of unfairness and unconscionability as follows:

> Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by "unfair" or "unconscionable." *See Beler,* 480 F.3d at 474 (With respect to Section 1692f, "[t]he phrase 'unfair or unconscionable' is as vague as they come.") The plain meaning of "unfair" is "marked by injustice, partiality, or deception." Significantly, in *Jeter,* we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has the tendency or capacity to deceive." *Jeter,* 760 F.2d at 1172. The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." BLACK'S LAW DICTIONARY 1526 (7th ed.1999).

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010)(FN omitted).

382, 393 (3d Cir. 2017). "The statute sets out a nonexclusive list of conduct that qualifies as unfair

or unconscionable." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014).

> Unquestionably, the scope of the FDCPA is broad. Indeed, § 1692f(1) prohibits "unfair or unconscionable means," regardless of the person to whom the communication was directed. The FDCPA similarly defines a "communication" expansively. A communication to a consumer's attorney is undoubtedly an indirect communication to the consumer. *Evory,* 505 F.3d at 773 (quoting § 1692a(2)); *see also Sayyed,* 485 F.3d at 232–33.

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

Under the well pled facts and circumstances presented as summarized in Argument § I(a)-

(b) *supra*, Plaintiffs believe alternatively that Transworld's, RLG's, and PS's conduct is

alternatively unfair or unconscionable and in violation of § 1692f. Debt collectors should not be

able to flood the state courts while utilizing incomplete and inaccurate records in their efforts to

collect debts they know they cannot prove are owed by the alleged defendants. FAC at ¶ 36.

Rather, given the FDCPA Defendants' knowledge of such efforts are unconscionable since no

reasonable person would believe that so-called professionals would proceed to attempt to collect

in such circumstances—i.e. their clients the NCSLT Trusts have verified in sworn pleadings in the

Delaware state courts that Transworld has unfairly proceeded on their behalf in state court

proceedings without a good faith basis to do so. *See* FN 8 *supra*.

Other cases have supported claims like those advanced here by the Plaintiffs. In *CFPB v.*

*Hanna,* 114 F. Supp. 3d at 1374, an action by the CFPB against a litigation mill debt collector, it

recognized litigation mill conduct focused on:

> collection activities in the context of the debt-buyer market in which these debt claims arise. As the Sixth Circuit has recognized, "Debt buyers now pay billions of dollars to purchase tens of billions of dollars of consumer debt each year, most of it charged-off credit card debt.... Debt buyers usually purchase bad debts in bulk portfolios, often in the form of a spreadsheet, and rarely obtain the underlying documents relating to the debt." *Stratton v. Portfolio Recovery Assocs., LLC,* 770 F.3d 443, 446 (6th Cir.2014). The Court takes judicial notice that debt buyers often

or may routinely lack evidence of the debt they seek to recover. With this backdrop, the Bureau's Affidavit Claims state a plausible claim under the FDCPA and CFPA. *See Sykes,* 757 F.Supp.2d at 424; *Keylard v. Mueller Anderson, P.C.,* No. 13 C 2468, 2013 WL 4501446, at *2 (N.D.Ill. Aug. 22, 2013) (holding that an allegation that a debt collector knew a service affidavit was false but nonetheless sought a default judgment based on the affidavit states a claim under § 1692f).

*Id.* at 1374.

Again, alternatively to their claims pursuant to § 1692e, the net impression of Plaintiffs' well pled facts of the FDCPA Defendants' overall acts and omissions demonstrate their lack of conscience and constitute an affront to the sense of justice. As such, Plaintiffs have stated proper alternative claims against Transworld, RLG, and PS for violations of 15 U.S.C.A. § 1692f based on their reckless practices of flooding the state courts with thousands of cases based upon, at best, flimsy supporting documents, which have the tendency or capacity to deceive not only the Plaintiffs but also the state courts. *Compare LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010).

### iv. Transworld's Motion to Dismiss Seeks to Dismiss Claims Not Even before the Court and Should be Denied; It's other theories

In its Motion to Dismiss (ECF. 60), Transworld seeks to have the Court first dismiss claims that are not even before the Court—i.e. claims based on out of court statements. *See* Transworld MTD (ECF. 60) at 23. Why is Transworld asking the Court to dismiss claims not even before it? On this basis alone the Court should simply DENY Transworld's Motion to Dismiss the FDCPA claims against it.

Next, without citing a single authority, Transworld seeks to dismiss Plaintiff's FDCPA claims based upon its disputed view and unsworn facts not before the Court at this stage of the proceeding. *Id.* at 23-24. Specifically, Transworld disputes the well pled facts and judgment entered in favor of Gosse. *Id.* In doing so it improperly invites the court to ignore the state court

judgment entered in favor of Gosse which this Court may not do. *See* Argument IV. A, *supra*. Its motion to dismiss on this basis should be denied.

Transworld also asks the Court to strike the verified, factual allegations from the Delaware state court on the basis the NCSLT Trust's claim for "injurious falsehood" in the Delaware state action was dismissed. *See* Transworld MTD (ECF. 60) at 25-26. Transworld's argument misses the point of the sworn factual admissions by the NCSLT Trusts in the Delaware action as applied to this action which does not assert a common law injurious falsehood claim. Here those sworn, verified facts in a light most favorable to the Plaintiffs demonstrates that they have properly pled plausible claims under the FDCPA and state law against the NCSLT Trusts and their affiliates including Transworld. At this stage, the Court is only considering whether or not Plaintiffs have stated well pled claims against the NCSLT Trusts and their co-defendant affiliates. There is no purpose to strike the allegations concerning the NCSLT Trusts' own public admissions. Finally, "a motion to strike under Rule 12(f) is within the court's discretion, [but] motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues"). *Wilson v. King*, No. CIV.A.06-CV-2608, 2010 WL 678102, at *2 (E.D. Pa. Feb. 24, 2010)(cleaned up). Here the NCSLT's sworn, verified statements are directly material to the Plaintiff's claims before the Court.

Finally, Transworld argues that its public Consent Order with the CFPB should also be disregarded by the Court even though the conduct and pattern of errors addressed by Plaintiffs' claims follows the unfair and deceptive debt collection abuse the Plaintiffs have sustained as alleged in their well pled First Amended Complaint subject to their FDCPA claims. *See* Transworld MTD (ECF. 60) at 27-28. In the context of the present posture of the case, other

courts have considered and applied public enforcement complaints to support the well pled allegations against the same financial service actors. *See e.g. Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 684 (S.D.N.Y. 2019)(applying and relying upon the CFPB's Consent Order with Transworld). Transworld's Consent Order with the CFPB supports Plaintiff's well pled claims and in a light most favorable to them, the Consent Order supports denying Transworld's effort to dismiss the Plaintiff's FDCPA claims against it.

Based on the foregoing and other arguments herein, Transworld's motion to dismiss and motion to strike should be DENIED.

### G. Plaintiff Gosse Has Stated a Proper Claim in Count III of the FAC Pursuant to the Dragonetti Act[10]

Under 42 Pa. Stat. and Cons. Stat. Ann. § 8351, *et seq.*, commonly referred to as the Dragonetti Act, a party who has been sued may bring an action against anyone:

> …who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> > (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
> > (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Stat. and Cons. Stat. Ann. § 8351.

The well pled allegations made by Plaintiff Gosse make clear that she is asserting such claims against all of the Defendants in this action because she has alleged that they all participated in the decisions that lead to the filing of the action against her and that the action was filed knowing

---

[10] Count III is not asserted on behalf of the Dettorres since the Dettorres State Action against them is still pending.

that the statements made in connection with that lawsuit were false. FAC at ¶¶ 23-28 and 40-46. She has adequately pled her claims against the parties who she has identified as involved "in the procurement, initiation or continuation of civil proceeding… which terminated in her favor". FAC at ¶ 47.

U.S. Bank's arguments on Plaintiff Gosse's claim under the Dragonetti Act all rely on its disputed view of the well pled facts and cannot serve as a basis to dismiss the claim. ECF 59 at pages 18-19. For example, U.S. Bank claims Gosse cannot plausibly allege a claim under the Dragonetti Act because U.S. Bank was not a party to the collection action and she cannot plausibly allege it took part in the procurement, initiation or continuation of the action. ECF. 59 at page 19. First, there is no requirement that a defendant subject to a Dragonetti Act claim have been a party to the underlying action. Second, Plaintiff has alleged the role and responsibility of U.S. Bank in procuring, initiating and continuing lawsuits, including the one against Gosse. *See* FAC at ¶¶ 19-21. U.S. Bank simply wants the Court to interpret the disputed facts as it sees them but that is not the standard for a motion to dismiss. See III, supra.

U.S. Bank next argues that it has not been alleged that it acted in a grossly negligent manner. ECF. 59 at 19-20. [11] This may be true because the Plaintiffs have alleged that U.S. Bank's culpability is greater than gross negligence since it acted intentionally. The law also provides liability against those who act without probable cause. § 8351(a). The FAC alleges that the action filed against Gosse and others were done without probable cause. *See* FAC at ¶ 22 (knew schedules

---

[11] See IV. B., Rule 9(b) also provides that allegations concerning a party's state of mind may be averred generally. If the Court finds it necessary to include a statement that Defendants state of mind has not been alleged any deficiency of this kind can be resolved by allowing an amendment for a general allegation.

(that are necessary to show ownership) did not exist), ¶ 23 (U.S Bank knew that affidavits being filed in lawsuits were false).

U.S. Bank's final salvo against Gosse's Dragonetti Act claim again is based on U.S. Bank's disputed view of the facts. U.S. Bank claims that there is no showing the action filed against Gosse was filed for an improper purpose because Plaintiffs concede that the actions were filed to collect debts owed. ECF 59 at Page 20. The FAC makes clear, however, that the debt collection actions filed, at the direction of U.S. Bank and TSI in the name of the NCSLT Trusts, did not legitimately seek to attempt to collect debts owed but instead were filed without a legal right to do so and based on false affidavits asserting facts the Defendants knew were untrue, FAC at ¶¶ 44-46, 49. Filing actions supported by false statements to which the party lacks any standing to assert the claims – as already determined by the state court (see Argument IV, A. supra) – establishes that the actions were filed for an improper purpose. FAC at ¶¶ 34, 44-47. These well pled facts, as well others in the FAC refute any reliance on the provisions of § 8351 relating to any reasonable beliefs relating to the claims asserted against Gosse in the Gosse State Action.

Based upon the foregoing, the motions to dismiss Gosse's Dragonetti Act claim under Count III of the FAC should respectfully be DENIED.

### H. Plaintiffs Have Stated Proper Claims for Civil Conspiracy Against All Defendants

Black's Law Dictionary defines a 'concerted action' as: 'An action that has been planned, arranged, and agreed on by parties acting together to further some scheme or cause, so that all involved are liable for the actions of one another.' Black's Law Dictionary, 10th ed. 2014). The Plaintiffs have alleged that all of the defendants have worked together towards the common goal

of asserting claims before Courts against consumers alleging they own certain debts when they do not. Here, this has been demonstrated and confirmed by a final unappealed judgment entered by the state court. See Exhibit D. Each Defendant has played a role in this effort as outlined in the FAC.

In addition to their roles, the Plaintiffs have alleged that each Defendant had knowledge of the scheme and continued to participate in the scheme. As shown here after the Gosse state court ruling and the filing of this action, the Defendants pursued the Dettores by filing a collection lawsuit against them. Plaintiff also submitted that the Defendants knowingly used false statements to support claims sufficiently alleges malice by the Defendants—especially since they are based in part on the verified statements of the NCSLT Trusts in the Delaware state action and statements and omissions advanced by the NCSLT Trusts in the Gosse State Action and the Dettores State Action themselves while under the control of U.S. Bank, Transworld, RLG, and PS.

The Defendants make various contentions that the Plaintiffs cannot show all of the details of how their interactions work. See e.g., NCSLT's Brief ECF 62 at pages 15-16. Many of their arguments involve factual issues inappropriate to address at this case's pleading stage when the issue for the Court is whether the complaint has provided Defendants sufficient notice of the claims and whether the claims are plausible. Given that the Defendants dive into factual issues that may arise from the claims, it is clear that the Defendants have more than adequate notice of the claims. As to the claims' plausibility, a state court has made a ruling that the Defendants lacked standing in action filed against Gosse.

Defendants also complain that the claim must fail if there is no underlying tort claim. See e.g., U.S. Bank's Brief ECF 59 at page 16. [12] If this is a requirement, Count III asserting a claim under the Dragonetti Act satisfies this requirement. The Pennsylvania Supreme Court has explained that the Dragonetti Act is a codification of the common law tort of malicious use of civil proceedings. *Raynor v. D'Annunzio*, 243 A.3d 41, 52–53 (Pa., 2020).[13]

U.S. Bank cites the decision in *Bro-Tech Corp. v. Thermax, Inc.*, 651 F.Supp.2d 378, 418–19 (E.D.Pa.,2009) without discussion of the facts of the case and states it has "cleaned up" the statements. ECF 59 at 17. However, while claiming to 'clean up,' U.S. Bank's omitted the court's additional statements in *Bro-Tech* supportive of Plaintiffs' claims here:

> Such claims must be based on a free-standing cause of action, and "may be proved by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose" alleged.

*Bro-Tech*, 651 F. Supp. 2d at 418–19.

The Plaintiffs have alleged that the combinations of acts and omissions constituting Defendants' enterprise was for the purpose of seeking to collect debts through the instigation of lawsuits against consumers that the Defendants knew they could not prove standing to pursue. FAC at ¶¶ 2, 10, 19-20, 34, 50-64, 102. Since the lawsuits would be against financially vulnerable people like the Plaintiffs and similar individuals, the Defendants knew the likelihood was that their

---

[12] US Bank also raises that the allegations as to malice are insufficient. As set forth in IV. B, that argument ignore that Rule 9(b) allows general averments for malice.

[13]  The FDCPA has also been recognized as a tort. See e.g. *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982)("The thrust of the Fair Debt Collection Practices Act is prevention of harassment and abuse as well as false, deceptive or misleading practices. It clearly falls into a traditional tort area analogous to a number of traditional torts"); *Ayres v. Nat'l Credit Mgmt. Corp.*, No. CIV.A. 90-5535, 1991 WL 66845, at *4 (E.D. Pa. Apr. 25, 1991) ("The FDCPA, in essence, creates a class of federal torts")(citing *Sibley*). U.S. Bank may contend that does not help the claim against it since it is not currently named in the FDCPA count. But the claim here is that there are no debts actually owned by the Trusts and therefore all of the parties qualify as debt collectors and there are no "creditors" before the Court. See 15 U.S.C.A. §1692a.

lawsuits accompanied by false or misleading declarations would go uncontested and the plan

would succeed—in part since their practice is to flood the state courts with many cases with flimsy

and unsupported documents to give the appearance to rights that they know they cannot prove by

their own admissions.  FAC at ¶¶ 32, 57-64.  *See also* ECF. 44-1

> At this stage, all that Plaintiffs are required is to show is:
>
> An agreement exists when there is a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme. *Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752, 771, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Howard Hess,* 602 F.3d at 254; *Gordon,* 423 F.3d at 208.
>
> A plaintiff may plead an agreement by alleging direct or circumstantial evidence, or a combination of the two. If a complaint includes non-conclusory allegations of direct evidence of an agreement, a court need go no further on the question whether an agreement has been adequately pled. *Ins. Brokerage,* 618 F.3d at 323 ("Allegations of direct evidence of an agreement, if sufficiently detailed, are ... adequate."); *see also Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.,* 530 F.3d 204, 219–20 & n. 10 (3d Cir.2008) (citing *Rossi v. Standard Roofing, Inc.,* 156 F.3d 452, 466 (3d Cir.1998)).

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99–100 (3d Cir. 2010).

In *Bro-tech* the Court found that the claim for conspiracy before it failed because the

"Plaintiffs' case is built on the theory that Defendants acted for their business advantage and

benefit. … Plaintiffs' evidence belies the notion that Defendants acted without a business motive,

but purely out of malice." *Bro-Tech*, 651 F. Supp. 2d at 419.  In contrast here, Plaintiffs' well pled

allegations before this Court, along with the Defendants' own prior admissions and public findings

against them, do not suggest any legitimate business advantage or benefit since their acts and

omissions are in violation of Federal and State laws including those subject to this action. *UPMC*,

627 F.3d at 99–100.

Plaintiffs' well pled allegations set forth a conspiracy that was designed to take advantage of

individual consumers and trying to sustain their efforts by using false and misleading affidavits.

These wrongful efforts directed others support the conspiracy claim alleged. Defendants' motions to dismiss the conspiracy claims should be DENIED.

### I. TSI's Motion to Strike Should Be Denied.

Defendant TSI includes a motion to strike in its motion to dismiss. TSI seeks to strike any reference to the factual allegations from the First Amended complaint based on the Delaware Chancery Court's dismissal of an injurious falsehood claim in that case, [14] and, any reference to factual allegations from the CFPB Proposed Consent Judgment with the NCSLT Trusts on account of the ruling in the Delaware District Court that the Trust's owners have no authority to act in the Trust's name without acting through the Trust's Owner Trustees, are inherently flawed.[15] (Dkt No. 60 at 25-29; Dkt No. 59 at 15, 17).

As an initial matter, the Delaware Chancery Court's July 13, 2020 opinion and the Delaware District Court's May 31, 2020 opinion are not final orders and thus there is no basis to strike the factual allegations on the basis of res judicata or collateral estoppel. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). Moreover, the allegations in the FAC based on factual assertions made in those two cases are not immaterial, impertinent, and prejudicial to the Defendants. Fed.R.Civ.P.12(f). The factual allegations there are substantially similar to the facts here, since this class action is based on the Defendants' unfair and deceptive acts and practices in the direct and indirect collection under the color of the law for sums not owed by the Plaintiffs, with actual knowledge that the declarations and affidavits submitted to support those

---

[14] *In re Nat'l Collegiate Student Loan Trusts Litig.*, Delaware Chancery Court, Case No. 12111-VCS [2020 WL 3960334 (Del. Ch. July 13, 2020)].

[15] *See CFPB v. Nat'l Collegiate Master Student Tr.*, 2020 WL 2915759, at *3 (D. Del. May 31, 2020); *In re Nat'l Collegiate Student Loan Tr. Litig.*, 2020 WL 5049402, at *37–40.

claims on behalf of the NCSLT Trusts were false. FAC at ¶¶ 23, 47. The striking of a particular claim based on these facts by the Delaware Court does not mean that the facts are untrue. They may simply not support that particular claim.

Under Rule 12(f), a court possesses considerable discretion in disposing of a motion to strike. *Krisa v. Equitable Life Assur. Soc.,* 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000)(citing *River Road Devel. Corp. v. Carlson Corp.–Northeast,* No. 89–7037, 1990 WL 69085 at *2 (E.D.Pa., May 23, 1990)). Despite this, motions to strike are disfavored and will ordinarily be denied because the practical difficulty of deciding cases without a factual record is a drastic remedy that should be used only in situations where striking parts of the complaint are needed to carry out justice. <u>*Krisa*</u>, 109 F. Supp. at 319. That is not the case here. In the ruling by the Delaware Chancery Court, the court did not make any factual determinations about the Verified Amended Complaint since the Chancery Court's ruling was on a Rule 12(b)(6) motion to dismiss. *See In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334 at *3. As to the case with the CFPB, the factual allegations in the Proposed Consent Judgment are based on findings from a CFBP investigation brought against the Trusts, not mere allegations. *CFPB*, 2020 WL 2915759, at *2. Although the court may have ruled that the Trust Owners did not have the authority to execute the Proposed Consent Judgment on behalf of the Trusts, the Delaware District Court did not make any decision or adjudication about the factual allegations alleged in the complaint. *CFPB*, 2020 WL 2915759, at *6. Thus, in light of the fact that motions to strike are disfavored since courts should restrain from evaluating the merits of a defense where the factual background is largely undeveloped, the Plaintiff's reliance on the facts in both cases to support their allegations is justified. *Cipollone v. Liggett Grp., Inc.,* 789 F.2d 181, 188 (3d Cir. 1986).

## V.     CONCLUSION

For the above stated reasons, Counts I, III and IV of Plaintiffs' amended complaint plausibly allege claims against the Defendants and their motions to dismiss should be denied. Also, the motion to strike statements made in a verified complaint should not be stricken.

Date: March 1, 2021                    Respectfully submitted,


                                       */s/Robert P. Cocco*
                                       Robert P. Cocco, Esq.
                                       Robert P. Cocco, P.C.
                                       Attorney I.D. No. 61907
                                       1500 Walnut St., Ste. 900
                                       Philadelphia, PA  19102
                                       (215) 351-0200
                                       bob.cocco@phillyconsumerlaw.com

                                       Christina L Henry, Esq.
                                       Henry & DeGraaff, P.S.
                                       787 Maynard Ave S
                                       Seattle, Washington, 98104
                                       Tel 206/330-0595
                                       Fax 206-400-7609
                                       chenry@HDM-legal.com

                                       *Admitted Pro Hac Vice*


                                       Scott C. Borison, Esq.
                                       1900 S. Norfolk St. Suite 350
                                       San Mateo CA 94403
                                       Scott@borisonfirm.com
                                       301-620-1016
                                       Fax (301) 620-1018
                                       *Admitted Pro Hac Vice*

                                       Counsel for Plaintiffs and the Classes

## CERTIFICATE OF SERVICE

I, Robert P. Cocco, Esquire, hereby certify that on this 1st day of March 2021, a true and correct copy of the foregoing Plaintiffs' Omnibus Briefing response to Defendants' Motions to Dismiss/Strike was served via ECF upon all parties through their counsel of record.

**ROBERT P. COCCO, P.C.**

/s/ Robert P. Cocco
Robert P. Cocco, Esquire
Co-counsel for Plaintiffs