## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHELSEY GOSSE, et al, | ) | Case No. 3:20-cv-01446-RDM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Hon. Robert D. Mariani |
| v. | ) | |
| | ) | |
| TRANSWORLD SYSTEMS, INC., et al, | ) | Electronically Filed |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PORTNOY SCHNECK L.L.C.'S MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Portnoy Schneck, L.L.C. ("Portnoy") submits this memorandum in support of its motion to dismiss the First Amended Complaint ("FAC") filed by plaintiffs, Chelsey Gosse ("Gosse") and Christopher and Lori A. Dettore (the "Dettores") (collectively, "Plaintiffs") (the "Motion", Dkt. # 66).

## I. INTRODUCTION

Plaintiffs are two current and one former defendant in separate student loan collection proceedings who have now sued the various parties they believe are responsible for filing the collection actions against them. Portnoy is a law firm.

Plaintiffs sued Portnoy for its role as attorneys on behalf of its trust-client in allegedly conspiring to bring a single collection suit against the Dettores in 2020 at the direction of one of the trust's service providers, Transworld Systems Inc.

("TSI").   Plaintiffs  fault  Portnoy  for  filing  the  collection  complaint  with  a
verification  from  TSI's  employee  containing  allegedly  false  statements  about
Plaintiffs' student loan.   Plaintiffs also contend the collection complaint failed to
inform Plaintiffs that the Consumer Financial Protection Bureau ("CFPB") has
claimed  in  unrelated  proceedings  that  TSI  may  not  have  had  complete  loan
documentation for every single loan it serviced during a 1½-year period that ended
in 2016, and that TSI attested in affidavits (during that same period) to having
knowledge about loan records its affiants had not reviewed or did not possess.

Gosse's  claims  against  Portnoy  should  be  dismissed  because  she  has  not
alleged any misconduct by Portnoy against her.   And as to both Gosse and the
Dettores, all of their claims against Portnoy should be dismissed for the same reasons
set forth in co-defendants' motions to dismiss.   Accordingly, Portnoy adopts the
arguments for dismissal advocated by TSI and National Collegiate Student Loan
Trust 2007-3 ("NCSLT 2007-3") and National Collegiate Student Loan Trust 2007-
4 (NCSLT 2007-4").   *See* Dkt. ## 60 and 62.

Further, as for Plaintiffs' state law claims against Portnoy that are based upon
statements contained in the pleadings and verification filed in the state court
collection action against the Dettores, those claims are absolutely barred by judicial
privilege.   Portnoy is also immune from liability for that and similar conduct under
Pennsylvania's intracorporate conspiracy doctrine, as set forth below.

2

## II. RELEVANT PROCEDURAL HISTORY

On December 3, 2020, Plaintiffs filed the FAC which, *inter alia*, added Portnoy as an additional defendant to this ongoing proceeding.  Dkt. # 44.[1]  The FAC asserts claims arising under (Count I) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., (Count II) the Fair Credit Extension Uniformity Act ("FCEUA"), (Count III) Wrongful Use of Civil Proceedings (the "Dragonetti Act"), 42 Pa.C.S.A. § 8351 *et seq*., and (Count IV) Civil Conspiracy.

Co-defendants TSI, NCSLT 2007-3, NCSLT 2007-4, U.S. Bank, N.A., and Ratchford Law Group, P.C. ("Ratchford"), have already filed motions to dismiss the FAC.  *See* Dkt. ## 52–55.  As of this filing, those motions have not yet been decided.

Pursuant to a Waiver of the Service of Summons (Dkt. # 49), setting its deadline to file and serve an answer or Rule 12 motion 60 days from December 18, 2020, Portnoy filed and served its Motion to Dismiss the FAC on February 16, 2021. Dkt. # 66.  This memorandum is timely filed pursuant to LR 7.5.

## III. FACTS

Plaintiffs allege Portnoy and Ratchford are law firms that file debt collection lawsuits to collect on behalf of their client-trusts.  *See* FAC ¶ 10c.[2]  Plaintiffs further

---

[1] On March 1, 2021, without prior notice or leave of Court, Plaintiffs filed what counsel later represented to be a duplicate of the First Amended Complaint with typographical corrections.  *See* Dkt. # 67.  Reserving all rights to object to that filing, Portnoy's references to the FAC herein are made to the First Amended Complaint filed on December 3, 2020 (Dkt. # 44).

[2] *See also* FAC ¶ 13. ("[Ratchford] and [Portnoy] seek to collect defaulted consumer debts on behalf of the NCSLT Trusts through litigation an in the mails.").

contend the two unaffiliated firms are within an "Attorney Network business unit," which is "operated and managed" by TSI.  *Id*. at ¶¶ 10c.[3]  Plaintiffs allege TSI actually controls the firms' actions.  The FAC avers:  "[Ratchford] and [Portnoy] agree to terms of an agreement with [TSI] that gives [TSI] the exclusive right to direct and control their actions."  *Id*. at ¶ 13d; *see also id*. at ¶¶ 10 and 37.

Pursuant to those alleged agreements, Portnoy represented NCSLT 2007-4 in a suit filed by verified complaint against the Dettores in Luzerne County, Pennsylvania (the "Collection Action").  *Id*. at ¶48.  At the time the Collection Action was filed, Portnoy was allegedly aware of a September 18, 2017 Consent Order between TSI and the CFPB in a proceeding entitled *In Re Transworld Sys.*, No. 2017-CFPB-0018 (the "Consent Order").  FAC ¶ 59.  According to Plaintiffs' characterization of the Consent Order, NCSLT 2007-3 and NCSLT 2007-4—with assistance from TSI—filed lawsuits and affidavits without full loan documentation between November 1, 2014 and April 25, 2016.  *Id*. at ¶ 103.

The FAC contends TSI, acting through its Attorney Network—in other words, through Portnoy–"falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted [sic] that [loan schedules] were genuine loan documents and that the attorney, affiant or declarant

---

[3] *See also* FAC ¶ 37 ("Transworld retains a national network of law firms and attorneys to pursue delinquent borrowers by filing collection lawsuits in state courts.  These firms include [Ratchford] and [Portnoy].").

had personal knowledge of their authenticity." *Id*. at ¶ 24.  Plaintiffs further allege a verification executed by a TSI employee and filed with the Collection Action complaint falsely represented the following: (1) there was an outstanding balance on a loan owned by NCSLT 2007-4, (2) the loan had been transferred and assigned to NCSLT 2007-4, and (3) TSI is record custodian of loan documents.  *Id*. at ¶ 49a-d.

Among the several causes of action in the FAC,[4] Plaintiffs assert FCEUA claims (Count II) based on their belief Portnoy violated the FDCPA when it allegedly "used false, deceptive or misleading representations or means in connection with the collection of consumer debts," by (1) "communicating with the Plaintiffs … and threatening and/or actually pursuing litigation and demanding sums not legally due[.]"  *Id*. at ¶¶ 89 and 94; or (2) alternatively, by undertaking "actions and omissions … in relation to pursuing debts" with knowledge that relevant loan records are incomplete or insufficient and with the knowledge that NCSLT 2007-4's ownership of the Dettores' loan could not be proven.  *Id*. at ¶¶ 61, 63, 93 and 94.

Plaintiffs also assert Civil Conspiracy claims (Count IV).  They contend Portnoy "through formal and informal agreements" conspired with the other defendants in "falsely filing collection lawsuits" without probable cause and refusing to terminate the lawsuits, knowing they were unable to prove the necessary facts to

---

[4] As noted, the FAC contains 4 counts.  Counts I and III are not addressed in detail in this Memorandum, except by incorporation of co-defendants arguments as explained above.

support the claims asserted in those lawsuits, failing to inform Plaintiffs that, according to the CFPB, TSI had committed "a number of offenses" for a 1½ year period ending in April 2016, and failing to advise Plaintiffs that defendants' alleged conduct was unlawful. *Id*. at ¶¶ 102-103.

The FAC similarly contends certain defendants conspired to withhold from Plaintiffs information concerning an action for "injurious falsehood" that was asserted against TSI in a Delaware Chancery Court proceeding and later dismissed by that court on dispositive motion. *See* FAC ¶¶ 102-103. However and notwithstanding Plaintiffs' subsequent misrepresentations to the contrary, the FAC does *not* allege Portnoy was ever aware of that proceeding or the now-rejected "injurious falsehood" claim at any time prior to Plaintiffs' filing of the FAC. *See and compare* ¶¶ 57, 58, 60 and 104 (alleging only U.S. Bank, TSI, NCSLT 2007-3, and NCSLT 2007-4 were aware of the Chancery Court proceeding) with Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss (Dkt. # 68) at p. 31, fn. 7 and p. 33 (falsely claiming the FAC alleges Portnoy knew and disregarded "admissions" in the Delaware Chancery Court proceedings).

## III. STATEMENT OF QUESTIONS INVOLVED[5]

1.     Are Plaintiffs' FCEUA and civil conspiracy claims absolutely barred by judicial privilege?  *Answer*: *Yes; the judicial privilege bars Plaintiffs' FCEUA and civil conspiracy claims arising from Portnoy's communications issued in the regular course of a judicial proceeding.*

2.     Is Portnoy immune from liability for civil conspiracy under the intracorporate conspiracy doctrine?  *Answer*: *Yes; Plaintiffs have not alleged Portnoy acted outside the scope of its representation, and all of Portnoy's conduct within the scope of its representation is immune from liability for Civil Conspiracy under the intracorporate conspiracy doctrine.*

## IV. ARGUMENT

### A.     Motion To Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[5] As noted above, Portnoy also adopts the Statements of Questions Involved and related arguments for dismissal advocated by co-defendants TSI and NCSLT 2007-3 in memoranda filed in support of their Motions to Dismiss.  *See* Dkt. ## 60 and 62.

In deciding a motion to dismiss, the court may consider not just the allegations in the complaint, but any "(1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto." *Bommarito v. AAS Debt Recovery, Inc.*, 2012 WL 1593121, *1 (W.D. Pa. May 4, 2012).

## B.    Gosse Has Not Alleged Any Misconduct By Portnoy

Gosse has not alleged any misconduct by Portnoy against her.  As alleged in the FAC, the predicate collection proceedings against Gosse were prosecuted by a different law firm who is also a co-defendant in this action.  Consequently, any and all claims asserted by Gosse against Portnoy in the FAC must be dismissed.

## C.    Plaintiffs' FDCPA and Dragonetti Act Claims Must Be Dismissed

Lying at the heart of Plaintiffs' FDCPA and Dragonetti Act claims against Portnoy and the other co-defendants is Plaintiffs' contention that loan documents, including loan schedules, are missing.  The memoranda co-defendants filed in support of their motions to dismiss the FAC demonstrate those claims are baseless. There are no missing documents.  Indeed, the documents filed in the Collection Action establish a right and cause of action on behalf of NCSLT 2007-4 against the Dettores for an unpaid student loan debt.  Accordingly, for all of the reasons set forth in co-defendants' motions, Plaintiffs' FDCPA and Dragonetti Act claims against Portnoy should be dismissed.  *See* Dkt. ## 60 and 62.

8

**D.    Plaintiffs' FCEUA Claims Must Be Dismissed[6]**

Plaintiffs' FCEUA claims arise from the information purportedly communicated through the Collection Action Portnoy filed against the Dettores allegedly at TSI's direction on behalf of Portnoy's client trust.  In other words, everything that Portnoy allegedly misrepresented to Plaintiffs was communicated through the complaint or verification and documents attached to it in the Collection Action.[7]  No liability can arise from those communications because they were material to the relief sought in the pleadings filed by the Portnoy law firm in the regular course of judicial proceedings and, as such, are subject to an impenetrable judicial privilege.

"All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." *Binder v. Triangle Publications, Inc.*, 275 A.2d 53, 56 (Pa. 1971); *see also Breslin v. Morgenstern*, 2018 WL 4002857, *6 (M.D. Pa. Aug. 22, 2018) (recognizing absolute immunity for communications which are issued in the regular course of judicial

---

[6] Realizing their FCEUA claims cannot survive co-defendants' pending motions to dismiss, Plaintiffs indicated in a memorandum filed on March 1, 2021 that they "will not be pursuing their claim under Count II in the FAC pursuant to [the FCEUA[.]"  *See* Omnibus Opposition to Defendants' Motions to Dismiss (Dkt. # 68) at p. 10, fn. 2.  While it is not certain that this acknowledgment encompasses Plaintiffs' FCEUA claims asserted against Portnoy and Ratchford, Portnoy addresses the FCEUA claims herein out of an abundance of caution, and also because the argument for dismissal of the FCEUA claims pursuant to judicial privilege is equally applicable to the dismissal of Plaintiffs' Civil Conspiracy claims, as discussed *infra*.

[7]   The FAC does not identify or describe *any* pre-suit or other out-of-court communications between Portnoy and the Dettores.

proceedings and which are pertinent and material to the redress or relief sought). The privilege applies regardless of whether a party, witness, attorney, or judge makes the statements. *Jacovetti Law, P.C. v. Shelton*, 2020 WL 1984883, *2 (E.D. Pa. Apr. 27, 2020) citing *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). Pennsylvania affords this privilege so that "[a]ll persons involved in a judicial proceeding are encouraged ... to speak frankly and argue freely[.]" *Weinik v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 2020 WL 3892963, *6 (E.D. Pa. July 10, 2020) (quoting *Smith v. Griffiths*, 476 A.2d 22, 24 (Pa. Super. 1984)).

Although the privilege is more commonly applied in defamation claims, Pennsylvania state courts have applied the privilege to a wide variety of torts. *See Richburg v. Palisades Collection LLC*, , 2007 WL 2745807, *3–4 (E.D. Pa. Sept. 7, 2007) (medical malpractice claims); *Brown v. Delaware Valley Transplant Program*, 539 A.2d 1372 (1988) (civil conspiracy, mutilation of a corpse, and assault and battery claims); *Bell v. George*, 2003 WL 22250350, *2 (Pa.Com.Pl. Sept. 24, 2003) (fraud claims). As have the federal courts sitting in Pennsylvania. *See Parker v. Learn the Skills Corp.*, 2006 WL 759693, *5 (E.D. Pa. Mar. 23, 2006) (civil conspiracy); *Schwartz v. OneWest Bank, FSB*, 614 Fed. App'x 80, 81–82 (3d Cir. 2015) (UTPCPL and FCEUA claims). In fact, courts have applied the privilege in circumstances exactly like this one in which FCEUA claims against an attorney arise on purported FDCPA violations for allegedly-improper statements contained in a

collection complaint and subsequent pleadings and exhibits. *See Bronstein v. Bayview Loan Servicing, LLC*, 2020 WL 703652, *7 (E.D. Pa. Feb. 11, 2020).

This immunity covers all "communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Parker*, 2006 WL 759693 at *5 (quoting *Post v. Mendel*, 507 A.2d 351, 353 (1986)); *see also  Weinik*, 2020 WL 3892963 at *6.  Accordingly, where, like here, a claim "arises from statements contained within defendants' statement of claim, a filing necessary to commence a debt collection action in Philadelphia Municipal Court … it is a communication issued in the regular course judicial proceedings, and thus covered by the judicial privilege." *See Richburg*, 2007 WL 2745807 at *4; *see also Breslin*, 2018 WL 4002857 at *6; *Smith v. Griffiths*, 476 A.2d at 24 ("The law is now well-established that all communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege[.]") (internal quotations and citations omitted); *see also Parker*, 2006 WL 759693 at *5 (applying judicial privilege to bar Civil Conspiracy claim arising from statements made in motion to dismiss filed by counsel).

The only activity by Portnoy alleged to violate the law is the filing of a verified Complaint with exhibits against the Dettores in the Collection Action which allegedly misrepresented there was an outstanding balance on the Dettores' loan, or that the loan had been assigned to NCSLT 2007-4, or that TSI was the record

11

custodian of loan documents. FAC ¶ 49a-d. Even assuming for purposes of this Motion that Portnoy or its attorneys abused their ethical responsibilities by filing the verified complaint knowing the statements therein were false or with knowledge the claims could not be proven, Porntoy's communications were facially pertinent to the Collection Action, and, consequently, are accorded an absolute privilege which cannot be destroyed by such alleged abuse. *See Binder*, 275 A.2d 53, 56 (Pa. 1971); *Breslin*, 2018 WL 4002857 at *6. Indeed, it appears Plaintiffs now concede the issue and agree with this conclusion. *See* fn. 6, *supra*.

## E.     Plaintiffs' Civil Conspiracy Claims Must Be Dismissed

As shown above, judicial privilege also bars Plaintiffs' Civil Conspiracy claims against Portnoy. *See, e.g., Parker*, 2006 WL 759693 at *5 (applying judicial privilege to bar Civil Conspiracy claim arising from statements made in motion to dismiss filed by counsel).[8] In addition, Plaintiffs' Civil Conspiracy claims fail for each of the reasons set forth by TSI, NCSLT 2007-3, and NCSLT 2007-4 argued in support of their Motions to Dismiss (Dkt. ## 60 and 62), as adopted herein. Further

---

[8] Plaintiffs will likely argue two cases bar application of judicial privilege to Civil Conspiracy claims. *See* Omnibus Opposition to Defendants' Motions to Dismiss (Dkt. # 68) at pp. 24, citing *McGuire v. Shubert*, 722 A.2d 1087, 1091 (Pa. Super. Ct. 1998) and *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 535 (2017). Both cases are inapposite. *Feierstein* involved a claim under Dragonetti Act, *not* Civil Conspiracy. And *McGuire* does not bar application of the doctrine to Civil Conspiracy claims as Plaintiffs suggest. The result in *McGuire* merely acknowledges that the privilege is applicable only for conduct committed in the regular course of judicial proceedings and which is pertinent and material to the redress or relief sought. But all of Portnoy actions at issue were alleged to have been done in the regular course of proceedings on the Collection Action, for which the privilege plainly applies.

still, the "intracorporate conspiracy doctrine" applies on the facts alleged in the FAC and immunizes Portnoy entirely from liability for Civil Conspiracy.

The intracorporate conspiracy doctrine states an entity is incapable of conspiring with one who acts as its agent. *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999); *see also Rutherfoord v. Presbyterian-University Hosp.*, 612 A.2d 500, 508 (Pa. Super. 1992) ("[A] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves[.]"). As an extension to this concept, "it is well-settled that [] an attorney's conduct in providing legal services to his client cannot serve as the basis for a conspiracy claim. *Dille v. Geer*, 2020 WL 7624835, *18 (E.D. Pa. Dec. 22, 2020) citing *Heffernan*, 189 F.3d at 413. Indeed, per *Heffernan*, there is a "ban on conspiracies in the attorney-client context[.]" *Heffernan*, 189 F.3d at 413.

Plaintiffs contend all of Portnoy's alleged conspiratorial misconduct occurring in the regular course of the Collection Action was committed at the control and direction of others and in the context of an attorney-client relationship. In particular, Plaintiffs allege Portnoy acted pursuant to TSI's direction and control when it filed the Collection Action. *See* FAC ¶¶ 10, 13d, and 37. Likewise, Plaintiffs contend Portnoy was NCSLT 2007-4's counsel, and filed the Collection Action on its behalf. *Id*. at ¶¶ 13 and 48. In either case, Portnoy's alleged conduct in carrying out the defendants' alleged common wish to sue Dettores on false facts

or documents, even if true, is immune from civil conspiracy liability under the intracorporate conspiracy doctrine.  This is the correct result under the facts alleged, particularly where, as here, the FAC does not allege Portnoy acted for a personal benefit, or otherwise outside the scope of its representation when it filed the verified complaint in the Collection Action.

## **V. CONCLUSION**

For the foregoing reasons, Portnoy Schneck, L.L.C., requests this Court grant its motion to dismiss the First Amended Complaint.

Dated: March 2, 2021                    Respectfully submitted,

*/s/ Justin H. Homes*
Justin H. Homes, Esq. (PHV)
SESSIONS, ISRAEL & SHARTLE, L.L.C.
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
Email:  jhomes@sessions.legal

Aaron R. Easley, Esq. (#73683)
SESSIONS, ISRAEL & SHARTLE, L.L.C.
3 Cross Creek Drive
Flemington, NJ 08822
Telephone: (908) 237-1660
Facsimile: (908) 237-1663
Email:  aeasley@sessions.legal

*Counsel for Portnoy Schneck, L.L.C.*

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 2, 2021, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiffs' counsel as described below:

Robert P. Cocco                          Scott C. Borison
Robert P. Cocco, P. C.              1900 S. Norfolk St. Suite 350
1500 Walnut Street, Suite 900    San Mateo, CA  94403
Philadelphia, PA 19102

Christina L. Henry
Henry & DeGraaff, PS
787 Maynard Ave S
Seattle, WA 98104

*/s/ Justin H. Homes*