## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHELSEY GOSSE, *on her own behalf and on behalf of other similarly situated persons*,<br><br>     Plaintiff,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC.;<br>U.S. BANK, N.A.;<br>RATCHFORD LAW GROUP, P.C.;<br>NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2007-3,<br>     Defendants. | Case No: 3:20-cv-01446-RDM-MCC<br><br><br><br><br>(JURY DEMAND) |

**PLAINTIFF'S BRIEF IN SUPPORT OF OBJECTION TO
MAGISTRATE MARTIN CARLSON'S ORDER OF NOVEMBER 8, 2022,
GRANTING IN PART DEFENDANTS' MOTION TO STAY AND DENYING
PLAINTIFF'S MOTION TO MODIFY CASE MANAGEMENT ORDER (ECF. 136 )**

## I.  INTRODUCTION

Defendants have moved for summary judgment by narrowing the claims down to "ownership issues" and refusing information the District Court previously deemed relevant concerning the role of each defendant in bringing the underlying collection actions. Because Defendants have proffered information in support of their summary judgment motion from third parties, Cognition, BPA, and PHEAA, Plaintiff has sought to subpoena these third parties for testimony and documents but have been blocked by the parties' inability to agree on what encompasses "ownership".

1

Previously, the Magistrate Judge filed a report and recommendation ("R&R") proposing a streamlined case, excluding any discovery and instead proceeding directly to summary judgment. See ECF 82 at p. 4 ("we recommend that the remaining defendants be directed to submit motions for summary judgment specifically addressing the issue of whether the defendants had acquired the rights to these loans at the time they filed these state court debt collection actions.") Plaintiff objected and this Court sustained the objection. ECF 90, ¶ 6.b. ("Plaintiffs object to the R&R's recommendation that this case proceed to the summary judgment stage without discovery." (Doc. 86 at 1; Doc. 86-1 at 5.) "Based on the R&R's rationale for the lack of need for discovery and the Court's analysis set out in the preceding paragraph, this objection is SUSTAINED.") Now, the Magistrate Judge's Order of November 8, 2022 (ECF 136) (the "Order") places Plaintiff in the position of opposing a motion for summary judgment without necessary discovery and remains hamstrung by the Order's still ambiguous "ownership" restrictions on her discovery leading only to gamesmanship, not efficiency.

The discovery's curtailment began with limiting Plaintiff's written discovery to no more than 30 interrogatories, 30 requests for production, and 30 requests for admissions total for four (4) separate defendants, all deriving from Defendants' unilateral request to the Magistrate in the initial scheduling Order

that discovery "… be limited to the Trust's acquisition of Plaintiff's loan" (ECF 106). Defendants have sought to capitalize on this effort by then claiming Plaintiff's discovery cannot go beyond trust related agreements and excel spreadsheets it has produced that are facially disparate from the Schedule 1 described in said agreements and then adding insult to this injury by filing a premature summary judgment motion. Thus, Plaintiff is severely prejudiced by the Order of limiting discovery to undefined "ownership" issues again feeding Defendants' discovery strategy of block and delay.

Plaintiff's objection herein to the Order rests upon two (2) arguments already raised to the Court in her responsive briefing to Defendants' summary judgment motion and Motion to Stay (ECF nos. 124-127, 120, respectively).

FACTUAL AND PROCEDURAL BACKGROUND

**A. Initial Proceedings**

1.     Following initiation of this action, this Court ruled on the defendants' motions to dismiss and to strike on July 13, 2021, with a report and recommendation to grant the motions to dismiss in part, denied in part and deferred in part. ECF No. 82.

2.     On May 3, 2022, the District Court adopted part of this Court's report and recommendation and denied part, dismissing National Collegiate Student Loan Trust 2007-4 from the action and remanding. The District Court found that the

Plaintiff and putative class members made plausible claims against the Defendants for their direct and/or indirect role in collection and enforcement activities for student loan debts for all defendants under the Dragonetti Act and Conspiracy, and under the FDCPA for defendants TSI and the Ratchford Law Group. ECF No. 90.

3.   The defendants answered the amended complaint on May 17, 2022. ECF Nos. 92, 94, 95, 97 and 99.

4.   This Court issued a scheduling order on June 3, 2022. ECF No. 104.

5.   Thereafter, Defendant National Collegiate Student Loan Trust 2007-3 filed a letter with the court seeking clarification to limit discovery to the discrete issue of whether the National Collegiate Student Loan Trust 2007-3 owns Plaintiff's loan with a right to request a stay of discovery after the first 90 days. ECF no. 105.

6.   The Court updated the Case Management Order on June 7, 2022 (ECF No. 106), adding footnote 1 to incorporate the Defendants' requests in ECF No. 105.

**B. Discovery Disputes and Attempts to Meet and Confer**

7.   On June 20, 2022, the parties exchanged their initial disclosures.

8.   On July 26, 2022, Plaintiff served her first set of written discovery requests to US Bank, to Defendant TSI on July 27, 2022, to Defendant NCSLT 2007-3 on August 18, 2022, and the to the Ratchford Law Group, PLLC on September 28, 2022.

9.   On August 18, 2022, US Bank served their responses and objections to Plaintiff's discovery.

10.   Between September 3, 2022, and September 28, 2022, Plaintiff's counsel and Defendants' counsel met and conferred three (3) times and exchanged a total of six (6) letter regarding Plaintiff's claimed deficiencies in Defendants' responses to written discovery. See **Exhibits 1-6**.

11.   On September 28, 2022, counsel for the Plaintiff filed a Motion to Amend/Correct the earlier updated Case Management Order (ECF No. 106) to enlarge the scope of Plaintiff's written discovery requests by (ECF No. 111) which would have resulted in sixty (60) interrogatories and requests for production total for the four (4) defendants[1] and forty (40) requests for admission.

12.   Thereafter, on October 3, 2022, counsel for U.S. Bank, the Trust, and TSI met to confer about the 30(b)(6) deposition topics served on the respective parties. After the meeting, the Plaintiff revised the deposition topics and served those on the parties.

13.   On or about October 3, 2022, and October 5, 2022, the Trust, and TSI amended their respective initial disclosures notably disclosing Cognition Financial

---

[1] Since filing of said Motion, Plaintiff stipulated with Defendants to dismiss Defendant law firm Portnoy Schneck on October 3, 2022 (ECF no. 118) thus reducing the total number of enlarged discovery requests sought by those directed to that dismissed defendant.

for the first time in the litigation as a person with knowledge of relevant facts. U.S. Bank had identified Cognition in their initial disclosures but limited to "Guarantee of student loans at issue in this case".

14.     No protective order has been entered by the Court with respect to any of the documents requested by the Plaintiffs, but all of the defendants have refused to respond to numerous written discovery requests and have informed the Plaintiff that they will not respond to numerous topics in the deposition notices

### C. Necessary Discovery that is Not Currently Available to Plaintiff

15.     At issues in this case is whether TSI and the Ratchford Law Group filed false or misleading documents in state court to collect against thousands of Pennsylvania residents for debt that they could not prove was owed on behalf of the National Collegiate Student Loan Trust 2007-3 and whether the Trusts and U.S. Bank knowingly facilitated those collection actions. This relates to the willfulness of the Defendants' actions against Gosse and the proposed class members.

16.     The verified state court complaints filed against Gosse with attached exhibits attested to the facts alleged therein against Gosse. Thereafter, Gosse filed preliminary objections to the amended Complaint on the sole issue of whether TSI had standing to prosecute the action due to a lack of proof that 2007-3 owned Plaintiff's loan and received an order on January 3, 2020, sustaining the objections and dismissing the case. *See* ECF no. 129-2, pages 1-3.

17.   At issue in this case is whether TSI's employees' affidavits/verifications filed in Pennsylvania state courts to obtain judgments in favor of the NCSLTs and used to collect against thousands of Pennsylvania residents were false or misleading and whether, after the CFPB found the affidavits/verifications to be false and misleading, and all Defendants were on actual notice, if Defendants took corrective action to ensure that the courts were made aware of the falsity of the verifications/affidavits and that future verifications/affidavits did not contain false and misleading information.

18.   Determining whether the affidavits/verifications were false, or misleading depends on the affiants' personal knowledge when they made the statements, documents reviewed, authentication of those documents, and other detailed facts regarding the chain of title of the loans and documents relating to the alleged credit agreements.

19.   In the state court action, the court granted Gosse's motion to dismiss the action based on the Trust's lack of standing. See ECF 129-2 at pages 1-3. This order is final and unappealed. If the order is given preclusive effect based on issue preclusion or collateral estoppel, the Defendant Trust's motion should be denied as a matter of law, and it may be the basis for applying the doctrine nonmutual offensive collateral estoppel for the class as well. See *U.S. v. Mendoza*, 464 U.S. 154, 159, n. 4 (1984) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)

("Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party.")

20.    If the motion is not denied based on collateral estoppel or based on Gosse's motion to strike the declarations presented in support of the motion, the proper adjudication of Plaintiff's claims also requires the discovery of facts related to what the Defendants knew about the affidavits/verifications, when they knew it, and the affiants' knowledge.

21.    In the affidavits/verifications filed in the state court collection actions, the TSI employee, Aaron Motin, claimed personal knowledge of material facts and claims made by the Trust in the allegations in the Complaint including an exhibit attachment titled "Pool Supplement, JP Morgan Chase Bank, N.A." The Pool Supplement references other documents titled either "Schedule 1." Defendants claim that these schedules include the names of individuals whose loans were sold to the NCSLTs. Yet, none of the documents produced by the Defendants in discovery to date are titled either "Schedule 1," despite Plaintiff's requests for these documents. Rather, the defendants have produced documents referred to as "rosters." At this stage in the litigation, the Plaintiff has reason to believe that these "rosters" are not the schedules referred in the Pool Supplement

22.     The Plaintiff has ample cause to further explore the chain of title issues in this lawsuit, in support of her defense that the NCSLTs cannot prove that they own the student loans which the Defendants attempted to collect if not precluded by the state court judgment. As a further example, the investors in the NCSLTs sued TSI and other parties involved in the NCSLTs in the Delaware Court of Chancery after an audit was performed that revealed the NCSLTs were missing <u>all of the loan</u> <u>assignment information and the loan files</u>. *See* **Exhibit 7**, and the audit filed earlier in that same case is attached hereto as **Exhibit 8.**

23.     The Plaintiff also has not had the opportunity to depose key witnesses noticed for the corporate representative for Cognition, PHEAA, and the Boston Portfolio Advisors, the latter being the authors of an audit that found that there was no documentation of assignments held by PHEAA on behalf of the NCSLT Trusts. In the case of Cognition, they were not even listed on the initial disclosures of the defendant Trusts, yet one of their employees, Jens Meyers filed a declaration in support of the Trust's summary judgment.

24.     Further, Plaintiff should be permitted to obtain the documents and information TSI provided to the CFPB that led to the CFPB's finding that TSI employees were signing false and misleading affidavits to obtain judgments in NCSLT collection lawsuits and needs discovery regarding whether TSI complied with the TSI Consent Order.

25.    To date, Defendants' responses to Plaintiff's written discovery is severely limited to their narrow and toothless definition of "ownership" of the loan exemplified by their arguments in their motion for stay and protective order to insulate them from revealing the glaring evidence deficits as to the Trust's ownership claims.

26.    Plaintiff has also served notices of 30(b)(6) depositions for the Defendant Trusts, for U.S. Bank and for TSI and have met and conferred about the topics and the Plaintiff served amended deposition notices thereafter.

27.    Despite the outstanding discovery requests, the refusal to produce documents relating to anything other than what they define as the ownership of the loan, and needed deposition testimony from all Defendants and third parties, the Trusts brought their September 28, 2022, summary judgment motions joined in by the other defendants on June 17, 2022 (ECF No. 122).

28.    On September 28, 2022, Defendant filed a motion to stay discovery (ECF 114) pending ruling on the Defendant Trust's Motion for Summary Judgment joined in by the Defendants (ECF 110-113).

29.    On October 12, 2022, Plaintiff filed her response in opposition to the Stay Motion. (ECF 120).

30.    On October 20, 2022, in bold contradiction to its own Stay Motion, Defendant US Bank served a subpoena upon non-party Boston Portfolio Services

("BPS") which is broader in scope regarding topics and documents requested therein than the subpoena served by Plaintiff upon BPS prior thereto.

31.   US Bank has defended this discovery request as somehow "protective" to the extent that Defendant's puzzling characterization of its discovery act by this term rather than the discovery act itself is relevant here (see Ex. A subpoena with cover letter attached hereto).

32.   Plaintiff arrived at an agreed date and fee for non-party BPA's expert testimony for November 1, 2022, but Plaintiff agreed to US Bank's noticed November 10, 2022, date.

33.   US Bank has now rejected its own noticed date on the stated reason that it has insufficient time to prepare for the deposition and that it requires another meet-and-confer despite unreasonable restrictions on plaintiff's discovery sought by Defendants dooming it to failure. As a result, with just over 60 days remaining in scheduled discovery, discovery remains stalled by US Bank's tactics.

34.   On November 8, 2022, the Order was entered granting the Defendants' motion to stay discovery and limiting the Plaintiff to discovery solely on the issues of ownership but without any guidance as to the definition of the term despite Plaintiff's notice to the Court of this definitional battle halting discovery thus far.

35.   As a result of the term "ownership" being magnified in the Order but not defined, on November 11, 2022, third party deponent BPA reviewed the order

and, based thereon, reneged on its earlier agreement to appear because the Gosse loan was within the random sampling of 400 loans it audited and has adopted by this argument the Defendants' narrow interpretation of "ownership".

36.     Similarly, PHEAA has reviewed the recent order and based thereon also refused to schedule any deposition until the parties' conflict over "ownership" has been resolved by agreement or otherwise.

37.     Cognition has agreed to move forward with the deposition, but the Defendants have not communicated any mutually agreeable date and otherwise have simply rejected the dates proposed between Plaintiff and Cognition. Thus, this deposition has been stalled as well.

38.     At the last meet-and-confer on November 14, 2022, the parties were not able to come to any agreement on what is meant by "loan ownership." The Defendants rely only on already produced transfer agreements, spreadsheets, and credit agreements while Plaintiff believes the foregoing documents all raise admissibility and trustworthiness issues and that "ownership" herein includes the proof of ownership and the admissibility and trustworthiness of any alleged evidence submitted by Defendants to state courts in any underlying collection litigation as well as in the instant case. Plaintiff believes the parties agreed to meet-and-confer with each providing lists of reasonable scope of topics to prove or disprove ownership and to propose dates for third party depositions prior to reaching that

agreement. Thereafter, Defendants communicated they will not adjust their definition of ownership beyond the documents already produced and that the onus is solely on Plaintiff to produce a definition of ownership for them to approve.

## III.   STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), the Court "may reconsider any pretrial matter ... where it has been shown that the magistrate[judge's] order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). Following a magistrate judge's issuance of an order on a nondispositive matter, the parties may serve and file objections to the order within 14 days of being served with a copy of the order. Fed. R. Civ. P. 72(a). If a party objects to a magistrate judge's order regarding a nondispositive matter, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A). This standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo. Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017); LCvR 72(c)(2) (stating that, upon review of a non-dispositive ruling, "[t]he District Judge assigned to the case shall consider the objections and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law").

The Third Circuit has held that, "[u]nder the Federal Rules of Civil Procedure and our jurisprudence, district courts have broad discretion to manage

discovery. See, e.g., *Walter v. Holiday Inns, Inc*., 985 F.2d 1232, 1237 n. 4 (3d Cir.1993)(allowing over a one year delay in the production of documents is not an abuse of discretion). … Nonetheless, the district court's discretion has boundaries, and in particular, we frown upon unnecessary discovery limitations … and now we refuse, 'to allow procedural technicalities to impede the full vindication of guaranteed rights.'" *Sempier v. Johnson & Higgins*, 45 F. 3d 724, 734 (3rd Cir. 1995). The plaintiff's burden to establish a prima facie case should not be made an onerous one. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 at 253, 101 S.Ct. at 1094 (1981).

## IV. ARGUMENT

### A. The Magistrate Judge's November 8, 2022 Order erred when it limited merits discovery to ownership issues, restricting the Plaintiff's ability to prove her claims against Defendants under the FDCPA, the Dragonetti Act, and Conspiracy and when it severely limited the number of written discovery requests

The Order limiting merits discovery to "ownership" issues herein unfairly and wrongly restricts the Plaintiff from pursuing her causes of action, investigating the basis for Defendants' defenses, and was clearly erroneous. It also limits the determination of the liability of the various defendants. Given that the Plaintiff has made factual allegations that U.S Bank has played a role in collection activities of Defendant Transworld regarding the alleged debts to the Trusts, there is no basis to limit discovery to facts about the collection to Ms. Gosse's loan. Plaintiff should be

allowed to discover what actions or inactions were taken by U.S. Bank. U.S. Bank has maintained its role was limited by the SSA, but the Court noted that that is not the end of the inquiry. See ECF 90, p.4 ¶ 6.a. ("…This provision does not preclude the existence of an indirect role in collection and enforcement activities.") And, to this end, Plaintiff seeks to know the fees that were paid to U.S. Bank and what services U.S. Bank provided for any fees it received.

The Magistrate's characterization of the allegations of Defendants' litigation misconduct in state court debt collection actions as turning on "several simple questions" misses the crucial allegation underlined above that these actions were undertaken with each Defendant undertaking a specific but still not fully understood role and whether Defendants knew they could not prevail in litigation for lack of crucial documentary evidence and were not simply improvident or sloppy in their conduct and nonetheless conspired to file unlawful collection actions masquerading them as lawful collection actions. Limiting the Plaintiff's ability to obtain discovery over the roles of each party and the knowledge they bring about their ability to prove the right to collect the Plaintiff's loan misses the point. There is nothing simple about this task and limiting discovery is unfair and unjust.

Plaintiff's claims in this case assert that the Defendants knew that they did not have admissible evidence to prove any claim against Plaintiff when it filed a state court action against her and others. The Defendants in this action are in control of

information relating to the claims made by the Plaintiff. It is true Gosse does have certain information already in her possession to support his claims. She has a final, state court judgment that held the Defendant NCSLT 2007-3 lacked standing to pursue a claim against Plaintiff, Gosse. (ECF 44-2). Gosse also has information from various sources to support her claims such as Consent orders against the collection arm of NCSLT, the Defendant Transworld Systems, Inc. (TSI), with the Consumer Financial Protection Bureau 2, consent orders with other state attorney generals 3 and a verified complaint. (ECF 44-1). However, this is not a reason to stay discovery from the Defendants or third parties regarding documents and topics beyond what Defendants have produced thus far regarding their respective roles in collections filed on behalf of the Defendant NCSLT.

The quality and trustworthiness of documents offered by the Defendants directly or through third parties are at issue in this case. At the heart of the case is whether the Defendants can show that they have custody and control over admissible documents that show proof of ownership of the NCST loans. As the loans at issue are not Article III instruments, and the NCT loans, including the Gosse loan are not

---

[2] See September 18, 2017, Consent Order available at ECF no, 68-2.

[3] See Massachusetts Assurance Order at https://www.mass.gov/doc/transworld-systems-aod and New York order at https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf

held as original wet signature instruments, the mere possession of scanned images of the loans is not evidence of ownership. Rather, the Defendants can only establish their right to collect these NCT loans, including the Gosse loan, through establishing a chain of custody for the loans from the time of origination through transfer to NCT to prove it has the authority to collect on the loans. Due to the absence of formal assignment documents executed at the time of alleged transfer of the NCT loan, the Defendants depend on a plethora of securitization contracts to document how the transfer of the loans should have happened, but they fail to provide admissible evidence regarding the actual alleged transfer of the NCT loans from the national bank signatories to National Collegiate Funding, and then NCT. Since the contractual agreements designate PHEAA as the only custodian NCT Trust, the fact that the NCT Trusts look to other entities, like TSI or Cognition to support their claims of ownership entails a complex rather than simple discovery plan, in direct conflict with the Magistrate's Order. *See* §4.04 of the Amended and Restated Servicing Agreement between PHEAA and the First Marblehead Corporation nka Cognition ("Servicing Agreement"). The relevant section of the Servicing Agreement is as follows:

> 4.04 Custody Procedure. **The Servicer shall hold all Original Credit Agreements and related documents Serviced hereunder on behalf of the Owner** and shall retain each such Credit Agreement and related documents until five (5) years after the earlier of (a) the date upon which the Student Loan evidenced by such Credit Agreement and

related documents is paid in full or (b) the date upon which the Student
Loan is deconverted from Servicer's Servicing System. ,,,,,..The
Servicer shall supply FMC, upon request, microfilm or electronic
copies of Original Credit Agreements and related documents…….

Servicing Agreement §4.04. In the absence of formal assignment
documentation held by PHEAA and a history of haphazard preservation of
origination documentation and full contractual agreements, there are real
disputes about whether the NCT Trusts have the requisite authority under
FRCP 803(b) and ER 901 to prove that they have the right to collect on the
loans. In substitution for formal assignment agreements, the NCT Trusts
depend on a Schedule 1 of NCT loans as referred to in the Pooled Supplement
to the NCT Trusts including the Gosse loan. However, the Defendants have
not offered any document titled Schedule 1 in discovery or as part of any
evidence filed in support of their motion to summary judgment. Thus, the
Plaintiffs look to the third party depositions of BPA, Cognition and PHEAA
to investigate the credulity and trustworthiness of the documents the
Defendants rely on to support their claims of ownership. Since the disputes
are intractable and have created an impasse that has stymied all efforts made
by the Plaintiff to obtain relevant and proportional discovery and to conduct
depositions, no additional amount of meet-and-confers will bridge the gap in

the parties' disagreement on these fundamental differences and the Order only memorializes this impasse.

Moreover, this is the second time the Magistrate Judge has limited Plaintiff's ability to obtain discovery and unilaterally narrowed the issues in her case. In the Report and Recommendation on Defendants' motion to dismiss this action (ECF No. 88), the Magistrate Judge dismissed U.S. Bank and ruled that the Defendants could immediately move for summary judgment without any discovery. The District Judge disagreed. When US Bank argued in its Motion to Dismiss brief that under Section 8.A of the SSA that it does not undertake direct collection or enforcement activities, the Court ruled that "[t]his provision does not preclude the existence of an indirect role in collection and enforcement activities." Similarly, when it argued that Section 8.D of the SSA did not require it to "'supervise or monitor the performance' of Servicers or Subservicers", the Court ruled that this "provision does not preclude supervisory activity by Defendant U.S. Bank but merely states that such activity is 'not required.'" Based thereon, the Court sustained Plaintiff's objection to proceeding direct to the summary judgment stage without discovery.

In this order, the Magistrate Judge has again limited the Plaintiff's ability to litigate this case by restricting her ability to obtain discovery through this stay order. Defendants argue that discovery requests related to the 2017 CFPB Consent Order are unrelated to ownership of the loans by the trusts (Motion pg. 8, footnote 2, Ex.

A).  The TSI Consent Order with the CFPB contains numerous references to loan ownership being a topic of the Order, e.g. ¶ 45(f):

> Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect Debt unless Respondent possesses: i. the documentation necessary to prove that a Trust owns the loan, including but not limited to, **documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership**;
> (emphasis added)

TSI also opposes production of its debt collection policies and procedures (Motion pg. 8, footnote 6, Ex. A), but obviously Plaintiff is entitled to know whether the CFPB's ownership concerns respecting the Trust collections as reflected in the TSI Consent Order are or are not incorporated into TSI's debt collection policies and procedures against Plaintiff and others.

Defendants also contest discovery directed to US Bank and TSI regarding fees charged by them for services to the Trusts (Motion pg. 8, footnotes 4 and 5, Exs. A - F).  If they received fees for services, and the business of NCSLT is collecting, it may show their true role or involvement in collecting debts for the Trusts.

After numerous discovery conferences among the parties attempting to narrow the scope of discovery outlined in Plaintiff's response the Motion to Stay, the Magistrate Judge has given the parties no guidance on ownership

issues it wishes to emphasize other than a comment that the ownership issues are simple and dispositive of the issues in the case. Granting a stay of discovery that narrows its scope on this basis is a confusing, unfair, and manner that contradicts the Court's prior May 3, 2022, Order on Motion to Dismiss and has impermissibly limited the Plaintiff's ability to litigate this case and is an abuse of its discretion. The Plaintiff's objections to the magistrate's order should be sustained.

WHEREFORE, Plaintiff requests that the Court grants its objections and strike any reference in the Order to discovery being first addressed to ownership issues and grant Plaintiff's Motion to Enlarge the scope of Plaintiff's written discovery to Defendants.

WHEREFORE, Plaintiff requests that the Court grants its objections and strike any reference in the Order to discovery being first addressed to ownership issues and grant Plaintiff's Motion to Enlarge the scope of Plaintiff's written discovery to Defendants.

Date: Nov. 22, 2022                              Respectfully submitted,

                                                 */s/Robert P. Cocco*
                                                 Robert P. Cocco, Esq.
                                                 Robert P. Cocco, P.C.
                                                 Attorney I.D. No. 61907
                                                 1500 Walnut St., Ste. 900
                                                 Philadelphia, PA  19102

(215) 351-0200
bob.cocco@phillyconsumerlaw.com

Christina L Henry, Esq.
Henry & DeGraaff, P.S.
787 Maynard Ave S
Seattle, Washington, 98104
Tel 206/330-0595
Fax 206-400-7609
chenry@HDM-legal.com
*Pro Hac Vice*

Scott C. Borison, Esq.
1900 S. Norfolk St. Suite 350
San Mateo CA 94403
Scott@borisonfirm.com
301-620-1016
Fax (301) 620-1018
*Pro Hac Vice*

Counsel for Plaintiffs and the Classes

## CERTIFICATE OF WORD COUNT

I, Robert P. Cocco, hereby certify that the word count of the briefing herein is 4,896.

Date: Nov. 22, 2022                    Respectfully submitted,

*/s/Robert P. Cocco*
Robert P. Cocco, Esq.
Robert P. Cocco, P.C.