corporate relationship between these entities. The Defendants should not be allowed to assert facts relating to any program or its purpose having been granted by the Court their request to limit discovery to ownership. In any event, this statement does not show the Defendant Trust owns the Plaintiff's loan. The state court found otherwise. *See* **Ex. C**.

17.     Admitted that the loans covered by the Pool Supplement are set forth in a Schedule 1. Denied to the extent that the Defendants claim to have produced Schedule 1 to the Pool Supplement, but have not done so and have no credible factual to assert this for the reasons set forth above. **CSMF 5-36.**

18.     Denied.  The testimony provided by Meyer is that he produced excel spreadsheets from a MS Access Database that was populated by "loan tapes". *See* **CSMF 25** herein. The contention is also contradicted by Luke's prior testimony that it was TERI's role to originate the loans. *See* ECF 112-1 at ¶ 9. It is also inconsistent with the terms of the Loan Database Agreement that identified TERI as the holder of the unredacted loan information and only provided for FMER to receive a "delivered database" of the loans. *See again* **Ex. H**.

19.     Denied. *See* **CSMF 25**. Also, the Pool Supplement does not describe Schedule I as an electronically formatted rather than a paper document attachment. Thus, Meyer testified that the roster excel spreadsheet which Movant is referring to herein "would serve as Schedule 1", i.e., it is not actually Schedule 1 to the Pool

30