Summary of Program Participants

Program Lender: As program lender, [LENDER NAME] is an FDIC insured financial institution able to "export" the laws concerning interest rate and fees from the state where Lender is located to all 50 states. [LENDER NAME] will sub-contract origination functions to TERI but will be the legal entity who approves credit criteria and makes program loans in accordance with TERI underwriting guidelines. [LENDER NAME] will provide initial loan funding and own the loans until they are purchased in a transaction organized by the Securitization Sponsor at agreed upon intervals.

Program Origination Processing: TERI will provide the full complement of alternative student loan origination capabilities for [LENDER NAME]'s programs. These services include application processing, underwriting, loan documentation and disclosure, and loan disbursement processing. TERI may subcontract these services as provided in the Loan Origination Agreement.

Program Guarantor: The Education Resources Institute, Inc. (TERI) will provide loan guarantee services on behalf of the Lender during the loan holding period and then to the Securitization Sponsor from the point of purchase forward. As guarantor, TERI approves the program's underwriting guidelines.

Program Servicer: The Servicer, [Pennsylvania Higher Education Assistance Agency (PHEAA)] is responsible for performing loan servicing and administration services over the life of the loan. The Servicer maintains loan servicing procedures in accordance with the loan program guidelines.

See Ex. Q.

corporate relationship between these entities. The Defendants should not be allowed to assert facts relating to any program or its purpose having been granted by the Court their request to limit discovery to ownership. In any event, this statement does not show the Defendant Trust owns the Plaintiff's loan. The state court found otherwise. *See* **Ex. C**.

17. Admitted that the loans covered by the Pool Supplement are set forth in a Schedule 1. Denied to the extent that the Defendants claim to have produced Schedule 1 to the Pool Supplement, but have not done so and have no credible factual to assert this for the reasons set forth above. **CSMF 5 - 36.**

18. Denied. The testimony provided by Meyer is that he produced excel spreadsheets from a MS Access Database that was populated by "loan tapes". *See* **CSMF 25** herein. The contention is also contradicted by Luke's prior testimony that it was TERI's role to originate the loans. *See* ECF 112-1 at ¶ 9. It is also inconsistent with the terms of the Loan Database Agreement that identified TERI as the holder of the unredacted loan information and only provided for FMER to receive a "delivered database" of the loans. *See again* **Ex. H**.

19. Denied. *See* **CSMF 25**. Also, the Pool Supplement does not describe Schedule I as an electronically formatted rather than a paper document attachment. Thus, Meyer testified that the roster excel spreadsheet which Movant is referring to herein "would serve as Schedule 1", i.e., it is not actually Schedule 1 to the Pool

176-4 at ¶ 12. Absent from PHEAA's affidavit is any claim that the electronic data it received is Schedule 1 to the Pool Supplement.  Thus, in circular fashion FMC and PHEAA claim the loan tape information came from the other.

> 20. Denied. *See* responses to 1, 2, 3, 18 and 19.
>
> 21. Denied. *See* responses to 1, 2, 3, 18 and 19.
>
> 22. Admitted and denied.
>
>     a. Admitted that the loans covered by the Pool Supplement are set forth on Schedule 1 to the Pool Supplement.
>
>     b. Denied to the extent that the Defendants claim to have produced Schedule 1 to the Pool Supplement for the reasons set forth above in response to Nos. 1, 2, 3, 18 and 19.
>
> 23. Denied. The database was populated from information included in loan tapes. Meyer testified that he received the loan tapes from the servicer, PHEAA.
>
> 24. Denied to the extent that it is claimed that the loan tapes were part of the origination of the loans. There is no record evidence that is true.
>
> 25. Denied. Meyer testified the excel spreadsheets were produced from the MS Access Database that was populated from the loan tapes. **Ex. K** Meyers Dep., 87:8 – 15; *See also* "Cognition-Gosse-001" and Meyer Dep. Ex. 2.
>
> 26. Denied.  This statement does not show the Defendant Trust owns the Plaintiff's loan. The only source for loans covered by the Pool Supplement is the